1                    **UNITED STATES DISTRICT COURT**
                      **MIDDLE DISTRICT OF FLORIDA**
2                         **FORT MYERS DIVISION**

3

4    BRIAN WEGMAN and THOMAS HORROM,

5                          Plaintiffs,

6         vs.                        CASE NO. 6:23-cv-1637-RBD-RMN
                                     November 2, 2023
7                                    Orlando, Florida
                                     10:05 a.m. - 11:24 a.m.
8
     THE UNITED STATES SPECIALTY SPORTS
9    ASSOCIATION, INC., DONALD DEDONATIS,
     III, RICHARD FORTUNA, WENDY
10   ANDERSON, COURTNEY CEO and JACOB
     HORBACHER,
11
                           Defendants.
12   _____/

13

14

15              **TRANSCRIPT OF MOTION HEARING**
            BEFORE THE HONORABLE ROBERT M. NORWAY
16             UNITED STATES MAGISTRATE JUDGE

17

18

19

20

21

22

23
     Proceedings transcribed via courtroom digital audio
24   recording by transcriptionist using computer-aided
     transcription.
25

                     UNITED STATES DISTRICT COURT
                      MIDDLE DISTRICT OF FLORIDA
                            TAMPA DIVISION

2

**APPEARANCES:**

| | |
|---|---|
| For the Plaintiff: | MICHAEL VOLKOV, ESQ.<br>2805 Racetrack View Dr.<br>Del Mar, CA  92014-2407<br>(240) 505-1992 |
| For the Defendant<br>The United States Specialty<br>Sports Association, Inc. | CHRISTOPHER OPRISON, ESQ.<br>DLA Piper, US, LLP<br>200 S. Biscanye Blvd, Ste. 2500<br>Miami, FL  33131<br>(305) 982-5551 |
| For the Defendants<br>Richard Fortuna,<br>Wendy Anderson,<br>Courtney Ceo | JILLIAN STRASSER, ESQ.<br>Cole, Scott & Kissane, PA<br>222 Lakeview Avenue, Ste. 120<br>West Palm Beach, FL  33401<br>(561) 683-8977 |
| For the Defendants<br>Donald Dedonatis and<br>Jacob Hornbacher | EDWARD TAYLOR GEORGE, ESQ.<br>Lydecker Law<br>4350 West Cypress St. Ste 910<br>Tampa, FL  33607<br>(813) 443-8424 |
| Transcriber: | Howard W. Jones, RDR, RMR, FCRR<br>801 N. Florida Avenue, Suite 13B<br>Tampa, Florida 33602<br>813/301-6158 |

\* \* \* \* \* \* \* \* \*

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1                        **I N D E X**

2                                                          <u>**PAGE**</u>

3    CERTIFICATE OF COURT REPORTER:                         61

4

5                       * * * * * * * * * *

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

4

```
1   (COURT CALLED TO ORDER)

2               P R O C E E D I N G S

3         THE COURT:  Thank you very much.  Please be

4   seated.

5         Mr. Jernigan, would you please call the case and

6   have counsel make their appearances for the record.  And,

7   counsel, when you make your appearances, please, the lead

8   attorney introduce the rest of the attorneys.

9         Thank you.

10        THE DEPUTY CLERK:  Case number 6:23-cv-1637.

11  Brian Wegman, et al, vs. United States Specialty Sports

12  Association, Inc., et al.

13        Counsel, please state your appearances for the

14  record.

15        MR. VOLKOV:  Good morning, Your Honor.  Michael

16  Volkov for the plaintiffs, Mr. Wegman and Mr. Horrom.

17        THE COURT:  Good morning.

18        MR. OPRISON:  Good morning, Your Honor.  Chris

19  Oprison for the defendant, U.S. Specialty Sports

20  Association.  Your Honor, I'm joined here by a

21  representative from client, Craig Scriven, S-C-R-I-V-E-N.

22        THE COURT:  Thank you very much.

23        MS. STRASSER:  Good morning, Your Honor.  Jillian

24  Strasser on behalf of defendants Wendy Anderson, Courtney

25  Ceo and Richard Fortuna.  I have Wendy Anderson here with me
```

1   this morning.

2          THE COURT:  Thank you very much.  Good morning,

3   Ms. Anderson.

4          MR. GEORGE:  Good morning, Your Honor.  Taylor

5   George on behalf defendant Dedonatis and Hornbacher.

6          THE COURT:  Mr. George, if you would like you can

7   actually take a seat at the counsel table behind the

8   plaintiff.

9          MR. GEORGE:  I think that would be more

10  comfortable, Your Honor.  I appreciate that.

11         THE COURT:  All right.  We are here today because

12  Judge Dalton referred the preliminary pretrial conference to

13  myself.  And he did so, I'm sure, because the amended joint

14  uniform case management report that the parties filed on

15  October 18th indicated the parties had not come to any

16  resolution as to the dates for the management of this case.

17         So, what I'm going to do today is I'm gonna give

18  the plaintiffs and the defendants an opportunity to tell me

19  a little bit about the case, about where you think the case

20  is gonna be headed and if you think there is gonna be any

21  particular discovery needs for this case, like, for

22  instance, if you think that you might need more than the

23  currently authorized number of witnesses for depositions or

24  something along those lines.

25         And then we'll get into the differences between

```
 1   the parties with the case management deadlines.  I will lead

 2   that discussion deadline by deadline.  And then I'm also

 3   going to address the motion to stay discovery, which was

 4   filed last night by some of the defendants.

 5           I have read the motion.  I don't think it requires

 6   a response, so I'm gonna deal with it here today.

 7           So, Mr. Volkov, would you please come to the

 8   podium and why don't you give me just a general overview of

 9   the case and where you think it's going and if you think

10   there are any particular discovery needs.

11           MR. VOLKOV:  Well, Your Honor, we, as the

12   plaintiffs here, this is a multi-count, as you know, Federal

13   RICO and employment case.  I think the law is a little bit

14   complex, but I think the facts are relatively

15   straightforward.  And, so, I don't see and the plaintiffs

16   don't see a sort of extensive need for lengthy discovery,

17   complexity or special handling, those types of --

18           THE COURT:  And why is that?

19           MR. VOLKOV:  Because the way I look at the case,

20   there's about probably 20 depositions that need to be taken

21   at most.  At most.  Maybe one expert we would have.

22           THE COURT:  Is that 20 -- 20 depositions that you

23   intend to take?

24           MR. VOLKOV:  Yes, that we -- between 15 and 20,

25   okay, is the way I would look at it.  I don't think it's a
```

1   complex case in the sense of it's a factual, you know,

2   inquiry into a five-year period during which we have alleged

3   there were certain acts that took place.

4          It's an employment case based upon retaliation and

5   retaliation for whistleblower status.  These are two

6   employees, senior level employees who we believe were fired

7   and terminated because of their status as whistleblowers to

8   silence them.

9          So, the whole -- and the reason I say that it's

10  pretty straightforward is there will be motions.  We will

11  have a lot decided as to whether or not the RICO count

12  survives.  And then even with the RICO count, I'm saying the

13  factual development is not going to be so significant.

14         I mean, USSSA is an organization with 55

15  employees.  So, it's a relatively small organization.

16  $20 million annual revenue.  We have two people who were

17  senior executives there for -- Mr. Wegman was there for, you

18  know, close to 11 years, worked with them.  And Mr. Horrom

19  was there for probably three to four years.

20         So, I think the case -- there will be some

21  discovery issues, but there is not gonna be a lot of

22  electronic data.  There will be a fair amount, but probably

23  less than most cases that you deal with.

24         So, when we came into this, we were seeking -- you

25  know, we wanted to -- we thought we could go to trial by the

1    beginning of 2025.

2            THE COURT:  What kind of electronic discovery do

3    you intend to seek?

4            MR. VOLKOV:  Well, there's definitely e-mails, but

5    there's not a large e-mail population there because --

6            THE COURT:  I mean, five years?  It's an

7    organization.

8            MR. VOLKOV:  Five years, 55 people.  But they also

9    don't use -- at least from my client's perspective, they

10   don't use a lot of e-mail communications.  There is a lot of

11   texting however and that will require discovery, because a

12   lot of what we think important and relevant communications

13   occurred via texting.

14           THE COURT:  Okay.

15           MR. VOLKOV:  There also will be sort of a

16   financial analysis.  We anticipate probably one expert

17   witness who would be a forensic accountant with regard to

18   the operation of the -- so there will be some financial.

19   But, you know, the company keeps their records through

20   Quickbooks and frankly my clients are very familiar with the

21   system that's -- that, you know, that it works.

22           I'm not interested in boiling the ocean here.  I'm

23   interested in targeted approaches towards what we think are

24   relevant documents.

25           THE COURT:  Is the Plaintiffs' view that the

1    factual basis generally for the RICO claims is overlapped

2    substantially with the rest of their claims, the factual

3    basis?

4              MR. VOLKOV:  Yes, absolutely.  Absolutely.  I

5    mean, I think the bulk of it.  But, you know, be that as it

6    may, Mr. Wegman in particular had extensive knowledge of a

7    lot of wrongdoing, which led to the motivation for them to

8    terminate him.

9              And that -- that's the only thing that sort of

10   raises this beyond a little bit more of your standard

11   targeted, here is a whistleblower, went to the Government,

12   got fired for doing that.  There is a little bit more here

13   that has to be developed.

14             But, again, this is not a complex, you know,

15   organization with global operations or anything like that.

16   This, to me, seems like a relatively -- at least in my

17   experience and I may live down these words, but it seems --

18   we can do this in a targeted fashion.

19             THE COURT:  All right.

20             MR. VOLKOV:  And, so, we -- our position has been

21   from the beginning that there's not any complexity here.

22   And when you look at some of the issues we are talking

23   about, it's not just the dates.  But, for example,

24   discovery, we have a long period for discovery, but, you

25   know, some of the parties here want to do extensive

```
 1   discovery, 30 interrogatories, other things like that, which

 2   we just don't see is necessary.

 3           We also have phases of discovery and I think

 4   that's a mistake.  There's no need to have phases here.

 5   This is a straightforward case.

 6           And special handling, I don't see the merits for

 7   that.  So, that's why I'm saying we couldn't agree to those

 8   types of things.

 9           THE COURT:  And I'm -- I might have missed it, but

10   did the parties lay out their disputes about the additional

11   interrogatories that were needed and the additional

12   depositions in the case management report?

13           MR. VOLKOV:  And I don't want to speak for

14   Mr. George here, but I think he was the one who had

15   mentioned the additional interrogatories and the phases and

16   the depositions --

17           THE COURT:  So there is a section about the phased

18   discovery in here?

19           MR. VOLKOV:  Right.

20           THE COURT:  But I was specifically asking about

21   the request --

22           MR. VOLKOV:  For depositions.

23           THE COURT:  -- for depositions and for additional

24   interrogatories.

25           MR. VOLKOV:  No, we -- I think the interrogatories
```

1    are mentioned, maybe not the depositions.  Let me take a

2    look.  But it was in that section.  It's in one of the

3    phases, I think.

4            THE COURT:  Okay.

5            MR. VOLKOV:  Okay.

6            THE COURT:  And that's not the Plaintiffs'

7    position, additional interrogatories?  It's one of the

8    Defendants' positions?

9            MR. VOLKOV:  No.  No.  Our view is, like I said,

10   this can be done in the normal course of a discovery

11   proceeding.  It could be done within six to nine months in

12   our view and should be, you know, limited to between 15 and

13   20 from our side.  I don't -- there may be overlaps in terms

14   of who the defendants want to depose as well.

15           THE COURT:  Thank you very much.  That's been very

16   helpful.  I'm going to allow defense counsel, whomever is

17   going to lead first can kind of come up first.

18           MR. OPRISON:  Good morning, Your Honor.  Chris

19   Oprison.

20           THE COURT:  Good morning.

21           MR. OPRISON:  On behalf of the Association.  Your

22   Honor, in some ways I agree with Mr. Volkov in terms of

23   the -- his assessment that I think the discovery can be done

24   largely within the frame work of what the rules already

25   require.  I don't anticipate there would be any need to go

1    beyond that.  I do think though, Your Honor, that much of

2    what we are talking about --

3              THE COURT:  Well, let's make sure that we're on

4    the same page.  What is your or your client's idea of what

5    discovery is within the rules?  Are you talking about time

6    frame or are you talking about the number of interrogatories

7    and depositions?

8              MR. OPRISON:  The number of interrogatories and

9    depositions, Your Honor.  I think we can do that within the

10   frame work.  I think we are looking at this as being a case

11   that is largely going to be trimmed, not to argue the

12   position on the motion for -- to dismiss that we just filed,

13   but I think it's going to be largely trimmed down after

14   ruling on that motion to be a more targeted set even if the

15   Association is still in the case at that point.

16             There are some standing issues that they are going

17   to have to grapple with that the plaintiffs are going to

18   have to overcome here.  So, Your Honor, after the ruling on

19   that we believe that there will be a much more narrowly

20   targeted and narrowly scoped case that will help define

21   where discovery goes after that.  But even if we were to say

22   that everything stays at this point, we are looking at 12 to

23   15 depositions.  It's certainly not 55.  Nobody needs to go

24   and depose every single member or every single employee.

25             A lot of it in terms of the delay and the timeline

1    really comes down to the fact that there is multiple parties

2    in different jurisdictions and we all need to coordinate

3    schedules.  I think that's going to be the biggest

4    challenge.  And we can certainly work together on that.  I

5    understand that we were off -- we were in disagreement on

6    the dates.  We did propose earlier this week to the parties

7    to try to close the gap so that we could work on coming up

8    with a consolidated or uniform schedule.  We weren't able to

9    do that unfortunately, but I do think where we are right now

10   with the number of counts here there is quite a bit of

11   overlap.  There's quite a bit of -- of --

12          THE COURT:  Overlap of the factual basis.

13          MR. OPRISON:  Overlap of a factual basis, yes,

14   sir.  The predicate acts that are alleged are going to be

15   certainly the predicate acts for the RICO or the predicate

16   acts or the standing claims or what underlies some of the

17   other claims that are in the case.

18          So, I do think that there is going to be some

19   efficiencies that are going to be gathered by that.  All

20   that said with as many parties as there are and what needs

21   to happen in this case we still think sort of an 18-month

22   track is probably reasonable once we get started.  We were

23   the party that had filed the motion to stay discovery last

24   night, Your Honor.  We had indicated in here that we would

25   be doing that.

1           THE COURT:  And I did notice that.

2           MR. OPRISON:  And, Your Honor, I appreciate you

3    reading that before here.  I do think it's important to --

4    given what the -- I think the deficiencies are with respect

5    to standing and some other defects --

6           THE COURT:  And I am going to give you an

7    opportunity at the end to, I guess, make a presentation on

8    your motion to stay, so you can skip that part.

9           MR. OPRISON:  Okay.  Very good.  So, all that ties

10   into essentially where this might be after that ruling and

11   after the motion to dismiss, we are talking about a much

12   more narrowly scoped case here, Your Honor.

13          If the Association remains in the case after the

14   motion to dismiss, there is the possibility that we may

15   have -- given discovery, we may have some counter-claims and

16   cross-claims to raise as well.  I don't know that --

17          THE COURT:  How many counts are brought against

18   the Association?

19          MR. OPRISON:  13 out of the 14, Your Honor.

20          THE COURT:  13 out of the 14?

21          MR. OPRISON:  13 out of the 14.  Yes, sir.  But if

22   you look at the complaint that the -- the underlying counts

23   when they are alleging USSSA is part of whatever alleged

24   conduct.  The conduct as pleaded in the complaint is really

25   about individual conduct that occurred, not in the scope of

1    employment, not in the scope of the management

2    responsibilities for USSSA.

3            So, all that said, Your Honor, I think again if we

4    look at this and we are trying to read the tea leaves right

5    at the outset this could be a narrowly scoped, very

6    efficient way to do this.  The delay I think again would

7    come from the fact that we have got moving parts and trying

8    to get things coordinated.  And we have employees that are

9    going to be in different parts of the country, directors

10   that are in different parts of the country, so that's really

11   I think the complication here for that.

12           THE COURT:  How many directors are apart of the

13   Association?

14           MR. OPRISON:  Oh, boy.

15           THE COURT:  Because I'm assuming those are going

16   to be targeted for depositions?

17           MR. OPRISON:  They may, Your Honor, not by --

18   certainly not by us, but there may be -- I think there is a

19   Director in every state and then there's national Directors

20   to various -- the fast pitch, the slow pitch, the baseball,

21   if I'm correct about that.

22           UNIDENTIFIED SPEAKER:  Yeah, there's different

23   levels of Directors, so you have a hierarchy.

24           THE COURT:  Okay.  And are they considered

25   employees or not?

1          MR. OPRISON:  Those are not considered employees.

2    There's 55 staff and then those Directors that govern the

3    tournaments in each state or the baseball operations in each

4    state are really contractors or 1099, I guess.

5          THE COURT:  Okay.  That's helpful.  I just wanted

6    to make sure that I understood the organization.

7          MR. OPRISON:  Okay.  And, Your Honor, other than

8    that, I'll go ahead and sit down.  I just want to say that

9    if we can find some ways to create some efficiencies here,

10   that's certainly what we would like to do.  This is a case

11   for an organization that is -- that has a mission and that

12   is diverting a lot of time, attention and costs to dealing

13   with this case.

14         THE COURT:  All right.  Thank you very much.  All

15   right.  Who is next?  Is there any other defendant that

16   would like to make a statement before we get into the dates?

17         MR. GEORGE:  Good morning, Your Honor.

18         THE COURT:  Good morning Mr. George.

19         MR. GEORGE:  Thank you.  Good to see you.  Your

20   Honor, I -- with all due respect to my colleagues, I see

21   this case very differently.  To me, this is an

22   extraordinary --

23         THE COURT:  Could you first just remind me who you

24   represent?

25         MR. GEORGE:  I represent Mr. Dedonatis and

1  Mr. Hornbacher.  Mr. Dedonatis is the -- when you read

2  through the complaint, the 91-page complaint with enormous

3  amount of factual allegations, an awful lot of it, probably

4  more than half circles around Mr. Dedonatis.  So, I feel

5  like I've got kind of a unique perspective that probably is

6  not viewed by others.

7          As I see this case, this is a situation where,

8  first of all, when we are here at this point, we have to

9  view the case as it exists today.  Not as it may exist

10 post-motion to dismiss.  We have to view it as if we -- if

11 we are going forward on every count today.  If that

12 changes -- obviously, there's gonna be some changes,

13 including this Court may not have subject matter

14 jurisdiction.  So, it could make this entire discussion

15 moot.  However, our view is that this is a complex case that

16 needs special attention.  And I have learned through my many

17 years of litigating in Federal Court all the way back to

18 being a judicial law clerk that if you declare that up front

19 things go a heck of a lot smoother than if you try to come

20 along at your 12-month mark and say, oh, this isn't working.

21          I want to deal with this up front because I

22 believe we have serious issues that are gonna take a lot of

23 time just to give you some sort of description.

24          THE COURT:  How many counts were brought against

25 your clients?

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

1              MR. GEORGE:  Virtually all of them.

2              THE COURT:  Okay.  Thank you.

3              MR. GEORGE:  I think there is one or two that may

4    not be, but virtually all of them.  First of all, I

5    apologize.  Apparently, in the late night drafting of the

6    amended report the paragraph concerning the depositions

7    inadvertently got omitted.

8              THE COURT:  Okay.

9              MR. GEORGE:  I look at this as a 40 to 50

10   deposition case possibly more depending on how things go.

11             Yes, there are --

12             THE COURT:  Well, that concerns me a lot --

13             MR. GEORGE:  Yes.

14             THE COURT:  -- because I'll tell you, you are not

15   gonna get 40 depositions.

16             MR. GEORGE:  Your Honor, you have just heard 55

17   employees, 50 State Presidents, a dozen or more individual

18   Sports Presidents, all of whom act -- actions have to do

19   with this case.  We also have several dozen people who are

20   not employees who are also potential fact witnesses that

21   could be very critical to our defense.

22             So, I see this as a case where we are gonna have

23   to take a lot of depositions, because as you read these

24   complaints, you read all the facts that are alleged and

25   right now I have to take them all as relevant and part of

1   this case, as you read that, you realize that we are gonna

2   have to verify, we are gonna have to get the details of

3   what's behind every one of these.

4           For example, one of the claims that's made is, my

5   client gambles.  Well, that's interesting, but what does

6   that mean?  What's the details?  Why is that relevant?  What

7   does that connect with the case?  Is there a connection with

8   the case?  Is this a deposition we get into and 30 minutes

9   into it we discover it's nothing or is this one that's gonna

10  go 14 hours?

11          And that's the other issue.  With all these

12  parties and all the issues that there are to be involved, I

13  can't see how a lot of these depositions will go seven

14  hours.  This is not going to be a case where we can -- this

15  is not slip and fall.  We cannot do this by the red car/blue

16  car method.  This is going to be one that basically the

17  closest analogue that I can give you, Your Honor, and if you

18  read the complaint it reads like this, this is -- this is

19  pled as a criminal conspiracy and therefore we have to look

20  at it that way and build the web or show that the web

21  doesn't exist.  But one way or another we have to illuminate

22  this entire picture and we can't do it by saying we are

23  gonna do 10 depositions and it will be done in 12 months.

24          THE COURT:  Yeah, your position essentially is

25  because you need to prove a negative, it's gonna take you a

1    lot of time and a lot of effort.

2          MR. GEORGE:  That is a very good way to say it,

3    Your Honor.  I also believe that we are gonna need experts.

4    I anticipate at least two to three on my part.  And I always

5    assume if I have got that the other guys do, too.  Because

6    if nothing else when I disclose one they are going have to

7    disclose a rebuttal.

8          So, I see that it's going to add even more.  When

9    we get into documents, we are not talking five years.  We

10   are probably talking 10, 15 years worth of documents,

11   e-mails, text messages, all of which are going to have to be

12   technically recovered.

13         THE COURT:  I was gonna say why?

14         MR. GEORGE:  Because, again, as this is alleged,

15   there is all these communications that are said to have

16   occurred, all these things which are supposed to have

17   happened and the paper is probably going to become the

18   critical part.  This is gonna be -- to skip forward just a

19   second, this is one of the reasons I proposed phases,

20   because we are going to need to be able to get into that

21   paper to be able to possibly either cut down on depositions

22   or at least cut down on time or possibly identify witnesses

23   that nobody else has caught onto yet.  There is going to be

24   an enormous amount of paper that we are going to have to --

25   electronics that we are gonna have to go through to

1    determine -- again, to illuminate that picture.  And I --

2    and as Your Honor well knows --

3            THE COURT:  Where are you going to go to get that,

4    to get those communications, because I'm assuming they are

5    mostly communications?

6            MR. GEORGE:  They are.  My intention is that USSSA

7    probably has most of it, although my understanding is that

8    one of the plaintiff's is the former IT Director which, of

9    course, brings into question what he may have in his

10   possession.  No accusation, just an observation.

11           THE COURT:  I guess when I say where are you going

12   to go for it, like, I would like to know where you think

13   that information is and what kind of communications, because

14   that's gonna inform me about, like, the likelihood that that

15   communication isn't privileged over a 10-year period -- I'm

16   sorry -- preserved over a 10-year period.

17           MR. GEORGE:  Yes, Your Honor.  First of all, my

18   client informs me he believes it is all preserved and he

19   would be in a good position to know that.  That being said,

20   my understanding is that the physical paper most of it

21   should be at USSSA facility in Volusia County.

22           THE COURT:  In what format?

23           MR. GEORGE:  The paper, the paper part.

24           THE COURT:  Oh, you mean actual --

25           MR. GEORGE:  Hard copies, yes.

1          THE COURT:  Okay.  Sorry.  I don't want to be --

2          MR. GEORGE:  I apologize, Your Honor.  It gets a

3    little complicated sometimes.  For the electronics, I don't

4    know where the server farm is yet.  I don't know if it's on

5    site or if it's off site, but there is going to be a great

6    deal of electronics.

7          THE COURT:  Of e-mail?

8          MR. GEORGE:  Of e-mails, yes, and individual

9    cellphones.  One of the things that I have discovered a long

10   time ago is if you want the truth on communications you want

11   the actual device in your hand, which gets downloaded and

12   had -- you would be surprised the things that can be found

13   in a cellphone that can verify not only communications but

14   also somebody says I was here and you really weren't there,

15   these sort of things.  And that's going to be very

16   critically important.  I think that these are going to be

17   details and it's gonna take time.  We're going to need

18   months to go through that data.  And once we are through it,

19   I think we'll be in a better position.  Then we can start

20   talking about taking parties' deposition.  Once we have the

21   parties done, then we can about to the non-party fact

22   witnesses, wrap with the experts.  And that is the phases

23   that we have proposed because what frequently happens in

24   cases like this is you get people that want to get the cart

25   in front of the horse.  I don't want to take so and so's

1    deposition, but that deposition means nothing until we have

2    got the parties squared away.  And somebody starts clamoring

3    for an expert and I look at them and say, I can't give you

4    my expert's deposition because we don't have fact witnesses

5    done yet.  So that's why I really believe this case needs to

6    be put in phases, needs to be addressed in this manner.

7            Plus, there are a lot of other side issues that I

8    think need to be considered.  First of all, I anticipate we

9    are going to be back here on a routine basis for discovery

10   disputes.  I think we are going to be back in front of Your

11   Honor so much that you are going to get sick of seeing us.

12   And, again, my experience with those matters is that it is

13   best to have it set up beforehand where you know we're

14   coming as opposed to, jeez, those guys are turning up again?

15   So, I think that we should address that upfront.  We are

16   going to have enormous claims of privilege.  We are gonna

17   have all kinds of claims of what does and doesn't exist and

18   what people say they did or didn't look for.  That's gonna

19   be a -- that's gonna be a fight left, right and center.  We

20   also have at least one companion case that I know already is

21   in progress.

22            THE COURT:  What do you mean companion case?

23            MR. GEORGE:  I just was getting ready to -- the --

24   my client has been suspended with the view that he will be

25   terminated.  He has already employed counsel and my

1    expectation is that he will be filing suit against USSSA

2    here shortly.

3            So, that's going to be -- that's gonna be one

4    companion case.  The other companion that's floating out

5    there that nobody's mentioned yet, but if you read this

6    complaint, you can make a really good argument that some of

7    the things that are alleged in there are criminal acts.  So,

8    there is potentially -- I simply don't know and Your Honor

9    knows as well as I do that our friends in the three-letter

10   agencies will never answer you with a straight face if you

11   ask them.  There is entirely a possibility that there is a

12   criminal prosecution out there that we don't know about yet.

13   That's going to completely derail this, because you are

14   going to have everybody taking the Fifth.  So, that's gonna

15   be -- that is a second issue that I think really has to be

16   considered.  And finally --

17           THE COURT:  Has anybody gotten targets letters or

18   anything like that that you know of?

19           MR. GEORGE:  Not as of yet.  And no one has

20   alleged that there has been a report to law enforcement;

21   however, I would just be shocked if somebody hasn't at some

22   point somewhere said something.  But there is no -- my

23   client has no knowledge of it and so far as I know no one

24   here has ever uttered it either.  But I'm not stupid.  I

25   know a potential criminal complaint when I see one.  So, as

1    I said, this thing reads like an indictment --

2            THE COURT:  Let's focus on your clients.

3            MR. GEORGE:  Yes.

4            THE COURT:  Are your clients -- do your clients

5    intend to at least answer discovery or respond to discovery

6    by raising the Fifth Amendment privilege?

7            MR. GEORGE:  That is a possibility.  It has not

8    yet been decided to be perfectly honest with you.

9            THE COURT:  That's fine.  Thank you.

10           MR. GEORGE:  I think that that would very much

11   depend on a case-by-case basis and the facts as they have

12   developed as we proceed forward.

13           And then finally, Your Honor, I would point out

14   that we have four different sets of counsel.  And my

15   experience with such matters is that every time you add

16   another counsel to a case, you square the difficulties of

17   how much you have to go through to get something scheduled.

18           So, I cannot in any stretch of the imagination

19   believe this will be done any time soon.  I believe that the

20   dates that we have given -- and the defendants work together

21   to develop one set of date.  I believe those dates are

22   absolutely at the bone.  I think -- I'm afraid we might have

23   cut it a little too tight, but it's going to be a situation

24   where we're going to have tons of discovery that's gonna

25   have to be done.  And as I said, I believe this case should

26

1   begin with the documents and the electronics, the ESI as the

2   starting point, then move to a phase of fact witness

3   depositions of parties, then the non-fact witnesses -- or

4   excuse me, the non-party fact witness and then wrap with the

5   experts.  And I do believe given the large number that we

6   are talking 40 or 50 people that we're going to want to

7   depose.

8            THE COURT:  When you say we, meaning your clients?

9            MR. GEORGE:  I mean, my clients that we -- we're

10  looking at this as a situation where every person who has

11  had contact with these allegations is gonna have to be a

12  witness.  So, that's -- and I know that's really a lot, but

13  the allegations that have been made here are extremely

14  serious and we can't just -- this isn't asking for five

15  witnesses which direction they saw the car come from.  This

16  is going to be -- most of these witnesses are going to be

17  unique.  I don't think we are gonna get more than -- except

18  for high level people, I don't think we are gonna get more

19  than two, maybe three in any particular one of the claims.

20  But with this enormous number of claims and enormous number

21  of factual allegations, I think -- that literally covers the

22  waterfront for years and years of conduct, I can't possibly

23  see how we can just say we can do this with 10 depositions

24  and move on.  I can't.

25           THE COURT:  Just before you -- before you leave

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

```
 1    the podium --

 2              MR. GEORGE:  Yes, Your Honor.

 3              THE COURT:  -- I am interested, can you remind me

 4    the positions that your clients had in the organization?

 5              MR. GEORGE:  Yes, Your Honor.  Mr. Dedonatis was

 6    the -- I believe the CEO was his official title.  He was the

 7    top executive.

 8              THE COURT:  And who is the other?

 9              MR. GEORGE:  And still currently is.  He is

10    suspended, but it is our understanding that that is a

11    temporary process and the way to his discharge.

12              THE COURT:  Okay.

13              MR. GEORGE:  Mr. Hornbacher, on the other hand, is

14    quite to the contrary.  He is a State President and has a

15    very minor role at the headquarters.  My understanding is

16    that mostly the reason that he's part of this case is

17    because he's a blood relative of Mr. Dedonatis.  If it

18    wasn't for that fact, I question whether he would be a

19    defendant at all.

20              THE COURT:  What is his role in headquarters?

21              MR. GEORGE:  He has just a very small

22    administrative role, Your Honor.  I'm not -- the exact

23    details of it are a little fuzzy.

24              THE COURT:  Okay.

25              MR. GEORGE:  I hesitate to use the phrase
```

```
 1   step-and-fetch-it, but it seems -- as I listen, it seems
 2   that that's the way it goes.
 3              THE COURT:  Okay.  Thank you very much.
 4              MR. GEORGE:  Thank you, Your Honor.
 5              THE COURT:  Ma'am?
 6              MS. STRASSER:  Good morning, Your Honor.  I don't
 7   have that much to add.  Jillian Strasser on behalf of Ms.
 8   Anderson, Ms. Ceo and Mr. Fortuna.  We generally agree with
 9   USSSA's position as it relates to the complexity of the case
10   and the discovery that need be had in this matter.  I think
11   our position is outlined -- any differences we have are
12   outlined in our report that was filed a couple weeks back.
13              I don't know if you have any questions for me, but
14   I don't have much more to add other than what was said by --
15              THE COURT:  Do you think the defense of your
16   clients are going to require you to take more than 10
17   depositions?
18              MS. STRASSER:  Perhaps.  I was thinking 15 to 20.
19              THE COURT:  Okay.  And nobody has really touched
20   on it except for the plaintiff's counsel of the increased
21   number of interrogatories.  What's the basis for that
22   request?  I'm sorry, did you mention it?  I'm sorry.
23              MR. GEORGE:  That was mine, Your Honor.  And,
24   again, that was my attempt to try to narrow things a bit so
25   we could cut down on depositions if interrogatories revealed
```

1    that somebody didn't -- I'm sorry.  I skipped over that.

2              THE COURT:  All right.

3              MS. STRASSER:  Yes, that was the position of Mr.

4    Dedonatis and Mr. Hornbacher.  My clients have not taken

5    that position.

6              THE COURT:  Okay.  Thank you.

7              If you don't have anything else to add, I think

8    what we will do is I'm gonna move right to the amended joint

9    uniform case management report.

10             So, I think the defendants have convinced me --

11   so, typically in the Middle District of Florida we usually

12   put things on a 12-month track for discovery.  And then

13   after discovery it's usually about a five-month process to

14   get to trial.  And this is Judge Dalton case.  I know Judge

15   Dalton's case management practices well.  I have worked with

16   him for many years and he's gonna want five months from the

17   close of discovery to trial.

18             But I do think that since there does seem to be a

19   larger number than I think usual in a case even -- even

20   assuming the RICO charge -- RICO claims go away, it seems

21   there is a lot of factual overlap that will require a lot of

22   depositions.  And, you know, I recognize that if it requires

23   a lot of depositions it means you are going to be -- you are

24   going to be asking for a lot of electronic and other

25   discovery, written discovery.  So I do think that the

1    defendants have the better argument and we should be going a

2    little bit longer than 12 months, because I do recognize

3    that collecting -- particularly collecting electronics off

4    of phones can be a difficult task and, you know, there are a

5    lot of problems that come up when you are collecting off of

6    phones.

7          So, we will address that as it comes through, but

8    that's just sort of my preliminary take on what we've just

9    discussed about the type of discovery, the length of

10   discovery and the amount of discovery that needs to happen.

11         So, the first event is the deadline for providing

12   mandatory disclosures.  The plaintiffs have 12-4 down.  The

13   defendants want until March.  It's a highly unusual request

14   to go that long before initial disclosures.  I'm gonna say

15   that it's almost certainly not appropriate to wait until

16   March to make initial disclosures.  I will remind the

17   parties that, you know, there is an ongoing obligation to

18   update the initial disclosures throughout discovery and

19   those amendments happen routinely and I think it will

20   provide the defendants with, you know, sufficient protection

21   so they are not prejudiced at the time, because I -- and

22   correct me if I'm wrong -- any of the defense counsel if I'm

23   wrong -- my assumption is that you wanted that amount of

24   time so you can investigate the claims and also give some

25   time for the Court to move through your motion -- your

1  pending motions; is that correct?

2          MR. OPRISON:  That was our position, yes, Your

3  Honor.

4          THE COURT:  So, I don't think those are -- those

5  types of rationales really require a March date for initial

6  disclosures.  I am going to adopt the plaintiffs date for

7  initial disclosures and just remind the parties that they

8  should amend their initial disclosures as necessary.

9          So, the deadline for moving to join a party, it

10 looks like all the parties are in agreement that deadline

11 should be in February.  I think it makes a lot of sense to

12 me to push that deadline to February.  Generally speaking

13 Judge Dalton's practice is to put it about a month after

14 initial disclosures.  I recognize that that might be a

15 little bit early in your process of sussing out the claims

16 and investigating the claims.  So, I'll adopt -- I'm going

17 to recommend that the Court adopt the January 26th deadline.

18 There is a note in the case management --

19         MR. VOLKOV:  January or February?

20         THE COURT:  I'm sorry.  Deadline is February 26,

21 2024.

22         MR. VOLKOV:  Okay.  I'm sorry for misspeaking.

23         There is a note -- the defendants had a note in

24 their column that said along with that date, that the

25 defendants wanted a stipulation from all parties not to

1  oppose a motion to amend or add a party if a new party is

2  revealed in discovery.  I'm not going to adopt that.  I will

3  say that if the defendants do find that through discovery

4  that somebody should be added as a party, you know, they

5  should use the process provided by the Federal Rules of

6  Civil Procedure to add parties.  If it's truly a party who

7  is recently discovered or recently identified in discovery,

8  that would be good cause to add them.  And I think the Court

9  would be in a better position to do that based on the

10 factual circumstances at the time the party decides to add

11 them to the case.

12       And that leaves the final sort of discovery

13 deadlines and that would be the phasing issue, deadlines for

14 serving expert discovery and the deadline for completing

15 discovery.

16       And, Mr. Oprison, am I correct the 1-24-2025 date

17 is approximately 18 months?

18       MR. OPRISON:  From the filing, yes, sir.

19       THE COURT:  From the filing date?

20       MR. OPRISON:  Yes.

21       THE COURT:  Thank you.  I think based on what I

22 have heard here today that I am going to recommend that

23 later date for Judge Dalton.  I am not going to recommend

24 that Judge Dalton adopt a schedule that requires the parties

25 to engage in phased discovery.  That -- in my view, phased

1    discovery works best when the parties work together and they

2    don't have a -- a delineated deadline imposed by the Court.

3    And, quite frankly, I think the parties are in the best

4    position to know what discovery needs to be done before a

5    particular deposition.  And when the Court starts imposing

6    deadlines within the discovery period of phasing that it

7    becomes problematic and it, quite frankly, becomes a tool in

8    which other parties can -- can throw a wrench in the works.

9    So I am not going to recommend phased discovery.  I am going

10   to recommend the final discovery deadline as proposed by the

11   defendants of January 24, 2025.  And I'm gonna work

12   backwards from that date for the expert disclosures.  I

13   think both parties recognize not a phased, but a tennis

14   match version of the expert disclosure deadlines.

15            The questions that I have for the parties, nobody

16   really touched on this, are there issues in the claims or in

17   the potential affirmative defenses -- because I recognize

18   the defendants have filed motions to dismiss -- are the

19   issues in which the defendants will have the burden of

20   proof?

21            MR. OPRISON:  I don't anticipate any that we would

22   at this time, Your Honor, but they may arise depending on

23   what we see as we go through discovery and if we have to

24   file an amended answer at some point down the road if we are

25   still in the case at that time.

1              THE COURT:  Okay.  Thank you.  And the reason --

2              MR. GEORGE:  Your Honor, I recognize what you are

3    looking at and I had that same question when we were going

4    through this process.  At this point, I don't see one

5    glaring me in the face, but I recognize that the rule really

6    is even though it's written on here plaintiff, defendant,

7    rebuttal.  Really, the rule is the party with the burden of

8    proof on an issue, the party without the burden of proof,

9    rebuttal.  And we discussed that.  The reasons it's written

10   the way it is right now is because no one had something they

11   could put their finger on that was going to be where the

12   defendants would have the burden of proof, but I recognize

13   that completely and I would take the position that these

14   deadlines would apply the way the rules intended to operate.

15   So, if something pops up, somebody makes an affirmative

16   defense that puts the burden of proof on them, they are

17   bound by this deadline.

18             THE COURT:  Okay.  Thank you.  And as Mr. George

19   just mentioned, that is essentially my understanding of

20   these rules.  So Judge Dalton's case management report does

21   identify a deadline for the plaintiffs' disclosure of

22   experts, a deadline for the defendants' disclosure of

23   experts and then a rebuttal.  I would say in 90 percent of

24   the cases that come before the Court that's a sufficient way

25   of describing who has the burden of proof.  But I really

1    view these deadlines as a burden of proof deadline.  So, if

2    a party has the burden of proof on a particular issue, they

3    should consider themselves a Plaintiff under the rule and

4    affirmatively set forth that.  Now, I will say I am going to

5    recommend -- make the recommendation to Judge Dalton using

6    his format and using the way he recognizes this, and that is

7    a deadline for the plaintiff, a deadline for the defendant

8    and a deadline for the rebuttal.  If there should come to

9    pass some instance where, for instance, the Plaintiffs

10   believe the -- a Defendant has the burden of proof, if the

11   parties can't come to an agreement as to when their

12   disclosure should be disclosed -- and you should talk to

13   each other before the deadlines -- bring it up to the Court

14   so we can just clarify in the front end and make sure

15   there's no hiccups at the back end of this case.  I do think

16   it's appropriate, as the Defendants have asked, for a

17   September opening deadline for expert discovery.  That will

18   give the parties just under, I think, 10 months at this

19   point to conduct fact discovery.  And since we are going to

20   be looking at an extended number of depositions, I

21   believe -- and we do have a large number of moving pieces

22   and defendants, I think it's appropriate to have the

23   extended discovery and then just kind of -- so, I'm going to

24   adopt the -- and recommend to Judge Dalton that he adopt the

25   Defendants' proposed schedule for expert disclosures.  And

1    that is for the Plaintiff, September 27, 2024.

2            For the Defendant, October 25, 2024.

3            And for rebuttal experts, November 22, 2024.

4            And I'm -- I haven't checked any of these to make

5    sure that they are -- that they haven't fallen on a Federal

6    holiday, but my staff will verify that before we go.

7            MR. OPRISON:  We checked those before we submitted

8    them, Your Honor.  They all appear to be on workdays.

9            THE COURT:  Perfect.  Thank you very much.

10           So, we don't have class here.  That leaves the

11   deadline for filing dispositive motions.  You know, if we

12   are completing discovery in -- if we are completing

13   discovery in January, generally speaking the parties usually

14   get about a month in Judge Dalton's scheduling orders to

15   complete dispositive motions, to prepare -- to complete the

16   review of discovery and then prepare dispositive motions.

17   And that's usually to make sure that everyone has an

18   opportunity to get the last few transcripts in at the end of

19   the discovery period.  You know, generally speaking, it

20   would be February.  The defendants have asked for a March

21   deadline.

22           Do the plaintiffs have a strong -- since we are

23   really only looking at a couple of days --

24           MR. VOLKOV:  We are fine with that.

25           THE COURT:  So, I'm going to propose to Judge

1    Dalton that he use March 3rd as the discovery deadline -- or

2    as the deadline for dispositive motions and motions in

3    limine.

4             So, the parties have proposed a mediation deadline

5    of February 3, 2025.  I just want to check.  Have the

6    parties considered whether or not it's -- they want to hold

7    the mediation before dispositive motions or do you -- would

8    it benefit the parties to have dispositive motions and the

9    responses filed before they go into mediation?

10            MR. VOLKOV:  I would recommend that we do it after

11   the filing of the motions.  I think it's more helpful to

12   have the issues joined like that and then go into mediation.

13   I don't know --

14            THE COURT:  What's the defendants' view?

15            Mr. George, you can go ahead and go first.

16            MR. GEORGE:  Your Honor, I always look at this as

17   a deadline; that is to say, it has to happen by here.  It's

18   not a will happen here.  Therefore, kind of going back to

19   what Your Honor talked about with the phases a few minutes

20   ago, I feel like giving this into the hands of the parties

21   to be able to flex this a little bit gives them the

22   opportunity to decide, are we to a point where we need to

23   have mediation early?  Do we want to do it late?  How does

24   that work out as the case develops?  Sometimes you have

25   cases where you get -- you know, the facts develop and you

1   realize this thing's gotta go.

2           THE COURT:  So, in your view the deadline should

3   be later rather than earlier?

4           MR. GEORGE:  Exactly.  I agreed to this one

5   because I was making compromises with people, but I want as

6   much time on that as I can with the understanding that if

7   the parties decide that we want to go three months before

8   dispositive motions, so be it.

9           THE COURT:  Okay.  Mr. Oprison?

10          MR. OPRISON:  I actually would agree with that,

11  Your Honor.  I think the parties can do it at any time.  I

12  always think that early mediation and maybe multiple

13  mediation sessions depending on how facts are unfolding

14  during the depositions and discovery is always helpful, help

15  sort of crystalize those issues.  So, I think this is

16  probably a pretty good deadline.  I'm not in favor of

17  pushing it beyond the filing of the motions.  I think

18  everybody should probably know at that point where the

19  weaknesses are, blind spots and that sort of thing after

20  discovery.  So, I think 2-3 is probably the appropriate

21  deadline, Your Honor, with the expectation we may be doing

22  mediation in 2024 if we're still in the case.

23          THE COURT:  Okay.  Ms. Strasser?

24          MS. STRASSER:  I'm kind of inclined to also agree

25  that it should be pushed beyond that dispositive motion

 1  deadline.  I think that then the issues are framed,

 2  everything is a little more compacted and we are prepared to

 3  mediate the case knowing everyone's position once the

 4  motions are filed.

 5              THE COURT:  Okay.

 6              MS. STRASSER:  I would agree with that.

 7              THE COURT:  So, I think the majority of the

 8  parties here are in favor of a mediation deadline after the

 9  filing of the dispositive motions.  I'm inclined to agree

10  with that and I think -- I think it is exactly what

11  Mr. George was saying, that it is a deadline.  It's a

12  deadline the latest that you can do something.  If the

13  parties can come to an agreement and they would like to do

14  mediation before then -- and the mediation does not have to

15  include all the parties to a case.  It could just be --

16  if -- and I'm not saying that any Defendant is going to be

17  in, you know, any particular way problematic, but if one

18  Defendant or several Defendants decide that they want to

19  resolve the claims against them earlier then they can go

20  into mediation with the Plaintiff earlier than that.  But I

21  do think that it doesn't have to be particularly too -- too

22  far after the dispositive deadline.  And if there is a

23  March 3rd dispositive deadline, that means the response is

24  due in the beginning of April.  And, so, I think by the end

25  of April is probably a good date through which to set a

1  mediation deadline.  And I understand that means that if you

2  file a dispositive motion you are going to be working on a

3  replay in April.  So, I'm gonna recommend a mediation

4  deadline of April 30, 2025.  And am I correct that the

5  parties have not yet proposed a mediator?

6          MR. VOLKOV:  That's correct, Your Honor.  We were

7  going to try to agree on somebody and submit that and we are

8  happy to do that within 14 days from today if the Court

9  wants.

10          THE COURT:  All right.  So, that's what I'm going

11  to do.  I'm gonna direct the parties to reach an agreement

12  and find a mediator who can mediate it.  If the mediator is

13  not available by April 30, 2025, then if it is referred to

14  me and I'm fairly certain it would be referred to me, I

15  would willing to grant a short extension of that deadline on

16  the mediator's schedule.  So, you have two weeks from this

17  hearing date to propose a mediator and to propose a date for

18  that mediation.

19          And, again, that doesn't prevent the parties from

20  mediating before that.

21          Okay.  The final pretrial deadlines.  I am going

22  to have to work backwards from this and maybe the parties

23  have already done this for me.  So, generally speaking,

24  about five months from March.  That would be August for the

25  date of the final pretrial meeting -- I'm sorry -- for the

1    trial term.  And I see that the defendants are -- once

2    again, I think backwards, so I think from the trial date and

3    the defendants have proposed a September 2025 trial term.

4    You did put a date in there.  I will say my recommendation

5    to Judge Dalton, it's the month.  He does a trial term.  And

6    his September trial term generally speaking starts on the

7    first of the month.  And I will recommend it for the

8    September 2025 trial term.  And that will -- his trial term

9    in September starts on September 2nd at 9:00 am.  Again, I

10   think you are all experienced Federal practitioners.  At

11   least in our Court, criminal trials always take precedence.

12   Judge Dalton has a heavy trial calendar, so the Court cannot

13   guarantee or give you a date certain for the beginning of

14   the trial.  It will be whenever a criminal date -- it will

15   be whatever date he is available after his criminal trials

16   are resolved.

17           If the parties are interested in receiving or

18   getting a trial date that is certain at a particular time,

19   you can discuss whether or not you would like to consent to

20   the jurisdiction of the Magistrate Judge for the resolution

21   of the case.  It's my practice to provide date certain for

22   trials -- for trials that have consented to my jurisdiction

23   but that's up to the parties.

24           The date of the final pretrial conference, I think

25   that's fine.  That's about a week before the beginning of

42

1   the trial date.  The date that is proposed by the

2   plaintiffs -- or, I'm sorry, the defendants.  And that date

3   is August 22, 2025.  Generally speaking, when I make a

4   recommendation for final pretrial conferences, I make

5   recommendations for weeks, because I don't control Judge

6   Dalton's trial calendars or his schedule.  So, I am going to

7   propose -- recommend to him that he set the final pretrial

8   conference the week of September 15th or the week of

9   September --

10              MR. OPRISON:  August or September?

11              THE COURT:  I am sorry.  You are correct.  I am

12   going to propose that he set the pretrial conference the

13   week of August 18th or the week of August 25th.

14              Now, I know the deadline for filing a joint final

15   pretrial statement, a motion in limine and Judge Dalton's

16   practice is I believe that there is one single motion in

17   limine for all non-experts.  So, if it's a Daubert motion,

18   it gets filed with the dispositive motions.  If it is a

19   motion in limine or if the parties decide to file a motion

20   in limine, it's one combined motion in limine per party.

21   And I know the form says seven days, but I'm going to push

22   that deadline to approximately two weeks.  And that is

23   because under local rules it takes two weeks for a response

24   and I think Judge Dalton would benefit from having a

25   response before his pretrial.  So I am going to set that --

```
 1    or make a recommendation that the deadline for filing a

 2    joint final pretrial statement, a motion in limine, proposed

 3    jury instructions and verdict forms, that deadline be

 4    August 4th.

 5            And that would push the date of the final pretrial

 6    meeting which happens approximately two weeks before that,

 7    so that would be July 21th.

 8            Now, sometimes the parties feel like two weeks is

 9    not enough time for a final pretrial meeting.  Is there any

10    objection to having two weeks before?

11            MR. VOLKOV:  No objection from the Plaintiffs.

12            MR. OPRISON:  Not from us.

13            MR. GEORGE:  No, Your Honor.

14            THE COURT:  All right.  I have already hit on the

15    phased discovery.  I'm not gonna make a recommendation.  In

16    fact, I'm gonna make a specific recommendation to Judge

17    Dalton that he not adopt a phased discovery approach to this

18    case aside from his standard deadlines.  I am going to

19    recommend that he allow each party up to 15 depositions.

20    You know, should any particular party feel the need for more

21    than 15 depositions, I think that is the type of request

22    that should be made by motion and based on the particular

23    circumstances of the case.  And I think it's too early to

24    really prejudge whether or not you need more than 15.

25            I'm also going to increase the number of -- I'm
```

1    gonna make a recommendation that Judge Dalton allow you to

2    have more than -- it is 20 under the rule -- under the rules

3    for interrogatories, but I'm only going to make a

4    recommendation up to 30 interrogatories.  I have been

5    practicing for nearly 20 years and I don't know of a single

6    case that I have ever been in that required more than 30

7    interrogatories.  It could happen.  It could be this case.

8    And I had a pretty complex practice, civil practice, but I

9    do think that the Defendants have made a good showing for

10   the need for more than the standard 20 interrogatories.  And

11   I do think, once again, if there should come a need for

12   additional interrogatories based on the particular

13   circumstances, the Court will definitely entertain a motion

14   to -- for additional interrogatories.  So I'm not

15   foreclosing any more that would be needed, I just don't

16   think we need to authorize them up front.

17           So, I think I've now addressed all of the issues

18   in this -- in the discovery portion of this case.  Is that

19   correct plaintiffs, Mr. Volkov?

20           MR. VOLKOV:  Yes, Your Honor.  I don't see any

21   other outstanding issues.

22           THE COURT:  Mr. George?

23           MR. GEORGE:  Your Honor, one small point.  Given

24   the number of parties -- and I mentioned this in my

25   presentation.  I think at least in some of these, at least

1    for the party depositions, seven hours is not going to do

2    it.  I would recommend that for the parties that it be

3    increased to 12 even if we have to do it in two days.

4           THE COURT:  I'm not gonna authorize that or I'm

5    not gonna make a recommendation for that.  And I will say,

6    like, I do think that that is a determination that needs to

7    be done witness by witness.  And it's also -- I'm sorry.

8    You can be seated.

9           And I also think that it's also an issue that the

10   parties can resolve themselves.  If Mr. Volkov, for

11   instance, believes witness one needs to be deposed, he can

12   notice the deposition, depose him one day.  And if the

13   agent -- if the organization feels like that person -- that

14   he needs seven full hours for a deposition of that

15   individual, he can also notice a separate deposition of that

16   individual and that individual will be deposed more than

17   seven hours in that case.

18          Now, I recognize that there is an argument that

19   sort of evades the limits and the rules, but I do think --

20   like, I recognize that seven hours for one person might not

21   provide enough opportunity for another, so I do think this

22   is one of those cases where the parties may wish to

23   separately notice separate depositions of individuals.  If

24   the individuals have objections to that, because I know that

25   there will be some non-parties, I think we can work through

1    that when those issues arise.  But you should probably warn

2    your clients that I'm going to be lenient when it comes to

3    the hour rules.

4              Mr. Oprison, do you have any additional things

5    that the Court needs to address on the schedule or the

6    requests for additional discovery?

7              MR. OPRISON:  Nothing.  Not at this time, Your

8    Honor.  Thank you.

9              THE COURT:  Ms. Strasser?

10             MS. STRASSER:  No, Your Honor.

11             THE COURT:  All right.  Thank you.  And that

12   leaves the Organization's motion to stay discovery that was

13   filed last night.  And, Mr. Oprison, I'll give you -- and

14   I'm sorry for -- you filed this last night.  I recognize

15   that you might not have had a chance to prepare a

16   presentation on this or an argument, but I do think that I

17   would like you to have an opportunity to argue the motion

18   and then I'm gonna give the plaintiffs an opportunity to

19   respond.

20             MR. OPRISON:  Thank you, Your Honor.  I appreciate

21   that.  I appreciate getting it resolved as soon as possible.

22   Your Honor, these are -- understanding that these motions to

23   stay discovery are the exception, not the rule.  I think

24   Chudasama sets out a pretty clear standard.  We also have

25   other cases from recently within this District where it's

1    very clear where if you have jurisdictional challenges like

2    we have here, may not be a personal jurisdiction, but a

3    subject matter jurisdiction --

4        THE COURT:  I was gonna say --

5        MR. OPRISON:  -- challenge where it may be that a

6    large part or a large chunk of these claims go away,

7    particularly as to my client --

8        THE COURT:  So, I have looked at your motion to

9    dismiss.  I know there is standing arguments in there, so

10   what are the other jurisdictional issues?

11       MR. OPRISON:  Well, that would be it, Your Honor.

12   That they simply don't identify -- the plaintiffs do not

13   identify any injuries that occurred as a result of any of

14   the allegations against USSSA.  We think that's a 12(b)1

15   subject matter jurisdiction.  Certainly --

16       THE COURT:  Absolutely.

17       MR. OPRISON:  -- should go out the door.  That's

18   even, I think, more -- a more impactful argument than, say,

19   personal jurisdiction that could be -- there could be

20   arguments as to whether or not Daimler and the other issues

21   arise.  Here, it's pretty clear that subject matter

22   jurisdiction is lacking at least as pleaded now.  If there

23   is an opportunity --

24       THE COURT:  Standing is lacking.

25       MR. OPRISON:  I'm sorry.

1          THE COURT:  We will just go with the standing.

2          MR. OPRISON:  Standing.

3          THE COURT:  Yes.  But I recognize your point and I

4    think it's appropriate and it's an appropriate and accurate

5    point under Eleventh Circuit precedent that standing is a

6    jurisdictional issue, but let's just talk about standing.

7          MR. OPRISON:  Got it.  Standing.  Right, Your

8    Honor.  So, in terms of what the -- if the Court is

9    permitted to take this preliminary peek into the

10   allegations, we are not certainly arguing the full motion to

11   dismiss now, but there are significant deficiencies in the

12   ability of the Plaintiffs to bring an action against USSSA.

13   The way they pleaded the claims, and we have to go on that,

14   there is a lot of allegations, 91 pages, 245 paragraphs, I

15   believe, but not a single allegation about anything that

16   USSSA has done or any individual actor has taken action on

17   behalf of, in furtherance of, or to the benefit of USSSA.

18   And as we pointed out in the motion to dismiss it's very

19   clear that, in fact, if you take a plausibility standard,

20   Iqbal/Twombly, look at the allegations themselves.  You

21   can't walk away from this with anything other than the

22   conclusion that the actions were taken to the detriment of

23   the Association, not to the benefit of and certainly could

24   not have been, therefore, taken on behalf of or attributed

25   to USSSA.  So we think that as a result of the motion to

1   dismiss there will be a significant trimming if not

2   elimination of our party -- of my client from the case, Your

3   Honor.

4           THE COURT:  Have you challenged -- so there are --

5   there are also employment-based retaliation claims in this

6   case; am I correct?

7           MR. OPRISON:  There are retaliation claims that

8   they have raised as to individual actions.  And I think the

9   way they framed them in the complaint, Your Honor, is that

10  these were individual vendettas or retaliation taken by Mr.

11  Dedonatis or others or at his direction, not something that

12  would be within the scope of --

13          THE COURT:  Within the scope of his employment.

14          MR. OPRISON:  Right.  Exactly right, Your Honor.

15  But at a minimum, even if we leave some on the table, there

16  is going to be a significant narrowing after the motion to

17  dismiss we believe just by looking at what the nature of

18  some of the deficiencies are in the pleading.  And we

19  believe that that is significant reason to look at this and

20  say maybe we should not take a full bore approach on

21  discovery right now.  Let's be judicious about it, hold off

22  for a month or two or three, however long it takes for the

23  Court to rule on this.  And then we know exactly what's at

24  stake and what the scope of any discovery would be.

25          THE COURT:  Well, I mean, is that really true?

1   Because even if the motion was granted, you know, my

2   assumption is that Judge Dalton -- and this is just an

3   assumption -- will probably give the Plaintiffs at least

4   another opportunity to amend their complaint and try to

5   raise those claims with the appropriate factual basis.  So,

6   we are really not looking at a couple months to trimming it.

7   It's probably gonna be an extended process.

8            MR. OPRISON:  It may be, Your Honor.  But, one, I

9   don't want to predict what the Plaintiffs would do.  They

10  may decide that if they simply cannot plead new facts -- I

11  mean, they have had one opportunity already to replead.

12  They didn't just have to cure.  We think there is still some

13  shotgun pleading issues there.  But they didn't just have to

14  cure those and differentiated claims and that sort of thing

15  they could have taken the opportunity to bring forth new

16  facts and they didn't do that in this first amended

17  complaint.  If the Court decides to give them another

18  opportunity to amend, the Court is gonna give them another

19  opportunity to amend, but Your Honor we don't believe based

20  on what they have pleaded, 91 pages, 200-plus allegations or

21  paragraphs, that they will be able to bring forth any new

22  facts.  And that's what we are talking about here, Your

23  Honor.  They took their best shot on the first -- the

24  original and first amended complaint and, Your Honor, we

25  believe that if the Court will give them an opportunity

```
 1    we'll be in the same place three or four months down the

 2    road arguing the same motion to try to hold off and

 3    incurring and running up costs for an organization that is

 4    much better using its resources for other things.  And we

 5    should be very -- we have a lot of time now.  We should be

 6    thinking about whether or not that cost should be imposed

 7    now or whether or not we should wait to see really what the

 8    core of the claims are gonna be after ruling on the motion

 9    to dismiss.

10              THE COURT:  All right.  Thank you very much

11    counsel.

12              MR. OPRISON:  Thank you, Your Honor.  Mr. Volkov?

13              MR. VOLKOV:  Your Honor, obviously -- and I

14    think --

15              THE COURT:  And I recognize that you haven't had

16    an opportunity to --

17              MR. VOLKOV:  No, I haven't.

18              THE COURT:  -- really look at this.  I will say

19    that I'm going to take the motion under advisement today.

20    And one of the things is I wanted to know if you wanted an

21    opportunity to respond in writing to the motion.

22              MR. VOLKOV:  Yes, we do.

23              THE COURT:  Can you do that within seven days?

24              MR. VOLKOV:  Sure.  We would be happy to do so.

25              THE COURT:  Okay.
```

52

1           MR. VOLKOV:  If I could address just a couple of

2    the issues.  There is a fundamental misunderstanding as to

3    how civil RICO and how an enterprise works.  RICO does not

4    require for an organization that there has to be a profit

5    making motive.  The organization as an enterprise and an

6    illegal enterprise can be used as a means by which to

7    conduct a pattern of racketeering activity.  And here what

8    we are going -- and I think the fundamental flaw in their

9    argument is that Congress in 2000 or Sarbanes-Oxley amended

10   RICO to include two Federal retaliation statutes, 1512 and

11   1513 of 18 U.S.C. code.

12          And what that does is there are cases prior to

13   that with regard to retaliation not being an injury in fact

14   that has occurred.  The cases since then, however, and

15   there's also a Seventh Circuit case directly on point says

16   that when there's retaliation, when there's racketeering

17   acts that are connected to the retaliation then there is

18   injury in fact.  And we will -- and we have alleged injury

19   in fact in this case.  So, I don't believe there's gonna be

20   a significant trimming with regard to RICO.  Maybe some of

21   the pattern of racketeering activity, but nonetheless the

22   bulk of what we are talking about, retaliation, fraud, you

23   don't have to show that the enterprise benefited from the

24   fraud.  Here, what we -- the allegation is that the

25   enterprise benefited by everybody having great salaries,

```
 1   increased salaries, bonus payments paid to everybody.

 2            THE COURT:  You are saying the organization is the

 3   enterprise?

 4            MR. VOLKOV:  Exactly.

 5            THE COURT:  That's the allegation?

 6            MR. VOLKOV:  That's the allegation.

 7            THE COURT:  Okay.  That's --

 8            MR. VOLKOV:  The second point I wanted to say even

 9   if -- even if the RICO count were dismissed we also have the

10   ability and we would ask the Court and leave to amend the

11   complaint to include a Federal Whistleblowing violation,

12   which requires a six-month period for administrative action.

13   That period is running right now.  And so --

14            THE COURT:  You have placed them on notice under

15   that statute?

16            MR. VOLKOV:  Yes, correct.  So then --

17            THE COURT:  Well, your clients have placed them on

18   notice.

19            MR. VOLKOV:  The client.  So, then what would

20   happen is we would move to amend the complaint and add that

21   Federal count.  If -- I'm just saying, Mr. Oprison, they are

22   very good counsel and they may, you know -- let's just say

23   worse come to worse they knock out the RICO, we still have

24   that Federal jurisdictional hook as well as diversity.  We

25   have two -- the two Plaintiffs are from Pennsylvania and
```

54

```
 1   Ohio respectfully.  I mean, Michigan and Ohio.
 2            THE COURT:  The two Plaintiffs and --
 3            MR. VOLKOV:  Yeah.
 4            THE COURT:  -- and none of the Defendants are from
 5   those states?
 6            MR. VOLKOV:  Correct.
 7            THE COURT:  Okay.  How much -- and you said that
 8   you could respond to that motion within seven days.
 9            MR. VOLKOV:  Within seven days.  And I think --
10   as I recall Mr. George was also -- opposed a grant on a stay
11   of discovery as well.
12            THE COURT:  Okay.  So, I will allow Mr. George
13   also to respond.  Thank you very much, Mr. Volkov.
14            MR. GEORGE:  Thank you, Your Honor.  I will be
15   very brief.
16            THE COURT:  And Mr. George, since you do oppose,
17   I'll assume that your client may want to also file
18   opposition papers.
19            MR. GEORGE:  Yes, Your Honor.
20            THE COURT:  Are you able to do those in seven
21   days.
22            MR. GEORGE:  Yes, Your Honor, I can.  I will be
23   very brief.  I see this from a practical perspective.  We
24   just went through 10 minutes ago a lengthy process to --
25            THE COURT:  You need the time.
```

```
1              MR. GEORGE:  We need the time.

2              THE COURT:  Yeah.

3              MR. GEORGE:  And the way that I see it is that

4    USSSA is the one that holds all the hard copies and all the

5    ESI

6              THE COURT:  I won't remind any irony in the fact

7    that you are asking for phased discovery, but now you are

8    asking that you need the time for --

9              MR. GEORGE:  I see it the same way, because as you

10   recall, the first phase I asked for was the documents.

11             THE COURT:  Right.

12             MR. GEORGE:  So, I wanted -- the way I saw this

13   and still see it, with all due respect --

14             THE COURT:  No, I recognize that.

15             MR. GEORGE:  -- I want those documents and I want

16   them as quickly as possible because I need the time to be

17   able to get through those.  So, I see this from a practical

18   perspective.  I want the documents.  I could care less about

19   the depositions because I'm gonna need time to get there.

20   But I want -- the reason I don't want a stay is because I

21   want that -- I want that time to get through the documents.

22             So, from my perspective this is -- if we are gonna

23   have a stay then I would ask that everything be stayed, that

24   the calendar doesn't start to run.  I don't think that's

25   practical, but that's the way I see it, because otherwise
```

```
 1   I'm losing the time that I just earned a minute ago.
 2            THE COURT:  Have the parties -- have the parties
 3   exchanged initial disclosures?  I'm assuming the answer is
 4   no?
 5            MR. GEORGE:  No, Your Honor.
 6            THE COURT:  Have the parties exchanged any sort of
 7   written discovery?
 8            MR. GEORGE:  None, Your Honor.  As you will recall
 9   Rule 26(F) prohibits us from doing so prior to the meeting.
10            THE COURT:  And the meeting occurred when you --
11   back a month ago.
12            MR. GEORGE:  Fair enough.  But this Court ordered
13   it almost -- actually, it only happened about a week and a
14   half ago, but Your Honor ordered this practically overnight
15   so we just -- everybody I think came to the same conclusion
16   we are gonna wait and see what the Court does first.
17            THE COURT:  Okay.  Yeah.  No, and you are right.
18   So, the meeting did happen, you know, in the middle of -- I
19   see it happened on the 16th.  Thank you.
20            MR. GEORGE:  Thank you, Your Honor.
21            THE COURT:  So I'm going to take the motion under
22   advisement and I'll give anyone who would like to file a
23   response to it until next Thursday to file their response.
24   I do note that the Defendant indicated in a footnote that
25   they didn't believe that a short form discovery order that I
```

1    imposed in this -- or that I issued in this case applied to

2    this motion.  I will assure you that it does.  It is any

3    motion that is related in any such way to discovery.  That

4    is a very broad group of motions and if it gets referred to

5    me in the future and it does not comply with the

6    requirements in that order, it will be denied.  Straight

7    out.  So, I'm going to just let everyone know that upfront

8    so they know what my expectations are for discovery --

9    discovery motions.  And that does leave the ambiguity of

10   like, okay, now, how many pages do the opposing parties have

11   for this motion?  You can have up to nine pages in your

12   responses or in your oppositions.

13            I will give you my expectations since it's been

14   said a couple of times that there probably will be some

15   rocky discovery issues in this case.  I'll tell you how I

16   generally handle my discovery disputes and the parties can

17   order their affairs in accordance with that.

18            Generally speaking, I handle discovery disputes

19   using the short form orders that is typical in this

20   courthouse.  All of my colleagues have something similar.

21   That order requires a very short order -- a very short

22   response -- a very short motion, a very short response.  I

23   typically set and hear argument on those motions very

24   quickly after the response is filed.  And you can expect

25   that the Court will hear argument on those motions probably

1    within a week of the response.  My preference is to hear

2    argument in person.  You can make a request for Zoom.  I do

3    think that issues are better resolved in the courthouse so

4    we can have -- I think it's just better for me and also for

5    operation of my courtroom.  If a party is not -- would like

6    to monitor an issue and they don't want to send somebody to

7    Orlando and present argument, I will allow you to monitor

8    the proceedings from like a telephone line.  I will tell you

9    that my courtroom does not have the technology to allow

10   somebody to appear telephonically and be recorded on the

11   official recordings.  Because, of course, all these

12   proceedings, because we have microphones, the official

13   record of proceedings before a Magistrate Judge are the

14   recorded -- the audio recordings.  So, my technical -- I

15   have technical limitations and we cannot at this point in my

16   courtroom mix Zoom and an in-person.  So, it's all Zoom or

17   all in person and my preference is to have it in person.

18          Now, I will say that I had -- I had lead counsel

19   come here today for these discovery disputes.  Lead counsel

20   don't have to be here.  I recognize that you have your own

21   clients that you have to make happy, but I do think that

22   discovery motions are the type of motions that is a great

23   opportunity for more junior attorneys to get some courtroom

24   time and I would express my hope that the parties and the

25   attorneys on this case give their clients -- their junior

1   associates and junior attorneys opportunities to hear some

2   of the discovery motions where the stakes aren't necessarily

3   that high.

4           So, I just wanted to put that upfront about what

5   my expectations are for discovery motions, how I will likely

6   handle most discovery motions in the future.  And, of

7   course, if the parties do have a particular need or exigent

8   circumstances, you can always ask for a Zoom hearing or to

9   move those hearings.  I will say though if you start moving

10  my hearing dates, you are likely not to get a response to

11  discovery motions for an extended period of time because the

12  Court -- the Middle District of Florida has a very heavy

13  docket.  And the reason why I set them for hearings is so I

14  can make my rulings, you know, from the bench and do short

15  orders that just memorialize those holdings.  And if I start

16  having to do paper and writing extensive -- extensive orders

17  on discovery, that -- that's gonna be slowed down and you

18  are going to be put on the docket with all of my other

19  cases, including social cases and all my criminal work.

20          So, the parties can always ask to have the

21  hearings canceled, but it will add delay to the Court's

22  orders on those.

23          I think I have covered everything that is on my

24  list for this preliminary conference.  I'm gonna ask

25  Plaintiffs' counsel, Mr. Volkov, do you have any other

```
 1    issues that the Court needs to address today?

 2              MR. VOLKOV:  No other issues.  Thank you, Your

 3    Honor.  Appreciate it.

 4              THE COURT:  Mr. George, is there any other issues

 5    the Court can address today?

 6              MR. GEORGE:  No, sir.

 7              THE COURT:  Mr. Oprison, is there any other

 8    issues?

 9              MR. OPRISON:  No, sir.

10              THE COURT:  Ms. Strasser?

11              MS. STRASSER:  No, Your Honor.

12              THE COURT:  All right.  Thank you very much.  The

13    Court will be adjourned.

14              (Proceedings concluded.)

15

16

17

18

19

20

21

22

23

24

25
```

61

```
1   UNITED STATES DISTRICT COURT        )
                                         )
2   MIDDLE DISTRICT OF FLORIDA          )

3
                    REPORTER TRANSCRIPT CERTIFICATE
4

5          I, Howard W. Jones, Official Court Reporter for
    the United States District Court, Middle District of
6   Florida, certify, pursuant to Section 753, Title 28, United
    States Code, that the foregoing is a true and correct
7   transcription of the stenographic notes taken by the
    undersigned in the above-entitled matter (Pages 1 through 50
8   inclusive) and that the transcript page format is in
    conformance with the regulations of the Judicial Conference
9   of the United States of America.

10

                              /s      Howard W. Jones
11
                              _____
12                            Howard W. Jones, RDR, RMR, FCRR
                              Official Court Reporter
13                            United States District Court
                              Middle District of Florida
14                            Tampa Division
                              Date:  11-17-23
15

16

17

18

19

20

21

22

23

24

25
```

**MR. GEORGE:**
**[50]** 5/4 5/9 16/17
16/19 16/25 18/1
18/3 18/9 18/13
18/16 20/2 20/14
21/6 21/17 21/23
21/25 22/2 22/8
23/23 24/19 25/3
25/7 25/10 26/9
27/2 27/5 27/9
27/13 27/21 27/25
28/4 28/23 34/2
37/16 38/4 43/13
44/23 54/14 54/19
54/22 55/1 55/3
55/9 55/12 55/15
56/5 56/8 56/12
56/20 60/6
**MR. OPRISON:**
**[34]** 4/18 11/18
11/21 12/8 13/13
14/2 14/9 14/19
14/21 15/14 15/17
16/1 16/7 31/2
32/18 32/20 33/21
36/7 38/10 42/10
43/12 46/7 46/20
47/5 47/11 47/17
47/25 48/2 48/7
49/7 49/14 50/8
51/12 60/9

**[36]** 4/15 6/11 6/19
6/24 8/4 8/8 8/15
9/4 9/20 10/13
10/19 10/22 10/25
11/5 11/9 31/19
31/22 36/24 37/10
40/6 43/11 44/20
51/13 51/17 51/22
51/24 52/1 53/4
53/6 53/8 53/16
53/19 54/3 54/6
54/9 60/2
**MS. STRASSER:**
**[8]** 4/23 28/6 28/18
29/3 38/24 39/6
46/10 60/11
**THE COURT:**
**[125]**
**THE DEPUTY
CLERK: [1]** 4/10
**UNIDENTIFIED
SPEAKER: [1]**
15/22

---

**$**

$20 [1] 7/16
$20 million [1] 7/16

---

**/**

/s [1] 61/10

---

**1**

1-24-2025 [1] 32/16
10 [6] 19/23 20/10
26/23 28/16 35/18
54/24
10-year [2] 21/15
21/16
1099 [1] 16/4
10:05 [1] 1/7
11 [1] 7/18
11-17-23 [1] 61/14
11:24 [1] 1/7
12 [5] 12/22 19/23
30/2 45/3 47/14
12-4 [1] 30/12
12-month [2] 17/20
29/12
120 [1] 2/9
13 [3] 14/19 14/20
14/21
13B [1] 2/14
14 [5] 14/19 14/20
14/21 19/10 40/8
15 [8] 6/24 11/12
12/23 20/10 28/18
43/19 43/21 43/24
1512 [1] 52/10
1513 [1] 52/11
15th [1] 42/8
1637 [1] 4/10
16th [1] 56/19
18 [2] 32/17 52/11

# 1

**18-month [1]** 13/21
**18th [2]** 5/15 42/13
**1992 [1]** 2/3

# 2

**2-3 [1]** 38/20
**20 [9]** 6/20 6/22 6/22 6/24 11/13 28/18 44/2 44/5 44/10
**200 [1]** 2/6
**200-plus [1]** 50/20
**2000 [1]** 52/9
**2023 [1]** 1/6
**2024 [5]** 31/21 36/1 36/2 36/3 38/22
**2025 [9]** 8/1 32/16 33/11 37/5 40/4 40/13 41/3 41/8 42/3
**21th [1]** 43/7
**22 [2]** 36/3 42/3
**222 [1]** 2/9
**23 [1]** 61/14
**24 [1]** 33/11
**240 [1]** 2/3
**2407 [1]** 2/3
**245 [1]** 48/14
**25 [1]** 36/2
**2500 [1]** 2/6
**25th [1]** 42/13

**26th [1]** 31/17
**27 [1]** 36/1
**28 [1]** 61/6
**2805 [1]** 2/2

# 3

**30 [6]** 10/1 19/8 40/4 40/13 44/4 44/6
**305 [1]** 2/7
**33131 [1]** 2/6
**33401 [1]** 2/9
**33602 [1]** 2/15
**33607 [1]** 2/12
**3rd [1]** 39/23

# 4

**40 [3]** 18/9 18/15 26/6
**4350 [1]** 2/12
**443-8424 [1]** 2/13
**4th [1]** 43/4

# 5

**50 [4]** 18/9 18/17 26/6 61/7
**505-1992 [1]** 2/3
**55 [5]** 7/14 8/8 12/23 16/2 18/16
**5551 [1]** 2/7
**561 [1]** 2/10

# 6

**61 [1]** 3/3
**6158 [1]** 2/15
**683-8977 [1]** 2/10
**6:23-cv-1637 [1]** 4/10
**6:23-cv-1637-RBD-RMN [1]** 1/6

# 7

**753 [1]** 61/6

# 8

**801 [1]** 2/14
**813 [1]** 2/13
**813/301-6158 [1]** 2/15
**8424 [1]** 2/13
**8977 [1]** 2/10

# 9

**90 percent [1]** 34/23
**91 [2]** 48/14 50/20
**91-page [1]** 17/2
**910 [1]** 2/12
**92014-2407 [1]** 2/3
**982-5551 [1]** 2/7
**9:00 [1]** 41/9

# A

**a.m [2]** 1/7 1/7
**ability [2]** 48/12 53/10

**A**

able [7]  13/8 20/20
20/21 37/21 50/21
54/20 55/17
about [33]  5/19
5/19 6/20 9/23
10/10 10/17 10/20
12/2 12/5 12/6
14/11 14/25 15/21
21/14 22/20 22/21
24/12 29/13 30/9
31/13 36/14 37/19
40/24 41/25 48/6
48/15 49/21 50/22
51/6 52/22 55/18
56/13 59/4
above [1]  61/7
above-entitled [1]
61/7
absolutely [4]  9/4
9/4 25/22 47/16
accordance [1]
57/17
accountant [1]  8/17
accurate [1]  48/4
accusation [1]
21/10
act [1]  18/18
action [3]  48/12
48/16 53/12
actions [3]  18/18
48/22 49/8

activity [2]  52/7
52/21
actor [1]  48/16
acts [6]  7/3 13/14
13/15 13/16 24/7
52/17
actual [2]  21/24
22/11
actually [3]  5/7
38/10 56/13
add [11]  20/8 25/15
28/7 28/14 29/7
32/1 32/6 32/8
32/10 53/20 59/21
added [1]  32/4
additional [9]
10/10 10/11 10/15
10/23 11/7 44/12
44/14 46/4 46/6
address [7]  6/3
23/15 30/7 46/5
52/1 60/1 60/5
addressed [2]  23/6
44/17
adjourned [1]
60/13
administrative [2]
27/22 53/12
adopt [8]  31/6
31/16 31/17 32/2
32/24 35/24 35/24
43/17

advisement [2]
51/19 56/22
affairs [1]  57/17
affirmative [2]
33/17 34/15
affirmatively [1]
35/4
afraid [1]  25/22
after [16]  12/13
12/18 12/21 14/10
14/11 14/13 29/13
31/13 37/10 38/19
39/8 39/22 41/15
49/16 51/8 57/24
again [12]  9/14
15/3 15/6 20/14
21/1 23/12 23/14
28/24 40/19 41/2
41/9 44/11
against [6]  14/17
17/24 24/1 39/19
47/14 48/12
agencies [1]  24/10
agent [1]  45/13
ago [6]  22/10 37/20
54/24 56/1 56/11
56/14
agree [8]  10/7
11/22 28/8 38/10
38/24 39/6 39/9
40/7
agreed [1]  38/4

A

agreement [4]
31/10 35/11 39/13
40/11
ahead [2]  16/8
37/15
aided [1]  1/24
al [2]  4/11 4/12
all [49]  5/11 9/19
13/2 13/19 14/9
15/3 16/14 16/14
16/20 17/8 17/17
18/1 18/4 18/4
18/18 18/24 18/25
19/11 19/12 20/11
20/15 20/16 21/17
21/18 23/8 23/17
27/19 29/2 31/10
31/25 36/8 39/15
40/10 41/10 42/17
43/14 44/17 46/11
51/10 55/4 55/4
55/13 57/20 58/11
58/16 58/17 59/18
59/19 60/12
allegation [4]  48/15
52/24 53/5 53/6
allegations [9]  17/3
26/11 26/13 26/21
47/14 48/10 48/14
48/20 50/20
alleged [8]  7/2

20/14 24/7 24/20
52/18
alleging [1]  14/23
allow [6]  11/16
43/19 44/1 54/12
58/7 58/9
almost [2]  30/15
56/13
along [3]  5/24
17/20 31/24
already [6]  11/24
23/20 23/25 40/23
43/14 50/11
also [24]  6/2 8/8
8/15 10/3 18/19
18/20 20/3 22/14
23/20 30/24 38/24
43/25 45/7 45/9
45/9 45/15 46/24
49/5 52/15 53/9
54/10 54/13 54/17
58/4
although [1]  21/7
always [7]  20/4
37/16 38/12 38/14
41/11 59/8 59/20
am [18]  14/6 27/3
31/6 32/16 32/22
32/23 33/9 33/9
35/4 40/4 40/21
41/9 42/6 42/11

49/6
ambiguity [1]  57/9
amend [7]  31/8
32/1 50/4 50/18
50/19 53/10 53/20
amended [7]  5/13
18/6 29/8 33/24
50/16 50/24 52/9
Amendment [1]
25/6
amendments [1]
30/19
America [1]  61/9
amount [5]  7/22
17/3 20/24 30/10
30/23
analogue [1]  19/17
analysis [1]  8/16
ANDERSON [6]
1/10 2/9 4/24 4/25
5/3 28/8
annual [1]  7/16
another [6]  19/21
25/16 45/21 50/4
50/17 50/18
answer [4]  24/10
25/5 33/24 56/3
anticipate [5]  8/16
11/25 20/4 23/8
33/21
any [34]  5/15 5/20

**any...** [32]  6/10
9/21 11/25 16/15
25/18 25/19 26/19
28/11 28/13 30/22
33/21 36/4 38/11
39/16 39/17 43/9
43/20 44/15 44/20
46/4 47/13 47/13
48/16 49/24 50/21
55/6 56/6 57/2 57/3
59/25 60/4 60/7
**anybody** [1]  24/17
**anyone** [1]  56/22
**anything** [5]  9/15
24/18 29/7 48/15
48/21
**apart** [1]  15/12
**apologize** [2]  18/5
22/2
**Apparently** [1]
18/5
**appear** [2]  36/8
58/10
**appearances** [4]
1/25 4/6 4/7 4/13
**applied** [1]  57/1
**apply** [1]  34/14
**appreciate** [5]  5/10
14/2 46/20 46/21
60/3
**approach** [2]  43/17

**approaches** [1]
8/23
**appropriate** [7]
30/15 35/16 35/22
38/20 48/4 48/4
50/5
**approximately** [3]
32/17 42/22 43/6
**April** [5]  39/24
39/25 40/3 40/4
40/13
**April 30** [2]  40/4
40/13
**are** [149]
**aren't** [1]  59/2
**argue** [2]  12/11
46/17
**arguing** [2]  48/10
51/2
**argument** [10]  24/6
30/1 45/18 46/16
47/18 52/9 57/23
57/25 58/2 58/7
**arguments** [2]  47/9
47/20
**arise** [3]  33/22 46/1
47/21
**around** [1]  17/4
**as** [72]
**aside** [1]  43/18
**ask** [6]  24/11 53/10

59/24
**asked** [3]  35/16
36/20 55/10
**asking** [5]  10/20
26/14 29/24 55/7
55/8
**assessment** [1]
11/23
**associates** [1]  59/1
**ASSOCIATION**
[10]  1/9 2/6 4/12
4/20 11/21 12/15
14/13 14/18 15/13
48/23
**assume** [2]  20/5
54/17
**assuming** [4]  15/15
21/4 29/20 56/3
**assumption** [3]
30/23 50/2 50/3
**assure** [1]  57/2
**attempt** [1]  28/24
**attention** [2]  16/12
17/16
**attorney** [1]  4/8
**attorneys** [4]  4/8
58/23 58/25 59/1
**attributed** [1]
48/24
**audio** [2]  1/23
58/14

## A

August [6]  40/24 42/3 42/10 42/13 42/13 43/4
August 18th [1]  42/13
August 22 [1]  42/3
August 25th [1]  42/13
August 4th [1]  43/4
authorize [2]  44/16 45/4
authorized [1]  5/23
available [2]  40/13 41/15
Avenue [2]  2/9 2/14
away [4]  23/2 29/20 47/6 48/21
awful [1]  17/3

## B

back [7]  17/17 23/9 23/10 28/12 35/15 37/18 56/11
backwards [3]  33/12 40/22 41/2
baseball [2]  15/20 16/3
based [7]  7/4 32/9 32/21 43/22 44/12 49/5 50/19
basically [1]  19/16

basis [1]  9/13
be [154]
Beach [1]  2/9
because [37]  5/11 5/13 6/19 7/7 8/5 8/11 15/15 17/21 18/14 18/23 19/25 20/5 20/14 20/20 21/4 21/13 22/23 23/4 24/13 27/17 30/2 30/21 33/17 34/10 38/5 42/5 42/23 45/24 50/1 55/9 55/16 55/19 55/20 55/25 58/11 58/12 59/11
become [1]  20/17
becomes [2]  33/7 33/7
been [10]  9/20 11/15 23/24 24/20 25/8 26/13 44/4 44/6 48/24 57/13
before [21]  1/15 14/3 16/16 26/25 26/25 30/14 33/4 34/24 35/13 36/6 36/7 37/7 37/9 38/7 39/14 40/20 41/25 42/25 43/6 43/10

13/12 13/13 23/9 25/11 28/21 50/5 58/13
beforehand [1]  23/13
begin [1]  26/1
beginning [5]  8/1 9/21 39/24 41/13 41/25
behalf [6]  4/24 5/5 11/21 28/7 48/17 48/24
behind [2]  5/7 19/3
being [4]  12/10 17/18 21/19 52/13
believe [21]  7/6 12/19 17/22 20/3 23/5 25/19 25/19 25/21 25/25 26/5 27/6 35/10 35/21 42/16 48/15 49/17 49/19 50/19 50/25 52/19 56/25
believes [2]  21/18 45/11
bench [1]  59/14
benefit [4]  37/8 42/24 48/17 48/23
benefited [2]  52/23 52/25
best [4]  23/13 33/1 33/3 50/23
better [6]  22/19 30/1 32/9 51/4 58/3

**B**

better... [1]  58/4
between [3]  5/25
 6/24 11/12
beyond [4]  9/10
 12/1 38/17 38/25
biggest [1]  13/3
Biscanye [1]  2/6
bit [10]  5/19 6/13
 9/10 9/12 13/10
 13/11 28/24 30/2
 31/15 37/21
blind [1]  38/19
blood [1]  27/17
blue [1]  19/15
Blvd [1]  2/6
boiling [1]  8/22
bone [1]  25/22
bonus [1]  53/1
bore [1]  49/20
both [1]  33/13
bound [1]  34/17
boy [1]  15/14
BRIAN [2]  1/4 4/11
brief [2]  54/15
 54/23
bring [4]  35/13
 48/12 50/15 50/21
brings [1]  21/9
broad [1]  57/4
brought [2]  14/17
 17/24

bulk [2]  9/5 52/22
burden [9]  33/19
 34/7 34/8 34/12
 34/16 34/25 35/1
 35/2 35/10

**C**

CA [1]  2/3
calendar [2]  41/12
 55/24
calendars [1]  42/6
call [1]  4/5
CALLED [1]  4/1
came [2]  7/24 56/15
can [49]  5/6 9/18
 11/10 11/17 11/23
 12/9 13/4 14/8 16/9
 19/14 19/17 22/12
 22/13 22/19 22/21
 24/6 26/23 26/23
 27/3 30/4 30/24
 33/8 33/8 35/14
 37/15 38/6 38/11
 39/12 39/13 39/19
 40/12 41/19 45/8
 45/10 45/11 45/15
 45/25 51/23 52/6
 54/22 57/11 57/16
 57/24 58/2 58/4
 59/8 59/14 59/20
 60/5
can't [8]  19/13

19/20 23/3 25/14
 26/22 26/24 35/11
 48/21
canceled [1]  59/21
cannot [5]  19/15
 25/18 41/12 50/10
 58/15
car [3]  19/15 19/16
 26/15
car/blue [1]  19/15
care [1]  55/18
cart [1]  22/24
case [74]
cases [10]  7/23
 22/24 34/24 37/25
 45/22 46/25 52/12
 52/14 59/19 59/19
caught [1]  20/23
cause [1]  32/8
cellphone [1]  22/13
cellphones [1]  22/9
center [1]  23/19
CEO [5]  1/10 2/9
 4/25 27/6 28/8
certain [5]  7/3
 40/14 41/13 41/18
 41/21
certainly [9]  12/23
 13/4 13/15 15/18
 16/10 30/15 47/15
 48/10 48/23
CERTIFICATE [2]
 3/3 61/3

C

certify [1]  61/6
challenge [2]  13/4
 47/5
challenged [1]  49/4
challenges [1]  47/1
chance [1]  46/15
changes [2]  17/12
 17/12
charge [1]  29/20
check [1]  37/5
checked [2]  36/4
 36/7
Chris [2]  4/18
 11/18
CHRISTOPHER
 [1]  2/5
Chudasama [1]
 46/24
chunk [1]  47/6
circles [1]  17/4
Circuit [2]  48/5
 52/15
circumstances [4]
 32/10 43/23 44/13
 59/8
civil [3]  32/6 44/8
 52/3
claims [24]  9/1 9/2
 13/16 13/17 14/15
 14/16 19/4 23/16
 23/17 26/19 26/20
 29/20 30/24 31/15
 31/16 33/16 39/19
 47/6 48/13 49/5
 49/7 50/5 50/14
 51/8
clamoring [1]  23/2
clarify [1]  35/14
class [1]  36/10
clear [4]  46/24 47/1
 47/21 48/19
clerk [1]  17/18
client [9]  4/21 19/5
 21/18 23/24 24/23
 47/7 49/2 53/19
 54/17
client's [2]  8/9 12/4
clients [14]  8/20
 17/25 25/2 25/4
 25/4 26/8 26/9 27/4
 28/16 29/4 46/2
 53/17 58/21 58/25
close [3]  7/18 13/7
 29/17
closest [1]  19/17
code [2]  52/11 61/6
Cole [1]  2/8
colleagues [2]
 16/20 57/20
collecting [3]  30/3
 30/3 30/5
column [1]  31/24
combined [1]  42/20
come [5]  4/10 5/15 6/7
 11/17 15/7 17/19
 26/15 30/5 34/24
 35/8 35/11 39/13
 44/11 53/23 58/19
comes [3]  13/1 30/7
 46/2
comfortable [1]
 5/10
coming [2]  13/7
 23/14
communication [1]
 21/15
communications [8]
 8/10 8/12 20/15
 21/4 21/5 21/13
 22/10 22/13
compacted [1]  39/2
companion [4]
 23/20 23/22 24/4
 24/4
company [1]  8/19
complaint [13]
 14/22 14/24 17/2
 17/2 19/18 24/6
 24/25 49/9 50/4
 50/17 50/24 53/11
 53/20
complaints [1]
 18/24
complete [2]  36/15
 36/15

C

completely [2] 24/13 34/13
completing [3] 32/14 36/12 36/12
complex [5] 6/14 7/1 9/14 17/15 44/8
complexity [3] 6/17 9/21 28/9
complicated [1] 22/3
complication [1] 15/11
comply [1] 57/5
compromises [1] 38/5
computer [1] 1/24
computer-aided [1] 1/24
concerning [1] 18/6
concerns [1] 18/12
concluded [1] 60/14
conclusion [2] 48/22 56/15
conduct [6] 14/24 14/24 14/25 26/22 35/19 52/7
conference [6] 5/12 41/24 42/8 42/12 59/24 61/8
conferences [1]

conformance [1] 61/8
Congress [1] 52/9
connect [1] 19/7
connected [1] 52/17
connection [1] 19/7
consent [1] 41/19
consented [1] 41/22
consider [1] 35/3
considered [5] 15/24 16/1 23/8 24/16 37/6
consolidated [1] 13/8
conspiracy [1] 19/19
contact [1] 26/11
contractors [1] 16/4
contrary [1] 27/14
control [1] 42/5
convinced [1] 29/10
convinced me [1] 29/10
coordinate [1] 13/2
coordinated [1] 15/8
copies [2] 21/25 55/4
core [1] 51/8
correct [12] 15/21

40/4 40/6 42/11 44/19 49/6 53/16 54/6 61/6
cost [1] 51/6
costs [2] 16/12 51/3
could [19] 7/25 11/11 13/7 15/5 16/23 17/14 18/21 28/25 34/11 39/15 44/7 44/7 47/19 47/19 48/23 50/15 52/1 54/8 55/18
couldn't [1] 10/7
counsel [15] 4/6 4/7 4/13 5/7 11/16 23/25 25/14 25/16 28/20 30/22 51/11 53/22 58/18 58/19 59/25
count [6] 6/12 7/11 7/12 17/11 53/9 53/21
counter [1] 14/15
counter-claims [1] 14/15
country [2] 15/9 15/10
counts [4] 13/10 14/17 14/22 17/24
County [1] 21/21
couple [5] 28/12

# C

couple... [4]  36/23 50/6 52/1 57/14
course [4]  11/10 21/9 58/11 59/7
COURT [35]  1/1 3/3 4/1 17/13 17/17 30/25 31/17 32/8 33/2 33/5 34/24 35/13 40/8 41/11 41/12 44/13 46/5 48/8 49/23 50/17 50/18 50/25 53/10 56/12 56/16 57/25 59/12 60/1 60/5 60/13 61/1 61/5 61/5 61/12 61/13
Court's [1]  59/21
courthouse [2]  57/20 58/3
COURTNEY [3]  1/10 2/9 4/24
courtroom [5]  1/23 58/5 58/9 58/16 58/23
covered [1]  59/23
covers [1]  26/21
Craig [1]  4/21
create [1]  16/9
criminal [8]  19/19 24/7 24/12 24/25 41/11 41/14 41/15

critical [2]  18/21 20/18
critically [1]  22/16
cross [1]  14/16
cross-claims [1] 14/16
crystalize [1]  38/15
cure [2]  50/12 50/14
currently [2]  5/23 27/9
cut [4]  20/21 20/22 25/23 28/25
cv [2]  1/6 4/10
Cypress [1]  2/12

# D

Daimler [1]  47/20
Dalton [13]  5/12 29/14 32/23 32/24 35/5 35/24 37/1 41/5 41/12 42/24 43/17 44/1 50/2
Dalton's [6]  29/15 31/13 34/20 36/14 42/6 42/15
data [2]  7/22 22/18
date [25]  25/21 31/5 31/6 31/24 32/16 32/19 32/23 33/12 39/25 40/17 40/17 40/25 41/2

41/15 41/18 41/21 41/24 42/1 42/1 42/2 43/5 61/14
dates [7]  5/16 9/23 13/6 16/16 25/20 25/21 59/10
Daubert [1]  42/17
day [1]  45/12
days [8]  36/23 40/8 42/21 45/3 51/23 54/8 54/9 54/21
deadline [41]  6/2 6/2 30/11 31/9 31/10 31/12 31/17 31/20 32/14 33/2 33/10 34/17 34/21 34/22 35/1 35/7 35/7 35/8 35/17 36/11 36/21 37/1 37/2 37/4 37/17 38/2 38/16 38/21 39/1 39/8 39/11 39/12 39/22 39/23 40/1 40/4 40/15 42/14 42/22 43/1 43/3
deadlines [10]  6/1 32/13 32/13 33/6 33/14 34/14 35/1 35/13 40/21 43/18
deal [4]  6/6 7/23

# D

deal... [2]  17/21 22/6
dealing [1]  16/12
decide [5]  37/22 38/7 39/18 42/19 50/10
decided [2]  7/11 25/8
decides [2]  32/10 50/17
declare [1]  17/18
DEDONATIS [10]  1/9 2/11 5/5 16/25 17/1 17/4 27/5 27/17 29/4 49/11
defects [1]  14/5
defendant [12]  2/5 4/19 5/5 16/15 27/19 34/6 35/7 35/10 36/2 39/16 39/18 56/24
defendants [28]  1/11 2/8 2/11 4/24 5/18 6/4 11/14 25/20 29/10 30/1 30/13 30/20 31/23 31/25 32/3 33/11 33/18 33/19 34/12 35/16 35/22 36/20 39/18 41/1 41/3 42/2 44/9 54/4

defendants... [4]  11/8 34/22 35/25 37/14
defense [5]  11/16 18/21 28/15 30/22 34/16
defenses [1]  33/17
deficiencies [3]  14/4 48/11 49/18
define [1]  12/20
definitely [2]  8/4 44/13
Del [1]  2/3
delay [3]  12/25 15/6 59/21
delineated [1]  33/2
denied [1]  57/6
depend [1]  25/11
depending [3]  18/10 33/22 38/13
depose [4]  11/14 12/24 26/7 45/12
deposed [2]  45/11 45/16
deposition [10]  18/10 19/8 22/20 23/1 23/1 23/4 33/5 45/12 45/14 45/15
depositions [31]  5/23 6/20 6/22 10/12 10/16 10/22 10/23 11/1 12/7

depositions... [16]  18/6 18/15 18/23 19/13 19/23 20/21 26/3 26/23 28/17 28/25 29/22 29/23 35/20 38/14 43/19 43/21 45/1 45/23 55/19
derail [1]  24/13
describing [1]  34/25
description [1]  17/23
details [4]  19/2 19/6 22/17 27/23
determination [1]  45/6
determine [1]  21/1
detriment [1]  48/22
develop [2]  25/21 37/25
developed [2]  9/13 25/12
development [1]  7/13
develops [1]  37/24
device [1]  22/11
did [8]  5/13 10/10 13/6 14/1 23/18 28/22 41/4 56/18
didn't [6]  23/18 29/1 50/12 50/13

**D**

didn't... [2]  50/16 56/25
differences [2]  5/25 28/11
different [5]  13/2 15/9 15/10 15/22 25/14
differentiated [1]  50/14
differently [1]  16/21
difficult [1]  30/4
difficulties [1]  25/16
digital [1]  1/23
direct [1]  40/11
direction [2]  26/15 49/11
directly [1]  52/15
Director [2]  15/19 21/8
directors [5]  15/9 15/12 15/19 15/23 16/2
disagreement [1]  13/5
discharge [1]  27/11
disclose [2]  20/6 20/7
disclosed [1]  35/12
disclosure [4]  33/14

disclosures [11]  30/12 30/14 30/16 30/18 31/6 31/7 31/8 31/14 33/12 35/25 56/3
discover [1]  19/9
discovered [2]  22/9 32/7
discovery [80]
discuss [1]  41/19
discussed [2]  30/9 34/9
discussion [2]  6/2 17/14
dismiss [11]  12/12 14/11 14/14 17/10 33/18 47/9 48/11 48/18 49/1 49/17 51/9
dismissed [1]  53/9
dispositive [13]  36/11 36/15 36/16 37/2 37/7 37/8 38/8 38/25 39/9 39/22 39/23 40/2 42/18
disputes [5]  10/10 23/10 57/16 57/18 58/19
DISTRICT [11]  1/1 1/1 29/11 46/25 59/12 61/1 61/2

61/13
diversity [1]  53/24
diverting [1]  16/12
DIVISION [2]  1/2 61/14
DLA [1]  2/5
do [67]
docket [2]  59/13 59/18
documents [8]  8/24 20/9 20/10 26/1 55/10 55/15 55/18 55/21
does [15]  19/5 19/7 23/17 29/18 34/20 37/23 39/14 41/5 52/3 52/12 56/16 57/2 57/5 57/9 58/9
doesn't [5]  19/21 23/17 39/21 40/19 55/24
doing [4]  9/12 13/25 38/21 56/9
don't [45]  6/5 6/8 6/15 6/16 6/25 8/9 8/10 10/2 10/6 10/13 11/13 11/25 14/16 22/1 22/3 22/4 22/25 23/4 24/8 24/12 26/17 26/18 28/6 28/13

## D

don't... [21]  28/14
29/7 31/4 33/2
33/21 34/4 36/10
37/13 42/5 44/5
44/15 44/20 47/12
50/9 50/19 52/19
52/23 55/20 55/24
58/6 58/20
DONALD [2]  1/9
2/11
done [12]  11/10
11/11 11/23 19/23
22/21 23/5 25/19
25/25 33/4 40/23
45/7 48/16
door [1]  47/17
down [11]  9/17
12/13 13/1 16/8
20/21 20/22 28/25
30/12 33/24 51/1
59/17
downloaded [1]
22/11
dozen [2]  18/17
18/19
Dr [1]  2/2
drafting [1]  18/5
due [3]  16/20 39/24
55/13
during [2]  7/2
38/14

## E

e-mail [3]  8/5 8/10
22/7
e-mails [3]  8/4
20/11 22/8
each [4]  16/3 16/3
35/13 43/19
earlier [4]  13/6
38/3 39/19 39/20
early [4]  31/15
37/23 38/12 43/23
earned [1]  56/1
EDWARD [1]  2/11
efficiencies [2]
13/19 16/9
efficient [1]  15/6
effort [1]  20/1
either [2]  20/21
24/24
electronic [3]  7/22
8/2 29/24
electronics [5]
20/25 22/3 22/6
26/1 30/3
Eleventh [1]  48/5
elimination [1]
49/2
else [3]  20/6 20/23
29/7
employed [1]  23/25
employee [1]  12/24
employees [8]  7/6

16/1 18/17 18/20
employment [5]
6/13 7/4 15/1 49/5
49/13
employment-based
[1]  49/5
end [5]  14/7 35/14
35/15 36/18 39/24
enforcement [1]
24/20
engage [1]  32/25
enormous [5]  17/2
20/24 23/16 26/20
26/20
enough [3]  43/9
45/21 56/12
enterprise [6]  52/3
52/5 52/6 52/23
52/25 53/3
entertain [1]  44/13
entire [2]  17/14
19/22
entirely [1]  24/11
entitled [1]  61/7
ESI [2]  26/1 55/5
ESQ [4]  2/2 2/5 2/8
2/11
essentially [3]
14/10 19/24 34/19
et [2]  4/11 4/12
evades [1]  45/19

**E**

even [13]  7/12 12/14 12/21 20/8 29/19 29/19 34/6 45/3 47/18 49/15 50/1 53/8 53/9
event [1]  30/11
ever [2]  24/24 44/6
every [7]  12/24 12/24 15/19 17/11 19/3 25/15 26/10
everybody [5] 24/14 38/18 52/25 53/1 56/15
everyone [2]  36/17 57/7
everyone's [1]  39/3
everything [4] 12/22 39/2 55/23 59/23
exact [1]  27/22
exactly [5]  38/4 39/10 49/14 49/23 53/4
example [2]  9/23 19/4
except [2]  26/17 28/20
exception [1]  46/23
exchanged [2]  56/3 56/6
excuse [1]  26/4

**executive [1]**  27/1
executives [1]  7/17
exigent [1]  59/7
exist [3]  17/9 19/21 23/17
exists [1]  17/9
expect [1]  57/24
expectation [2] 24/1 38/21
expectations [3] 57/8 57/13 59/5
experience [3]  9/17 23/12 25/15
experienced [1] 41/10
expert [8]  6/21 8/16 23/3 32/14 33/12 33/14 35/17 35/25
expert's [1]  23/4
experts [7]  20/3 22/22 26/5 34/22 34/23 36/3 42/17
express [1]  58/24
extended [4]  35/20 35/23 50/7 59/11
extension [1]  40/15
extensive [5]  6/16 9/6 9/25 59/16 59/16
extraordinary [1] 16/22
extremely [1]  26/13

**F**

face [2]  24/10 34/5
facility [1]  21/21
fact [16]  13/1 15/7 18/20 22/21 23/4 26/2 26/3 26/4 27/18 35/19 43/16 48/19 52/13 52/18 52/19 55/6
facts [8]  6/14 18/24 25/11 37/25 38/13 50/10 50/16 50/22
factual [11]  7/1 7/13 9/1 9/2 13/12 13/13 17/3 26/21 29/21 32/10 50/5
fair [2]  7/22 56/12
fairly [1]  40/14
fall [1]  19/15
fallen [1]  36/5
familiar [1]  8/20
far [2]  24/23 39/22
farm [1]  22/4
fashion [1]  9/18
fast [1]  15/20
favor [2]  38/16 39/8
FCRR [2]  2/14 61/12
February [6]  31/11 31/12 31/19 31/20 36/20 37/5
February 26 [1]

# f

February 26... [1] 31/20
February 3 [1] 37/5
Federal [9] 6/12 17/17 32/5 36/5 41/10 52/10 53/11 53/21 53/24
feel [4] 17/4 37/20 43/8 43/20
feels [1] 45/13
fetch [1] 28/1
few [2] 36/18 37/19
Fifth [2] 24/14 25/6
fight [1] 23/19
file [6] 33/24 40/2 42/19 54/17 56/22 56/23
filed [12] 5/14 6/4 12/12 13/23 28/12 33/18 37/9 39/4 42/18 46/13 46/14 57/24
filing [9] 24/1 32/18 32/19 36/11 37/11 38/17 39/9 42/14 43/1
final [11] 32/12 33/10 40/21 40/25 41/24 42/4 42/7 42/14 43/2 43/5 43/9

finally [2] 24/16 25/13
financial [2] 8/16 8/18
find [3] 16/9 32/3 40/12
fine [3] 25/9 36/24 41/25
finger [1] 34/11
fired [2] 7/6 9/12
first [15] 11/17 11/17 16/23 17/8 18/4 21/17 23/8 30/11 37/15 41/7 50/16 50/23 50/24 55/10 56/16
five [8] 7/2 8/6 8/8 20/9 26/14 29/13 29/16 40/24
five-month [1] 29/13
five-year [1] 7/2
FL [3] 2/6 2/9 2/12
flaw [1] 52/8
flex [1] 37/21
floating [1] 24/4
FLORIDA [9] 1/1 1/7 2/14 2/15 29/11 59/12 61/2 61/6 61/13
focus [1] 25/2
footnote [1] 56/24

foreclosing [1] 44/15
foregoing [1] 61/6
forensic [1] 8/17
form [3] 42/21 56/25 57/19
format [3] 21/22 35/6 61/8
former [1] 21/8
forms [1] 43/3
FORT [1] 1/2
forth [3] 35/4 50/15 50/21
FORTUNA [4] 1/9 2/8 4/25 28/8
forward [3] 17/11 20/18 25/12
found [1] 22/12
four [3] 7/19 25/14 51/1
frame [3] 11/24 12/6 12/10
framed [2] 39/1 49/9
frankly [3] 8/20 33/3 33/7
fraud [2] 52/22 52/24
frequently [1] 22/23
friends [1] 24/9
front [6] 17/18

**F**

front... [5]  17/21
22/25 23/10 35/14
44/16
full [3]  45/14 48/10
49/20
fundamental [2]
52/2 52/8
furtherance [1]
48/17
future [2]  57/5 59/6
fuzzy [1]  27/23

**G**

gambles [1]  19/5
gap [1]  13/7
gathered [1]  13/19
general [1]  6/8
generally [10]  9/1
28/8 31/12 36/13
36/19 40/23 41/6
42/3 57/16 57/18
GEORGE [13]
2/11 5/5 5/6 10/14
16/18 34/18 37/15
39/11 44/22 54/10
54/12 54/16 60/4
get [26]  5/25 13/22
15/8 16/16 18/15
19/2 19/8 20/9
20/20 21/3 21/4
22/24 22/24 23/11

25/17 26/17 26/18
29/14 36/14 36/18
37/25 55/17 55/19
55/21 58/23 59/10
gets [4]  22/2 22/11
42/18 57/4
getting [3]  23/23
41/18 46/21
give [18]  5/17 6/8
14/6 17/23 19/17
23/3 30/24 35/18
41/13 46/13 46/18
50/3 50/17 50/18
50/25 56/22 57/13
58/25
given [5]  14/4 14/15
25/20 26/5 44/23
gives [1]  37/21
giving [1]  37/20
glaring [1]  34/5
global [1]  9/15
go [28]  7/25 11/25
12/23 16/8 17/19
18/10 19/10 19/13
20/25 21/3 21/12
22/18 25/17 29/20
30/14 33/23 36/6
37/9 37/12 37/15
37/15 38/1 38/7
39/19 47/6 47/17
48/1 48/13
goes [2]  12/21 28/2

going [83]  5/17
gonna [51]  5/17
5/20 5/20 6/6 7/21
17/12 17/22 18/15
18/22 19/1 19/2
19/9 19/23 19/25
20/3 20/13 20/18
20/25 21/14 22/17
23/16 23/18 23/19
24/3 24/14 25/24
26/11 26/17 26/18
29/8 29/16 30/14
33/11 40/3 40/11
43/15 43/16 44/1
45/4 45/5 46/18
47/4 50/7 50/18
51/8 52/19 55/19
55/22 56/16 59/17
59/24
good [21]  4/15 4/17
4/18 4/23 5/2 5/4
11/18 11/20 14/9
16/17 16/18 16/19
20/2 21/19 24/6
28/6 32/8 38/16
39/25 44/9 53/22
got [7]  9/12 15/7
17/5 18/7 20/5 23/2
48/7
gotta [1]  38/1
gotten [1]  24/17
govern [1]  16/2

# G

Government [1]
9/11
grant [2] 40/15
54/10
granted [1] 50/1
grapple [1] 12/17
great [3] 22/5 52/25
58/22
group [1] 57/4
guarantee [1] 41/13
guess [3] 14/7 16/4
21/11
guys [2] 20/5 23/14

# H

had [18] 5/15 9/6
10/14 13/23 13/24
22/12 26/11 27/4
28/10 31/23 34/3
34/10 44/8 46/15
50/11 51/15 58/18
58/18
half [2] 17/4 56/14
hand [2] 22/11
27/13
handle [3] 57/16
57/18 59/6
handling [2] 6/17
10/6
hands [1] 37/20
happen [8] 13/21

37/18 44/7 53/20
56/18
happened [3] 20/17
56/13 56/19
happens [2] 22/23
43/6
happy [3] 40/8
51/24 58/21
hard [2] 21/25 55/4
has [29] 9/13 9/20
16/11 20/23 21/7
23/24 23/25 24/15
24/17 24/19 24/20
24/23 24/24 25/7
26/10 27/14 27/21
28/19 34/25 35/2
35/10 36/17 37/17
41/12 48/16 48/16
52/4 52/14 59/12
hasn't [1] 24/21
have [146]
haven't [4] 36/4
36/5 51/15 51/17
having [4] 42/24
43/10 52/25 59/16
he [25] 5/13 10/14
21/9 21/18 21/18
23/24 23/25 24/1
27/6 27/9 27/14
27/18 27/21 35/6
35/24 37/1 41/5

43/17 43/19 45/11
45/14 45/15
he's [3] 27/16 27/17
29/16
headed [1] 5/20
headquarters [2]
27/15 27/20
hear [4] 57/23
57/25 58/1 59/1
heard [2] 18/16
32/22
hearing [4] 1/15
40/17 59/8 59/10
hearings [3] 59/9
59/13 59/21
heavy [2] 41/12
59/12
heck [1] 17/19
help [2] 12/20
38/14
helpful [4] 11/16
16/5 37/11 38/14
here [39] 4/20 4/25
5/11 6/6 6/12 8/22
9/11 9/12 9/21 9/25
10/4 10/14 10/18
12/18 13/10 13/24
14/3 14/12 15/11
16/9 17/8 22/14
23/9 24/2 24/24
26/13 32/22 34/6

# H

here... [11]  36/10 37/17 37/18 39/8 47/2 47/21 50/22 52/7 52/24 58/19 58/20
hesitate [1]  27/25
hiccups [1]  35/15
hierarchy [1]  15/23
high [2]  26/18 59/3
highly [1]  30/13
him [4]  9/8 29/16 42/7 45/12
his [14]  11/23 21/9 27/6 27/11 27/20 35/6 41/6 41/8 41/15 42/6 42/25 43/18 49/11 49/13
hit [1]  43/14
hold [3]  37/6 49/21 51/2
holdings [1]  59/15
holds [1]  55/4
holiday [1]  36/6
honest [1]  25/8
Honor [72]
HONORABLE [1]  1/15
hook [1]  53/24
hope [1]  58/24
HORBACHER [1]  1/10
Hornbacher [5]  2/12 5/5 17/1 27/13 29/4
HORROM [3]  1/4 4/16 7/18
horse [1]  22/25
hour [1]  46/3
hours [6]  19/10 19/14 45/1 45/14 45/17 45/20
how [15]  14/17 15/12 17/24 18/10 19/13 25/17 26/23 37/23 38/13 52/3 52/3 54/7 57/10 57/15 59/5
Howard [4]  2/14 61/5 61/10 61/12
however [5]  8/11 17/15 24/21 49/22 52/14

# I

I'll [7]  16/8 18/14 31/16 46/13 54/17 56/22 57/15
I'm [66]
I've [2]  17/5 44/17
idea [1]  12/4
identified [1]  32/7
identify [4]  20/22 34/21 47/12 47/13
III [1]  1/9
illegal [1]  52/6
illuminate [2]  19/21 21/1
imagination [1]  25/18
impactful [1]  47/18
important [3]  8/12 14/3 22/16
imposed [3]  33/2 51/6 57/1
imposing [1]  33/5
inadvertently [1]  18/7
INC [3]  1/9 2/6 4/12
inclined [2]  38/24 39/9
include [3]  39/15 52/10 53/11
including [2]  17/13 59/19
inclusive [1]  61/8
increase [1]  43/25
increased [3]  28/20 45/3 53/1
incurring [1]  51/3
indicated [3]  5/15 13/24 56/24
indictment [1]  25/1
individual [9]  14/25 18/17 22/8 45/15 45/16 45/16

**I**

individual... [3] 48/16 49/8 49/10
individuals [2] 45/23 45/24
inform [1] 21/14
information [1] 21/13
informs [1] 21/18
initial [8] 30/14 30/16 30/18 31/5 31/7 31/8 31/14 56/3
injuries [1] 47/13
injury [3] 52/13 52/18 52/18
inquiry [1] 7/2
instance [4] 5/22 35/9 35/9 45/11
instructions [1] 43/3
intend [3] 6/23 8/3 25/5
intended [1] 34/14
intention [1] 21/6
interested [4] 8/22 8/23 27/3 41/17
interesting [1] 19/5
interrogatories [16] 10/1 10/11 10/15 10/24 10/25 11/7 12/6 12/8 28/21

44/7 44/10 44/12 44/14
introduce [1] 4/8
investigate [1] 30/24
investigating [1] 31/16
involved [1] 19/12
Iqbal [1] 48/20
Iqbal/Twombly [1] 48/20
irony [1] 55/6
is [196]
isn't [3] 17/20 21/15 26/14
issue [8] 19/11 24/15 32/13 34/8 35/2 45/9 48/6 58/6
issued [1] 57/1
issues [24] 7/21 9/22 12/16 17/22 19/12 23/7 33/16 33/19 37/12 38/15 39/1 44/17 44/21 46/1 47/10 47/20 50/13 52/2 57/15 58/3 60/1 60/2 60/4 60/8
it [110]
it's [48] 6/9 6/25 7/1 7/4 7/9 7/15 8/6

12/13 12/23 14/3 19/9 19/25 20/8 22/4 22/5 22/17 25/23 29/13 30/13 30/15 32/6 34/6 34/9 35/16 35/22 37/6 37/11 37/17 39/11 41/5 41/21 42/17 42/20 43/23 45/7 45/9 46/25 47/21 48/4 48/4 48/18 50/7 57/13 58/4 58/16
its [1] 51/4

**J**

JACOB [2] 1/10 2/12
January [4] 31/17 31/19 33/11 36/13
January 24 [1] 33/11
January 26th [1] 31/17
jeez [1] 23/14
Jernigan [1] 4/5
JILLIAN [3] 2/8 4/23 28/7
join [1] 31/9
joined [2] 4/20 37/12
joint [4] 5/13 29/8

## J

joint... [2]  42/14
 43/2
Jones [4]  2/14 61/5
 61/10 61/12
JUDGE [22]  1/16
 5/12 29/14 29/14
 31/13 32/23 32/24
 34/20 35/5 35/24
 36/14 36/25 41/5
 41/12 41/20 42/5
 42/15 42/24 43/16
 44/1 50/2 58/13
judicial [2]  17/18
 61/8
judicious [1]  49/21
July [1]  43/7
July 21th [1]  43/7
junior [3]  58/23
 58/25 59/1
jurisdiction [8]
 17/14 41/20 41/22
 47/2 47/3 47/15
 47/19 47/22
jurisdictional [4]
 47/1 47/10 48/6
 53/24
jurisdictions [1]
 13/2
jury [1]  43/3
just [43]  6/8 9/23
 10/2 12/12 16/5
 16/8 16/23 17/23
 18/16 20/18 21/10
 23/23 24/21 26/14
 26/23 26/25 27/21
 30/8 30/8 31/7
 34/19 35/14 35/18
 35/23 37/5 39/15
 44/15 48/1 48/6
 49/17 50/2 50/12
 50/13 52/1 53/21
 53/22 54/24 56/1
 56/15 57/7 58/4
 59/4 59/15

## K

keeps [1]  8/19
kind [7]  8/2 11/17
 17/5 21/13 35/23
 37/18 38/24
kinds [1]  23/17
Kissane [1]  2/8
knock [1]  53/23
know [51]  6/12 7/1
 7/18 7/25 8/19 8/21
 9/5 9/14 9/25 11/12
 14/16 21/12 21/19
 22/4 22/4 23/13
 23/20 24/8 24/12
 24/18 24/23 24/25
 26/12 28/13 29/14
 29/22 30/4 30/17
 30/20 32/4 33/4
 36/11 36/19 37/13
 37/25 38/18 39/17
 42/14 42/21 43/20
 44/5 45/24 47/9
 49/23 50/1 51/20
 53/22 56/18 57/7
 57/8 59/14
knowing [1]  39/3
knowledge [2]  9/6
 24/23
knows [2]  21/2 24/9

## L

lacking [2]  47/22
 47/24
Lakeview [1]  2/9
large [5]  8/5 26/5
 35/21 47/6 47/6
largely [3]  11/24
 12/11 12/13
larger [1]  29/19
last [5]  6/4 13/23
 36/18 46/13 46/14
late [2]  18/5 37/23
later [2]  32/23 38/3
latest [1]  39/12
law [4]  2/11 6/13
 17/18 24/20
lay [1]  10/10
lead [5]  4/7 6/1
 11/17 58/18 58/19
learned [1]  17/16
least [11]  8/9 9/16
 20/4 20/22 23/20

# L

least... [6]  25/5
41/11 44/25 44/25
47/22 50/3
leave [4]  26/25
49/15 53/10 57/9
leaves [4]  15/4
32/12 36/10 46/12
led [1]  9/7
left [1]  23/19
length [1]  30/9
lengthy [2]  6/16
54/24
lenient [1]  46/2
less [2]  7/23 55/18
let [2]  11/1 57/7
let's [5]  12/3 25/2
48/6 49/21 53/22
letter [1]  24/9
letters [1]  24/17
level [2]  7/6 26/18
levels [1]  15/23
like [31]  5/6 5/21
9/15 9/16 10/1 11/9
16/10 16/16 17/5
19/18 21/12 21/12
21/14 22/24 24/18
25/1 31/10 37/12
37/20 39/13 41/19
43/8 45/6 45/13
45/20 46/17 47/1
56/22 57/10 58/5

likelihood [1]  21/14
likely [2]  59/5
59/10
limine [7]  37/3
42/15 42/17 42/19
42/20 42/20 43/2
limitations [1]
58/15
limited [1]  11/12
limits [1]  45/19
line [1]  58/8
lines [1]  5/24
list [1]  59/24
listen [1]  28/1
literally [1]  26/21
litigating [1]  17/17
little [11]  5/19 6/13
9/10 9/12 22/3
25/23 27/23 30/2
31/15 37/21 39/2
live [1]  9/17
LLP [1]  2/5
local [1]  42/23
long [4]  9/24 22/9
30/14 49/22
longer [1]  30/2
look [14]  6/19 6/25
9/22 11/2 14/22
15/4 18/9 19/19
23/3 23/18 37/16
48/20 49/19 51/18

looked [1]  47/8
looking [8]  12/10
12/22 26/10 34/3
35/20 36/23 49/17
50/6
looks [1]  31/10
losing [1]  56/1
lot [26]  7/11 7/21
8/10 8/10 8/12 9/7
12/25 16/12 17/3
17/19 17/22 18/12
18/23 19/13 20/1
20/1 23/7 26/12
29/21 29/21 29/23
29/24 30/5 31/11
48/14 51/5
Lydecker [1]  2/11

# M

Ma'am [1]  28/5
made [4]  19/4
26/13 43/22 44/9
MAGISTRATE [3]
1/16 41/20 58/13
mail [3]  8/5 8/10
22/7
mails [3]  8/4 20/11
22/8
majority [1]  39/7
make [24]  4/6 4/7
12/3 14/7 16/6
16/16 17/14 24/6
30/16 35/5 35/14

# M

make... [13]  36/4 36/17 42/3 42/4 43/1 43/15 43/16 44/1 44/3 45/5 58/2 58/21 59/14
makes [2]  31/11 34/15
making [2]  38/5 52/5
management [9] 5/14 5/16 6/1 10/12 15/1 29/9 29/15 31/18 34/20
mandatory [1] 30/12
manner [1]  23/6
many [7]  13/20 14/17 15/12 17/16 17/24 29/16 57/10
Mar [1]  2/3
March [7]  30/13 30/16 31/5 36/20 37/1 39/23 40/24
March 3rd [1] 39/23
March 3rd as [1] 37/1
mark [1]  17/20
match [1]  33/14
matter [6]  17/13 28/10 47/3 47/15

matters [2]  23/12 25/15
may [20]  9/6 9/17 11/13 14/14 14/15 15/17 15/18 17/9 17/13 18/3 21/9 33/22 38/21 45/22 47/2 47/5 50/8 50/10 53/22 54/17
maybe [7]  6/21 11/1 26/19 38/12 40/22 49/20 52/20
me [22]  4/25 5/18 6/8 9/16 11/1 16/21 16/23 18/12 21/14 21/18 26/4 27/3 28/13 29/10 30/22 31/12 34/5 40/14 40/14 40/23 57/5 58/4
mean [10]  7/14 8/6 9/5 19/6 21/24 23/22 26/9 49/25 50/11 54/1
meaning [1]  26/8
means [5]  23/1 29/23 39/23 40/1 52/6
mediate [2]  39/3 40/12
mediating [1]  40/20

mediation [15]  3/7 37/7 37/9 37/12 37/23 38/12 38/13 38/22 39/8 39/14 39/14 39/20 40/1 40/3 40/18
mediator [4]  40/5 40/12 40/12 40/17
mediator's [1] 40/16
meeting [6]  40/25 43/6 43/9 56/9 56/10 56/18
member [1]  12/24
memorialize [1] 59/15
mention [1]  28/22
mentioned [5] 10/15 11/1 24/5 34/19 44/24
merits [1]  10/6
messages [1]  20/11
method [1]  19/16
Miami [1]  2/6
MICHAEL [2]  2/2 4/15
Michigan [1]  54/1
microphones [1] 58/12
middle [7]  1/1 29/11 56/18 59/12 61/2 61/5 61/13

# M

**might [7]** 5/22 10/9 14/10 25/22 31/14 45/20 46/15
**million [1]** 7/16
**mine [1]** 28/23
**minimum [1]** 49/15
**minor [1]** 27/15
**minute [1]** 56/1
**minutes [3]** 19/8 37/19 54/24
**missed [1]** 10/9
**mission [1]** 16/11
**misspeaking [1]** 31/22
**mistake [1]** 10/4
**misunderstanding [1]** 52/2
**mix [1]** 58/16
**monitor [2]** 58/6 58/7
**month [11]** 13/21 17/20 29/12 29/13 31/13 36/14 41/5 41/7 49/22 53/12 56/11
**months [11]** 11/11 19/23 22/18 29/16 30/2 32/17 35/18 38/7 40/24 50/6 51/1
**moot [1]** 17/15

9/10 9/12 12/14 12/19 14/12 17/4 18/10 18/17 20/8 26/17 26/18 28/14 28/16 37/11 39/2 43/20 43/24 44/2 44/6 44/10 44/15 45/16 47/18 47/18 58/23
**morning [12]** 4/15 4/17 4/18 4/23 5/1 5/2 5/4 11/18 11/20 16/17 16/18 28/6
**most [7]** 6/21 6/21 7/23 21/7 21/20 26/16 59/6
**mostly [2]** 21/5 27/16
**motion [41]** 1/15 6/3 6/5 12/12 12/14 13/23 14/8 14/11 14/14 17/10 30/25 32/1 38/25 40/2 42/15 42/16 42/17 42/19 42/19 42/20 43/2 43/22 44/13 46/12 46/17 47/8 48/10 48/18 48/25 49/16 50/1 51/2 51/8 51/19 51/21 54/8 56/21 57/2

**motions [27]** 7/10 31/1 33/18 36/11 36/15 36/16 37/2 37/2 37/7 37/8 37/11 38/8 38/17 39/4 39/9 42/18 46/22 57/4 57/9 57/23 57/25 58/22 58/22 59/2 59/5 59/6 59/11
**motivation [1]** 9/7
**motive [1]** 52/5
**move [6]** 26/2 26/24 29/8 30/25 53/20 59/9
**moving [4]** 15/7 31/9 35/21 59/9
**Mr [20]** 6/7 11/22 16/18 17/1 17/4 27/5 27/17 29/3 32/16 38/9 44/19 45/10 46/4 46/13 49/10 51/12 53/21 54/13 59/25 60/7
**Mr. [21]** 4/5 4/16 4/16 5/6 7/17 7/18 9/6 10/14 16/25 17/1 27/13 28/8 29/4 34/18 37/15 39/11 44/22 54/10 54/12 54/16 60/4

# M

Mr. Dedonatis [1] 16/25
Mr. Fortuna [1] 28/8
Mr. George [10] 5/6 10/14 34/18 37/15 39/11 44/22 54/10 54/12 54/16 60/4
Mr. Hornbacher [3] 17/1 27/13 29/4
Mr. Horrom [2] 4/16 7/18
Mr. Jernigan [1] 4/5
Mr. Wegman [3] 4/16 7/17 9/6
Ms [5] 5/3 28/7 38/23 46/9 60/10
Ms. [1] 28/8
Ms. Ceo [1] 28/8
much [21] 4/3 4/22 5/2 11/15 12/1 12/19 14/11 16/14 23/11 25/10 25/17 28/3 28/7 28/14 36/9 38/6 51/4 51/10 54/7 54/13 60/12
multi [1] 6/12
multi-count [1]

multiple [2] 13/1 38/12
my [51] 8/9 8/20 9/16 16/20 17/16 19/4 20/4 21/6 21/7 21/17 21/20 23/4 23/12 23/24 23/25 24/22 25/14 26/9 27/15 28/24 29/4 30/8 30/23 32/25 34/19 36/6 41/4 41/21 41/22 44/24 47/7 49/2 50/1 55/22 57/8 57/13 57/16 57/20 58/1 58/5 58/9 58/14 58/15 58/17 58/24 59/5 59/10 59/14 59/18 59/19 59/23
MYERS [1] 1/2
myself [1] 5/13

# N

narrow [1] 28/24
narrowing [1] 49/16
narrowly [4] 12/19 12/20 14/12 15/5
national [1] 15/19
nature [1] 49/17
nearly [1] 44/5
necessarily [1] 59/2

necessary [2] 10/2 31/8
need [24] 5/22 6/16 6/20 10/4 11/25 13/2 19/25 20/3 20/20 22/17 23/8 28/10 37/22 43/20 43/24 44/10 44/11 44/16 54/25 55/1 55/8 55/16 55/19 59/7
needed [2] 10/11 44/15
needs [14] 5/21 6/10 12/23 13/20 17/16 23/5 23/6 30/10 33/4 45/6 45/11 45/14 46/5 60/1
negative [1] 19/25
never [1] 24/10
new [4] 32/1 50/10 50/15 50/21
next [2] 16/15 56/23
night [5] 6/4 13/24 18/5 46/13 46/14
nine [2] 11/11 57/11
no [24] 1/6 10/4 10/25 11/9 11/9 21/10 24/19 24/22

# N

no... [16]  24/23
24/23 34/10 35/15
43/11 43/13 46/10
51/17 55/14 56/4
56/5 56/17 60/2
60/6 60/9 60/11
nobody [4]  12/23
20/23 28/19 33/15
nobody's [1]  24/5
non [5]  22/21 26/3
26/4 42/17 45/25
non-experts [1]
42/17
non-fact [1]  26/3
non-parties [1]
45/25
non-party [2]  22/21
26/4
none [2]  54/4 56/8
nonetheless [1]
52/21
normal [1]  11/10
NORWAY [1]  1/15
not [81]
note [4]  31/18
31/23 31/23 56/24
notes [1]  61/7
nothing [4]  19/9
20/6 23/1 46/7
notice [6]  14/1
45/12 45/15 45/23
53/14 53/18

November [2]  1/6
36/3
November 22 [1]
36/3
now [17]  13/9
18/25 34/10 35/4
42/14 43/8 44/17
45/18 47/22 48/11
49/21 51/5 51/7
53/13 55/7 57/10
58/18
number [14]  4/10
5/23 12/6 12/8
13/10 26/5 26/20
26/20 28/21 29/19
35/20 35/21 43/25
44/24

# O

objection [2]  43/10
43/11
objections [1]
45/24
obligation [1]  30/17
observation [1]
21/10
obviously [2]  17/12
51/13
occurred [6]  8/13
14/25 20/16 47/13
52/14 56/10
ocean [1]  8/22

October [2]  5/15
36/2
October 18th [1]
5/15
October 25 [1]  36/2
off [6]  13/5 22/5
30/3 30/5 49/21
51/2
official [5]  27/6
58/11 58/12 61/5
61/12
oh [3]  15/14 17/20
21/24
Ohio [2]  54/1 54/1
okay [29]  6/25 8/14
11/4 11/5 14/9
15/24 16/5 16/7
18/2 18/8 22/1
27/12 27/24 28/3
28/19 29/6 31/22
34/1 34/18 38/9
38/23 39/5 40/21
51/25 53/7 54/7
54/12 56/17 57/10
omitted [1]  18/7
once [6]  13/22
22/18 22/20 39/3
41/1 44/11
one [37]  6/21 8/16
10/14 11/2 11/7
18/3 19/3 19/4 19/9
19/16 19/21 20/6

# O

**one...** [25]  20/19
21/8 22/9 23/20
24/3 24/19 24/23
24/25 25/21 26/19
34/4 34/10 38/4
39/17 42/16 42/20
44/23 45/11 45/12
45/20 45/22 50/8
50/11 51/20 55/4
**ongoing** [1]  30/17
**only** [5]  9/9 22/13
36/23 44/3 56/13
**opening** [1]  35/17
**operate** [1]  34/14
**operation** [2]  8/18
58/5
**operations** [2]  9/15
16/3
**opportunities** [1]
59/1
**opportunity** [17]
5/18 14/7 36/18
37/22 45/21 46/17
46/18 47/23 50/4
50/11 50/15 50/18
50/19 50/25 51/16
51/21 58/23
**oppose** [2]  32/1
54/16
**opposed** [2]  23/14
54/10

**opposing** [1]  57/10
**opposition** [1]
54/18
**oppositions** [1]
57/12
**OPRISON** [9]  2/5
4/19 11/19 32/16
38/9 46/4 46/13
53/21 60/7
**order** [6]  4/1 56/25
57/6 57/17 57/21
57/21
**ordered** [2]  56/12
56/14
**orders** [5]  36/14
57/19 59/15 59/16
59/22
**organization** [12]
7/14 7/15 8/7 9/15
16/6 16/11 27/4
45/13 51/3 52/4
52/5 53/2
**Organization's** [1]
46/12
**original** [1]  50/24
**Orlando** [2]  1/7
58/7
**other** [26]  10/1
13/17 14/5 16/7
16/15 19/11 20/5
23/7 24/4 27/8
27/13 28/14 29/24

33/8 35/13 44/21
46/25 47/10 47/20
48/21 51/4 59/18
59/25 60/2 60/4
60/7
**others** [2]  17/6
49/11
**otherwise** [1]  55/25
**our** [13]  9/20 11/9
11/12 11/13 17/15
18/21 24/9 27/10
28/11 28/12 31/2
41/11 49/2
**out** [14]  10/10
14/19 14/20 14/21
24/4 24/12 25/13
31/15 37/24 46/24
47/17 48/18 53/23
57/7
**outlined** [2]  28/11
28/12
**outset** [1]  15/5
**outstanding** [1]
44/21
**over** [3]  21/15
21/16 29/1
**overcome** [1]  12/18
**overlap** [4]  13/11
13/12 13/13 29/21
**overlapped** [1]  9/1
**overlaps** [1]  11/13
**overnight** [1]  56/14

**O**

overview [1]  6/8
own [1]  58/20
Oxley [1]  52/9

**P**

PA [1]  2/8
page [4]  3/2 12/4
 17/2 61/8
pages [5]  48/14
 50/20 57/10 57/11
 61/7
paid [1]  53/1
Palm [1]  2/9
paper [7]  20/17
 20/21 20/24 21/20
 21/23 21/23 59/16
papers [1]  54/18
paragraph [1]  18/6
paragraphs [2]
 48/14 50/21
part [8]  14/8 14/23
 18/25 20/4 20/18
 21/23 27/16 47/6
particular [12]
 5/21 6/10 9/6 26/19
 33/5 35/2 39/17
 41/18 43/20 43/22
 44/12 59/7
particularly [3]
 30/3 39/21 47/7
parties [56]  5/14

13/1 13/6 13/20
19/12 22/21 23/2
26/3 30/17 31/7
31/10 31/25 32/6
32/24 33/1 33/3
33/8 33/13 33/15
35/11 35/18 36/13
37/4 37/6 37/8
37/20 38/7 38/11
39/8 39/13 39/15
40/5 40/11 40/19
40/22 41/17 41/23
42/19 43/8 44/24
45/2 45/10 45/22
45/25 56/2 56/2
56/6 57/10 57/16
58/24 59/7 59/20
parties' [1]  22/20
parts [3]  15/7 15/9
 15/10
party [18]  13/23
 22/21 26/4 31/9
 32/1 32/1 32/4 32/6
 32/10 34/7 34/8
 35/2 42/20 43/19
 43/20 45/1 49/2
 58/5
pass [1]  35/9
pattern [2]  52/7
 52/21
payments [1]  53/1

pending [1]  31/1
Pennsylvania [1]
 53/25
people [8]  7/16 8/8
 18/19 22/24 23/18
 26/6 26/18 38/5
per [1]  42/20
percent [1]  34/23
Perfect [1]  36/9
perfectly [1]  25/8
Perhaps [1]  28/18
period [9]  7/2 9/24
 21/15 21/16 33/6
 36/19 53/12 53/13
 59/11
permitted [1]  48/9
person [7]  26/10
 45/13 45/20 58/2
 58/16 58/17 58/17
personal [2]  47/2
 47/19
perspective [5]  8/9
 17/5 54/23 55/18
 55/22
phase [2]  26/2
 55/10
phased [8]  10/17
 32/25 32/25 33/9
 33/13 43/15 43/17
 55/7
phases [8]  10/3

# P

phases... [7]  10/4 10/15 11/3 20/19 22/22 23/6 37/19
phasing [2]  32/13 33/6
phones [2]  30/4 30/6
phrase [1]  27/25
physical [1]  21/20
picture [2]  19/22 21/1
pieces [1]  35/21
Piper [1]  2/5
pitch [2]  15/20 15/20
place [2]  7/3 51/1
placed [2]  53/14 53/17
plaintiff [7]  2/2 5/8 34/6 35/3 35/7 36/1 39/20
plaintiff's [2]  21/8 28/20
plaintiffs [20]  1/5 4/16 5/18 6/12 6/15 12/17 30/12 31/6 35/9 36/22 42/2 43/11 44/19 46/18 47/12 48/12 50/3 50/9 53/25 54/2
plaintiffs' [4]  8/25

plausibility [1]  48/19
plead [1]  50/10
pleaded [4]  14/24 47/22 48/13 50/20
pleading [2]  49/18 50/13
please [5]  4/3 4/5 4/7 4/13 6/7
pled [1]  19/19
plus [2]  23/7 50/20
podium [2]  6/8 27/1
point [17]  12/15 12/22 17/8 24/22 25/13 26/2 33/24 34/4 35/19 37/22 38/18 44/23 48/3 48/5 52/15 53/8 58/15
pointed [1]  48/18
pops [1]  34/15
population [1]  8/5
portion [1]  44/18
position [15]  9/20 11/7 12/12 19/24 21/19 22/19 28/9 28/11 29/3 29/5 31/2 32/9 33/4 34/13 39/3
positions [2]  11/8 27/4

possession [1]  21/10
possibility [3]  14/14 24/11 25/7
possible [2]  46/21 55/16
possibly [4]  18/10 20/21 20/22 26/22
post [1]  17/10
post-motion [1]  17/10
potential [3]  18/20 24/25 33/17
potentially [1]  24/8
practical [3]  54/23 55/17 55/25
practically [1]  56/14
practice [5]  31/13 41/21 42/16 44/8 44/8
practices [1]  29/15
practicing [1]  44/5
practitioners [1]  41/10
precedence [1]  41/11
precedent [1]  48/5
predicate [3]  13/14 13/15 13/15
predict [1]  50/9
preference [2]  58/1

# P

preference... [1] 58/17

prejudge [1] 43/24

prejudiced [1] 30/21

preliminary [4] 5/12 30/8 48/9 59/24

prepare [3] 36/15 36/16 46/15

prepared [1] 39/2

present [1] 58/7

presentation [3] 14/7 44/25 46/16

preserved [2] 21/16 21/18

President [1] 27/14

Presidents [2] 18/17 18/18

pretrial [12] 5/12 40/21 40/25 41/24 42/4 42/7 42/12 42/15 42/25 43/2 43/5 43/9

pretty [5] 7/10 38/16 44/8 46/24 47/21

prevent [1] 40/19

prior [2] 52/12 56/9

privilege [2] 23/16 25/6

privileged [1] 21/15

probably [19] 6/20 7/19 7/22 8/16 13/22 17/3 17/5 20/10 20/17 21/7 38/16 38/18 38/20 39/25 46/1 50/3 50/7 57/14 57/25

problematic [2] 33/7 39/17

problems [1] 30/5

Procedure [1] 32/6

proceed [1] 25/12

proceeding [1] 11/11

proceedings [5] 1/23 58/8 58/12 58/13 60/14

process [7] 27/11 29/13 31/15 32/5 34/4 50/7 54/24

profit [1] 52/4

progress [1] 23/21

prohibits [1] 56/9

proof [9] 33/20 34/8 34/8 34/12 34/16 34/25 35/1 35/2 35/10

propose [6] 13/6 36/25 40/17 40/17 42/7 42/12

proposed [9] 20/19 22/2 23/9 31/10 35/25 37/4 40/5 41/3 42/1 43/2

prosecution [1] 24/12

protection [1] 30/20

prove [1] 19/25

provide [3] 30/20 41/21 45/21

provided [1] 32/5

providing [1] 30/11

pursuant [1] 61/6

push [3] 31/12 42/21 43/5

pushed [1] 38/25

pushing [1] 38/17

put [7] 23/6 29/12 31/13 34/11 41/4 59/4 59/18

puts [1] 34/16

# Q

question [3] 21/9 27/18 34/3

questions [2] 28/13 33/15

Quickbooks [1] 8/20

quickly [2] 55/16 57/24

quite [5] 13/10 13/11 27/14 33/3

# Q

quite... [1]  33/7

# R

Racetrack [1]  2/2
racketeering [3]
 52/7 52/16 52/21
raise [2]  14/16 50/5
raised [1]  49/8
raises [1]  9/10
raising [1]  25/6
rather [1]  38/3
rationales [1]  31/5
RBD [1]  1/6
RDR [2]  2/14 61/12
reach [1]  40/11
read [8]  6/5 15/4
 17/1 18/23 18/24
 19/1 19/18 24/5
reading [1]  14/3
reads [2]  19/18
 25/1
ready [1]  23/23
realize [2]  19/1
 38/1
really [21]  13/1
 14/24 15/10 16/4
 22/14 23/5 24/6
 24/15 26/12 28/19
 31/5 33/16 34/5
 34/7 34/25 36/23
 43/24 49/25 50/6

reason [6]  7/9
 27/16 34/1 49/19
 55/20 59/13
reasonable [1]
 13/22
reasons [2]  20/19
 34/9
rebuttal [6]  20/7
 34/7 34/9 34/23
 35/8 36/3
recall [3]  54/10
 55/10 56/8
receiving [1]  41/17
recently [3]  32/7
 32/7 46/25
recognize [15]
 29/22 30/2 31/14
 33/13 33/17 34/2
 34/5 34/12 45/18
 45/20 46/14 48/3
 51/15 55/14 58/20
recognizes [1]  35/6
recommend [13]
 31/17 32/22 32/23
 33/9 33/10 35/5
 35/24 37/10 40/3
 41/7 42/7 43/19
 45/2
recommendation
 [9]  35/5 41/4 42/4
 43/1 43/15 43/16

recommendations
 [1]  42/5
record [3]  4/6 4/14
 58/13
recorded [2]  58/10
 58/14
recording [1]  1/24
recordings [2]
 58/11 58/14
records [1]  8/19
recovered [1]  20/12
red [1]  19/15
referred [4]  5/12
 40/13 40/14 57/4
regard [3]  8/17
 52/13 52/20
regulations [1]  61/8
related [1]  57/3
relates [1]  28/9
relative [1]  27/17
relatively [3]  6/14
 7/15 9/16
relevant [4]  8/12
 8/24 18/25 19/6
remains [1]  14/13
remind [5]  16/23
 27/3 30/16 31/7
 55/6
replay [1]  40/3
replead [1]  50/11
report [7]  5/14

# R

report... [6]  10/12
18/6 24/20 28/12
29/9 34/20
REPORTER [4]
3/3 61/3 61/5 61/12
represent [2]  16/24
16/25
representative [1]
4/21
request [5]  10/21
28/22 30/13 43/21
58/2
requests [1]  46/6
require [6]  8/11
11/25 28/16 29/21
31/5 52/4
required [1]  44/6
requirements [1]
57/6
requires [5]  6/5
29/22 32/24 53/12
57/21
resolution [2]  5/16
41/20
resolve [2]  39/19
45/10
resolved [3]  41/16
46/21 58/3
resources [1]  51/4
respect [3]  14/4
16/20 55/13

respectfully [1]
54/1
respond [5]  25/5
46/19 51/21 54/8
54/13
response [11]  6/6
39/23 42/23 42/25
56/23 56/23 57/22
57/22 57/24 58/1
59/10
responses [2]  37/9
57/12
responsibilities [1]
15/2
rest [2]  4/8 9/2
result [2]  47/13
48/25
retaliation [10]  7/4
7/5 49/5 49/7 49/10
52/10 52/13 52/16
52/17 52/22
revealed [2]  28/25
32/2
revenue [1]  7/16
review [1]  36/16
RICHARD [3]  1/9
2/8 4/25
RICO [13]  6/13
7/11 7/12 9/1 13/15
29/20 29/20 52/3
52/3 52/10 52/20
53/9 53/23

right [24]  10/5 10/9
10/19 13/9 15/4
16/14 16/15 18/25
23/19 29/2 29/8
34/10 40/10 43/14
46/11 48/7 49/14
49/14 49/21 51/10
53/13 55/11 56/17
60/12
RMN [1]  1/6
RMR [2]  2/14
61/12
road [2]  33/24 51/2
ROBERT [1]  1/15
rocky [1]  57/15
role [3]  27/15 27/20
27/22
routine [1]  23/9
routinely [1]  30/19
rule [7]  34/5 34/7
35/3 44/2 46/23
49/23 56/9
rules [9]  11/24 12/5
32/5 34/14 34/20
42/23 44/2 45/19
46/3
ruling [4]  12/14
12/18 14/10 51/8
rulings [1]  59/14
run [1]  55/24
running [2]  51/3
53/13

## S

S-C-R-I-V-E-N [1] 4/21
said [12] 11/9 13/20 15/3 20/15 21/19 24/22 25/1 25/25 28/14 31/24 54/7 57/14
salaries [2] 52/25 53/1
same [6] 12/4 34/3 51/1 51/2 55/9 56/15
Sarbanes [1] 52/9
Sarbanes-Oxley [1] 52/9
saw [2] 26/15 55/12
say [26] 7/9 12/21 16/8 17/20 20/2 20/13 21/11 23/3 23/18 26/8 26/23 30/14 32/3 34/23 35/4 37/17 41/4 45/5 47/4 47/18 49/20 51/18 53/8 53/22 58/18 59/9
saying [7] 7/12 10/7 19/22 39/11 39/16 53/2 53/21
says [3] 22/14 42/21 52/15
schedule [6] 13/8 42/6 46/5
scheduled [1] 25/17
schedules [1] 13/3
scheduling [1] 36/14
scope [5] 14/25 15/1 49/12 49/13 49/24
scoped [3] 12/20 14/12 15/5
Scott [1] 2/8
Scriven [1] 4/21
seat [1] 5/7
seated [2] 4/4 45/8
second [3] 20/19 24/15 53/8
section [3] 10/17 11/2 61/6
see [25] 6/15 6/16 10/2 10/6 16/19 16/20 17/7 18/22 19/13 20/8 24/25 26/23 33/23 34/4 41/1 44/20 51/7 54/23 55/3 55/9 55/13 55/17 55/25 56/16 56/19
seeing [1] 23/11
seek [1] 8/3
seeking [1] 7/24
seem [1] 29/18
seems [5] 19/16 27/17 28/1 28/1 29/20
send [1] 58/6
senior [2] 7/6 7/17
sense [2] 7/1 31/11
separate [2] 45/15 45/23
separately [1] 45/23
September [10] 35/17 36/1 41/3 41/6 41/8 41/9 41/9 42/8 42/9 42/10
September 15th [1] 42/8
September 2025 [2] 41/3 41/8
September 27 [1] 36/1
September 2nd at [1] 41/9
serious [2] 17/22 26/14
server [1] 22/4
serving [1] 32/14
sessions [1] 38/13
set [10] 12/14 23/13 25/21 35/4 39/25 42/7 42/12 42/25 57/23 59/13
sets [2] 25/14 46/24
seven [10] 19/13

# S

seven... [9]  42/21
45/1 45/14 45/17
45/20 51/23 54/8
54/9 54/20
Seventh [1]  52/15
several [2]  18/19
39/18
shocked [1]  24/21
short [8]  40/15
56/25 57/19 57/21
57/21 57/22 57/22
59/14
shortly [1]  24/2
shot [1]  50/23
shotgun [1]  50/13
should [26]  11/12
21/21 23/15 25/25
30/1 31/8 31/11
32/4 32/5 35/3 35/8
35/12 35/12 38/2
38/18 38/25 43/20
43/22 44/11 46/1
47/17 49/20 51/5
51/5 51/6 51/7
show [2]  19/20
52/23
showing [1]  44/9
sick [1]  23/11
side [2]  11/13 23/7
significant [6]  7/13
48/11 49/1 49/16

silence [1]  7/8
similar [1]  57/20
simply [3]  24/8
47/12 50/10
since [6]  29/18
35/19 36/22 52/14
54/16 57/13
single [5]  12/24
12/24 42/16 44/5
48/15
sir [5]  13/14 14/21
32/18 60/6 60/9
sit [1]  16/8
site [2]  22/5 22/5
situation [3]  17/7
25/23 26/10
six [2]  11/11 53/12
six-month [1]  53/12
skip [2]  14/8 20/18
skipped [1]  29/1
slip [1]  19/15
slow [1]  15/20
slowed [1]  59/17
small [3]  7/15 27/21
44/23
smoother [1]  17/19
so [103]
so's [1]  22/25
social [1]  59/19
some [29]  6/4 7/20
8/18 9/22 9/25

13/18 14/5 14/15
16/9 16/9 17/12
17/23 24/6 24/21
30/24 33/24 35/9
44/25 45/25 49/15
49/18 50/12 52/20
57/14 58/23 59/1
somebody [9]  22/14
23/2 24/21 29/1
32/4 34/15 40/7
58/6 58/10
something [8]  5/24
24/22 25/17 34/10
34/15 39/12 49/11
57/20
sometimes [3]  22/3
37/24 43/8
somewhere [1]
24/22
soon [2]  25/19
46/21
sorry [13]  21/16
22/1 28/22 28/22
29/1 31/20 31/22
40/25 42/2 42/11
45/7 46/14 47/25
sort [13]  6/16 8/15
9/9 13/21 17/23
22/15 30/8 32/12
38/15 38/19 45/19
50/14 56/6

## S

speak [1]  10/13
speaking [7]  31/12
36/13 36/19 40/23
41/6 42/3 57/18
special [3]  6/17
10/6 17/16
SPECIALTY [4]
1/8 2/5 4/11 4/19
specific [1]  43/16
specifically [1]
10/20
SPORTS [5]  1/8
2/6 4/11 4/19 18/18
spots [1]  38/19
square [1]  25/16
squared [1]  23/2
St [1]  2/12
staff [2]  16/2 36/6
stake [1]  49/24
stakes [1]  59/2
standard [5]  9/10
43/18 44/10 46/24
48/19
standing [10]  12/16
13/16 14/5 47/9
47/24 48/1 48/2
48/5 48/6 48/7
start [4]  22/19
55/24 59/9 59/15
started [1]  13/22
starting [1]  26/2

starts [4]  23/2 33/5
41/6 41/9
state [6]  4/13 15/19
16/3 16/4 18/17
27/14
statement [3]  16/16
42/15 43/2
states [11]  1/1 1/8
1/16 2/5 4/11 54/5
61/1 61/5 61/6 61/9
61/13
status [2]  7/5 7/7
statute [1]  53/15
statutes [1]  52/10
stay [8]  6/3 13/23
14/8 46/12 46/23
54/10 55/20 55/23
stayed [1]  55/23
stays [1]  12/22
Ste [3]  2/6 2/9 2/12
stenographic [1]
61/7
step [1]  28/1
step-and-fetch-it [1]
28/1
still [8]  12/15 13/21
27/9 33/25 38/22
50/12 53/23 55/13
stipulation [1]
31/25
straight [2]  24/10
57/6

straightforward [3]
6/15 7/10 10/5
STRASSER [6]  2/8
4/24 28/7 38/23
46/9 60/10
stretch [1]  25/18
strong [1]  36/22
stupid [1]  24/24
subject [4]  17/13
47/3 47/15 47/21
submit [1]  40/7
submitted [1]  36/7
substantially [1]
9/2
such [2]  25/15 57/3
sufficient [2]  30/20
34/24
suit [1]  24/1
Suite [1]  2/14
supposed [1]  20/16
sure [7]  5/13 12/3
16/6 35/14 36/5
36/17 51/24
surprised [1]  22/12
survives [1]  7/12
suspended [2]
23/24 27/10
sussing [1]  31/15
system [1]  8/21

## T

table [2]  5/7 49/15
take [18]  5/7 6/23

**1**

take... [16]  11/1 17/22 18/23 18/25 19/25 22/17 22/25 28/16 30/8 34/13 41/11 48/9 48/19 49/20 51/19 56/21
taken [8]  6/20 29/4 48/16 48/22 48/24 49/10 50/15 61/7
takes [2]  42/23 49/22
taking [2]  22/20 24/14
talk [2]  35/12 48/6
talked [1]  37/19
talking [11]  9/22 12/2 12/5 12/6 14/11 20/9 20/10 22/20 26/6 50/22 52/22
Tampa [3]  2/12 2/15 61/14
targeted [6]  8/23 9/11 9/18 12/14 12/20 15/16
targets [1]  24/17
task [1]  30/4
TAYLOR [2]  2/11 5/4
tea [1]  15/4
technical [2]  58/14

**58/15**

technically [1]  20/12
technology [1]  58/9
telephone [1]  58/8
telephonically [1]  58/10
tell [4]  5/18 18/14 57/15 58/8
temporary [1]  27/11
tennis [1]  33/13
term [6]  41/1 41/3 41/5 41/6 41/8 41/8
terminate [1]  9/8
terminated [2]  7/7 23/25
terms [4]  11/13 11/22 12/25 48/8
text [1]  20/11
texting [2]  8/11 8/13
than [21]  5/22 7/23 16/7 17/4 17/19 26/17 26/19 28/14 28/16 29/19 30/2 38/3 39/20 43/21 43/24 44/2 44/6 44/10 45/16 47/18 48/21
Thank [27]  4/3 4/9 4/22 5/2 11/15

**16/14 16/19 18/2**

25/9 28/3 28/4 29/6 32/21 34/1 34/18 36/9 46/8 46/11 46/20 51/10 51/12 54/13 54/14 56/19 56/20 60/2 60/12
that [418]
that's [46]  8/21 9/9 10/4 10/7 11/6 11/15 13/3 15/10 16/5 16/10 19/4 19/5 19/9 19/11 21/14 22/15 23/5 23/18 23/19 24/3 24/3 24/4 24/13 24/14 25/9 25/24 26/12 26/12 28/2 30/8 34/24 36/17 40/6 40/10 41/23 41/25 41/25 47/14 47/17 50/22 53/5 53/6 53/7 55/24 55/25 59/17
their [16]  4/6 7/7 8/19 9/2 10/10 31/8 31/24 34/11 35/11 50/4 50/23 52/8 56/23 57/17 58/25 58/25
them [23]  7/8 7/18 9/7 18/1 18/4 18/25

**them...** [17]  23/3 24/11 32/8 32/11 34/16 36/8 37/21 39/19 44/16 49/9 50/17 50/18 50/25 53/14 53/17 55/16 59/13
**themselves** [3]  35/3 45/10 48/20
**then** [27]  5/25 6/2 7/12 15/19 16/2 22/19 22/21 25/13 26/2 26/3 26/4 29/12 34/23 35/23 36/16 37/12 39/1 39/14 39/19 40/13 46/18 49/23 52/14 52/17 53/16 53/19 55/23
**there** [81]
**there's** [15]  6/20 8/4 8/5 9/21 10/4 13/11 15/19 15/22 16/2 17/12 35/15 52/15 52/16 52/16 52/19
**therefore** [3]  19/19 37/18 48/24
**these** [23]  7/5 9/17 18/23 19/3 19/11 19/13 20/15 20/16

26/16 34/13 34/20 35/1 36/4 44/25 46/22 46/22 47/6 49/10 58/11 58/19
**they** [48]  8/8 8/9 12/16 14/23 15/17 15/24 20/6 21/4 21/6 23/18 25/11 26/15 30/21 31/7 32/4 33/1 33/22 34/10 34/16 35/2 36/5 36/5 36/8 37/6 37/9 39/13 39/18 39/19 47/12 48/13 49/8 49/9 50/9 50/10 50/11 50/12 50/13 50/15 50/16 50/20 50/21 50/23 53/21 53/22 53/23 56/25 57/8 58/6
**thing** [4]  9/9 25/1 38/19 50/14
**thing's** [1]  38/1
**things** [15]  10/1 10/8 15/8 17/19 18/10 20/16 22/9 22/12 22/15 24/7 28/24 29/12 46/4 51/4 51/20
**think** [109]
**thinking** [2]  28/18

**this** [115]
**THOMAS** [1]  1/4
**those** [28]  5/24 6/17 10/7 15/15 16/1 16/2 21/4 23/12 23/14 25/21 30/19 31/4 31/4 36/7 38/15 45/22 46/1 50/5 50/14 54/5 54/20 55/15 55/17 57/23 57/25 59/9 59/15 59/22
**though** [3]  12/1 34/6 59/9
**thought** [1]  7/25
**three** [7]  7/19 20/4 24/9 26/19 38/7 49/22 51/1
**three-letter** [1]  24/9
**through** [18]  8/19 17/2 17/16 20/25 22/18 22/18 25/17 30/7 30/25 32/3 33/23 34/4 39/25 45/25 54/24 55/17 55/21 61/7
**throughout** [1]  30/18
**throw** [1]  33/8
**Thursday** [1]  56/23

# T

ties [1]  14/9
tight [1]  25/23
time [30]  12/5
16/12 17/23 20/1
20/22 22/10 22/17
25/15 25/19 30/21
30/24 30/25 32/10
33/22 33/25 38/6
38/11 41/18 43/9
46/7 51/5 54/25
55/1 55/8 55/16
55/19 55/21 56/1
58/24 59/11
time for [1]  55/8
timeline [1]  12/25
times [1]  57/14
title [2]  27/6 61/6
today [11]  5/11
5/17 6/6 17/9 17/11
32/22 40/8 51/19
58/19 60/1 60/5
together [3]  13/4
25/20 33/1
tons [1]  25/24
too [5]  20/5 25/23
39/21 39/21 43/23
took [2]  7/3 50/23
tool [1]  33/7
top [1]  27/7
touched [2]  28/19
33/16

tournaments [1]
16/3
towards [1]  8/23
track [2]  13/22
29/12
transcribed [1]
1/23
Transcriber [1]
2/14
transcript [3]  1/15
61/3 61/8
transcription [2]
1/24 61/7
transcriptionist [1]
1/24
transcripts [1]
36/18
trial [15]  7/25
29/14 29/17 41/1
41/2 41/3 41/5 41/6
41/8 41/8 41/12
41/14 41/18 42/1
42/6
trials [4]  41/11
41/15 41/22 41/22
trimmed [2]  12/11
12/13
trimming [3]  49/1
50/6 52/20
true [2]  49/25 61/6
truly [1]  32/6
truth [1]  22/10

try [6]  13/7 14/19
28/24 40/7 50/4
51/2
trying [2]  15/4 15/7
turning [1]  23/14
two [17]  7/5 7/16
18/3 20/4 26/19
40/16 42/22 42/23
43/6 43/8 43/10
45/3 49/22 52/10
53/25 53/25 54/2
Twombly [1]  48/20
type [3]  30/9 43/21
58/22
types [3]  6/17 10/8
31/5
typical [1]  57/19
typically [2]  29/11
57/23

# U

U.S [1]  4/19
U.S.C [1]  52/11
under [9]  35/3
35/18 42/23 44/2
44/2 48/5 51/19
53/14 56/21
underlies [1]  13/16
underlying [1]
14/22
undersigned [1]
61/7
understand [2]

# U

understand... [2] 13/5 40/1
understanding [7] 21/7 21/20 27/10 27/15 34/19 38/6 46/22
understood [1] 16/6
unfolding [1] 38/13
unfortunately [1] 13/9
uniform [3] 5/14 13/8 29/9
unique [2] 17/5 26/17
UNITED [10] 1/1 1/8 1/16 2/5 4/11 60/15 61/5 61/6 61/9 61/13
until [4] 23/1 30/13 30/15 56/23
unusual [1] 30/13
up [15] 11/17 13/7 17/18 17/21 23/13 23/14 30/5 34/15 35/13 41/23 43/19 44/4 44/16 51/3 57/11
update [1] 30/18
upfront [3] 23/15 57/7 59/4

upon [1] 7/4
us [5] 2/5 15/18 23/11 43/12 56/9
use [5] 8/9 8/10 27/25 32/5 37/1
used [1] 52/6
using [5] 1/24 35/5 35/6 51/4 57/19
USSSA [12] 7/14 14/23 15/2 21/6 21/21 24/1 47/14 48/12 48/16 48/17 48/25 55/4
USSSA's [1] 28/9
usual [1] 29/19
usually [4] 29/11 29/13 36/13 36/17
uttered [1] 24/24

# V

various [1] 15/20
vendettas [1] 49/10
verdict [1] 43/3
verify [3] 19/2 22/13 36/6
version [1] 33/14
very [34] 4/3 4/22 5/2 8/20 11/15 11/15 14/9 15/5 16/14 16/21 18/21 20/2 22/15 25/10 27/15 27/21 28/3 36/9 47/1 48/18

51/5 51/6 53/22 54/13 54/15 54/23 57/4 57/21 57/21 57/22 57/22 57/23 59/12 60/12
via [2] 1/23 8/13
view [12] 2/2 8/25 11/9 11/12 17/9 17/10 17/15 23/24 32/25 35/1 37/14 38/2
viewed [1] 17/6
violation [1] 53/11
virtually [2] 18/1 18/4
VOLKOV [9] 2/2 4/16 6/7 11/22 44/19 45/10 51/12 54/13 59/25
Volusia [1] 21/21
vs [2] 1/6 4/11

# W

wait [3] 30/15 51/7 56/16
walk [1] 48/21
want [29] 9/25 10/13 11/14 16/8 17/21 22/1 22/10 22/10 22/24 22/25 26/6 29/16 30/13 37/5 37/6 37/23 38/5 38/7 39/18

# W

want... [10] 50/9
54/17 55/15 55/15
55/18 55/20 55/20
55/21 55/21 58/6
wanted [9] 7/25
16/5 30/23 31/25
51/20 51/20 53/8
55/12 59/4
wants [1] 40/9
warn [1] 46/1
was [27] 6/3 7/17
7/19 10/14 10/20
11/2 20/13 22/14
23/23 27/5 27/6
27/6 28/12 28/14
28/18 28/23 28/24
29/3 31/2 34/11
38/5 39/11 46/12
47/4 50/1 54/10
55/10
wasn't [1] 27/18
waterfront [1]
26/22
way [21] 6/19 6/25
15/6 17/17 19/20
19/21 20/2 27/11
28/2 34/10 34/14
34/24 35/6 39/17
48/13 49/9 55/3
55/9 55/12 55/25
57/3

ways [23] 1/22 1/26/9
we [184]
we'll [3] 5/25 22/19
51/1
we're [7] 12/3
22/17 23/13 25/24
26/6 26/9 38/22
we've [1] 30/8
weaknesses [1]
38/19
web [2] 19/20 19/20
week [8] 13/6 41/25
42/8 42/8 42/13
42/13 56/13 58/1
weeks [8] 28/12
40/16 42/5 42/22
42/23 43/6 43/8
43/10
WEGMAN [5] 1/4
4/11 4/16 7/17 9/6
well [15] 6/11 8/4
11/14 12/3 14/16
18/12 19/5 21/2
24/9 29/15 47/11
49/25 53/17 53/24
54/11
WENDY [4] 1/9
2/9 4/24 4/25
went [2] 9/11 54/24
were [15] 7/3 7/6
7/16 7/24 10/11
12/21 13/5 13/5

13/22 17/7 22/8 34/3
40/6 48/22 49/10
53/9
weren't [2] 13/8
22/14
West [2] 2/9 2/12
what [48] 5/17 8/2
8/12 8/23 11/24
12/2 12/4 12/4
13/16 13/20 14/4
16/10 19/5 19/6
21/9 21/13 21/22
22/23 23/17 23/18
23/22 27/20 28/14
29/8 30/8 32/21
33/4 33/23 34/2
37/19 39/10 40/10
47/10 48/8 49/17
49/24 50/9 50/20
50/22 51/7 52/7
52/12 52/22 52/24
53/19 56/16 57/8
59/4
what's [5] 19/3
19/6 28/21 37/14
49/23
whatever [2] 14/23
41/15
when [22] 4/7 7/24
9/22 14/23 17/1
17/8 20/6 20/8
21/11 24/25 26/8

# W

when... [11]  30/5
33/1 33/5 34/3
35/11 42/3 46/1
46/2 52/16 52/16
56/10
whenever [1]  41/14
where [25]  5/19 6/9
12/21 13/9 14/10
17/7 18/22 19/14
21/3 21/11 21/12
22/4 23/13 25/24
26/10 34/11 35/9
37/22 37/25 38/18
45/22 46/25 47/1
47/5 59/2
whether [8]  7/11
27/18 37/6 41/19
43/24 47/20 51/6
51/7
which [15]  6/3 7/2
9/7 10/1 20/11
20/16 21/8 22/11
26/15 33/8 33/19
39/25 43/6 52/6
53/12
whistleblower [2]
7/5 9/11
whistleblowers [1]
7/7
Whistleblowing [1]
53/11

while [1]  7/6
whole [1]  7/9
who... [17]  7/16
8/17 10/14 11/14
16/15 16/23 18/19
18/20 26/10 27/8
32/6 34/25 40/12
56/22
whole [1]  7/9
whom [1]  18/18
whomever [1]
11/16
why [7]  6/8 6/18
10/7 19/6 20/13
23/5 59/13
will [59]  6/1 7/10
7/10 7/20 7/22 8/11
8/15 8/18 12/19
12/20 19/13 19/23
23/24 24/1 24/10
25/19 29/8 29/21
30/7 30/16 30/19
32/2 33/19 35/4
35/17 36/6 37/18
41/4 41/7 41/8
41/14 41/14 44/13
45/5 45/16 45/25
48/1 49/1 50/3
50/21 50/25 51/18
52/18 54/12 54/14
54/22 56/8 57/2
57/6 57/13 57/14
57/25 58/7 58/8
58/18 59/5 59/9

willing [1]  40/15
wish [1]  45/22
within [13]  11/11
11/24 12/5 12/9
33/6 40/8 46/25
49/12 49/13 51/23
54/8 54/9 58/1
without [1]  34/8
witness [7]  8/17
26/2 26/4 26/12
45/7 45/7 45/11
witnesses [8]  5/23
18/20 20/22 22/22
23/4 26/3 26/15
26/16
won't [1]  55/6
words [1]  9/17
work [11]  11/24
12/10 13/4 13/7
25/20 33/1 33/11
37/24 40/22 45/25
59/19
workdays [1]  36/8
worked [2]  7/18
29/15
working [2]  17/20
40/2
works [4]  8/21 33/1
33/8 52/3
worse [2]  53/23
53/23

# W

worth [1]  20/10
would [55]  4/5 5/6
 5/9 6/7 6/21 6/25
 8/17 11/25 13/24
 15/6 16/10 16/16
 21/12 21/19 22/12
 24/21 25/10 25/13
 27/18 32/8 32/9
 32/13 33/21 34/12
 34/13 34/14 34/23
 36/20 37/7 37/10
 38/10 39/6 39/13
 40/14 40/15 40/24
 41/19 42/24 43/5
 43/7 44/15 45/2
 46/17 47/11 49/12
 49/24 50/9 51/24
 53/10 53/19 53/20
 55/23 56/22 58/5
 58/24
wrap [2]  22/22 26/4
wrench [1]  33/8
writing [2]  51/21
 59/16
written [4]  29/25
 34/6 34/9 56/7
wrong [2]  30/22
 30/23
wrongdoing [1]  9/7

# Y

Yeah [5]  15/22
 19/24 54/3 55/2
 56/17
year [3]  7/2 21/15
 21/16
years [11]  7/18 7/19
 8/6 8/8 17/17 20/9
 20/10 26/22 26/22
 29/16 44/5
yes [22]  6/24 9/4
 13/13 14/21 18/11
 18/13 21/17 21/25
 22/8 25/3 27/2 27/5
 29/3 31/2 32/18
 32/20 44/20 48/3
 51/22 53/16 54/19
 54/22
yet [8]  20/23 22/4
 23/5 24/5 24/12
 24/19 25/8 40/5
you [192]
your [100]

# Z

Zoom [4]  58/2
 58/16 58/16 59/8