```
 1              UNITED STATES DISTRICT COURT
                MIDDLE DISTRICT OF FLORIDA
 2                   ORLANDO DIVISION
            CASE NUMBER 6:23-cv-1637-RBD-RMN
 3
    . . . . . . . . . . . . . . . .
 4  BRIAN WEGMAN and THOMAS HORROM, :
                                    :
 5         Plaintiffs,              :
                                    :    Orlando, Florida
 6              v.                  :    April 3, 2024
                                    :    9:02 a.m.
 7  THE UNITED STATES SPECIALTY     :
    SPORTS ASSOCIATION, INC.,       :
 8  ET AL.,                         :
                                    :
 9         Defendants.              :
    . . . . . . . . . . . . . . . .
10


11              TRANSCRIPT OF MOTION HEARING

12         BEFORE THE HONORABLE ROY B. DALTON, JR.

13              UNITED STATES DISTRICT JUDGE

14

15

16

17

18

19

20

21  Court Reporter:     Amie R. First, RDR, CRR, CRC, CPE
                        Federal Official Court Reporter
22                      401 West Central Boulevard, Suite 4600
                        Orlando, Florida  32801
23                      AmieFirst.CourtReporter@gmail.com

24  Proceedings recorded by Realtime Stenography.

25  Transcript produced by Computer-Aided Transcription.
```

1   **<u>APPEARANCES:</u>**

2

3   Counsel for Plaintiffs:        Michael Volkov
                                   The Volkov Law Group
4                                  2805 Racetrack View Drive
                                   Del Mar, CA  92014
5                                  240-505-1992
                                   mvolkov@volkovlaw.com
6

7   Counsel for Defendant The United States Specialty Sports
    Association, Inc.:
8

9                                  Christopher G. Oprison
                                   DLA Piper US, LLP
10                                 200 South Biscayne Blvd.
                                   Suite 2500
11                                 Miami, FL  33131
                                   305-982-5551
12                                 Chris.Oprison@dlapiper.com

13

14  Counsel for Defendants Richard Fortuna, Wendy Anderson,
    Courtney Ceo:
15

16                                 Jillian Strasser
                                   Cole, Scott & Kissane, P.A.
17                                 222 Lakeview Avenue, Suite 120
                                   West Palm Beach, FL  33401
18                                 561-612-3426
                                   jillian.strasser@csklegal.com
19

20  Counsel for Defendants Donald Dedonatis, III, and Jacob
    Hornbacher:
21

22                                 Dawn E. George
                                   Lydecker LLP
23                                 4350 West Cypress Street
                                   Suite 910
24                                 Tampa, FL  33607
                                   813-443-8424
25                                 deg@lydecker.com

1          **INDEX OF PROCEEDINGS**

2

3

4     **ARGUMENT**

5     By Mr. Oprison .......................... 5

6     By Ms. Strasser ......................... 18

7     By Mr. Volkov ........................... 21

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**P R O C E E D I N G S**

\* \* \* \* \*

1          (Court called to order.)

THE COURT:  Good morning, everyone.

Call the case, please.

THE DEPUTY CLERK:  Calling the case of Brian Wegman, et al. versus The United States Specialty Sports Association, Inc., et al., Case Number 6:23-cv-1637.

Counsel, please state your appearances for the record starting with the plaintiff.

MR. VOLKOV:  Yes, good morning, Your Honor. Michael Volkov for the plaintiffs, Mr. Wegman and Mr. Horrom.

THE COURT:  Good morning.

MR. OPRISON:  Good morning, Your Honor.  Chris Oprison from DLA Piper for the defendant USSSA, the United States Specialty Sports Association.  I'm joined here by my client representative, Craig Scriven.

THE COURT:  Good morning.

MS. STRASSER:  Good morning, Your Honor.  Jillian Strasser on behalf of Defendants Wendy Anderson, Richard Fortuna, and Courtney Ceo.  I'm joined by Wendy Anderson here this morning.

THE COURT:  All right.  Good morning.

So I have a limited amount of time this morning.

 1    I have a half an hour set aside for you all.  And so what

 2    I'd like to do -- I mention that just because we're going

 3    to allocate your time.

 4          Oh, I'm sorry, ma'am.  Yes.

 5          MS. GEORGE:  Dawn George on behalf of Donald

 6    Dedonatis and Jacob Hornbacher.

 7          And I just wanted to disclose to Your Honor that

 8    I'm not the attorney who was originally scheduled to be

 9    here today.  The attorney who was going to be here had a

10    personal emergency.  So I'm prepared, but I may not be able

11    to answer more of the detailed, specific questions.

12          THE COURT:  Okay.  You threw me off a little bit

13    there with your seating.

14          So as I started to say, I've got 30 minutes

15    available for you all this morning.  So we're going to

16    split it up 15 minutes for plaintiff and 15 minutes for

17    defendant.

18          What I'd like to focus on is the motion to dismiss

19    primarily on the RICO counts.  I've read your papers and

20    I'm familiar with the parties' positions on that.

21          So let me hear from, I guess, USSSA initially on

22    the motion to dismiss.  And let's focus on the RICO counts,

23    if we could.

24          MR. OPRISON:  Thank you, Your Honor.

25          Chris Oprison for USSSA.

1          Your Honor, as you indicated, our briefs are

2    fairly explicit and comprehensive.  I will just point out

3    that to state a RICO -- well, first of all, let me just

4    say, Your Honor, this is the second time that they've

5    pleaded this case.  We believe that there are some standing

6    issues.  And certainly they haven't cured the shotgun

7    pleading deficiencies.

8          But in terms of the RICO and the Florida

9    Whistleblower Act allegations, and that would be counts one

10   and two --

11        THE COURT:  Well, your standing argument is that

12   they haven't alleged that they've suffered an injury as a

13   consequence of the predicate acts.

14        Is that right?

15        MR. OPRISON:  That's exactly right.  Yes, sir,

16   that's exactly right.

17        And that would be covered by Ray and Beck, the two

18   cases that we cited.  I think those cases are very clear

19   about what they need to plead in order to get the proximate

20   cause to at least establish under Iqbal/Twombly that there

21   is, in fact, a causation element here that's been satisfied

22   in the pleading.

23        They have not done that.  They have not

24   established that the termination, their termination was a

25   direct or proximate cause of anything they've alleged.

1          And, in fact, Your Honor, at least as to

2   Plaintiff Horrom, he only alleges one predicate act but he

3   claims the predicate act -- we don't believe it satisfies

4   the predicate act.  There certainly is not two predicate

5   acts that they need to allege.  But the only predicate acts

6   that Mr. Horrom suggests that he was terminated for that

7   created the basis for the RICO and the Florida

8   Whistleblower Act violation is the illegal gambling.

9          And I would just note, Your Honor, that every

10  single allegation in this Complaint, whether it's as to the

11  RICO or as to the Florida Whistleblower or any of the other

12  allegations, the contractual or tort allegations, are

13  really focused on the two individual defendants,

14  Mr. Dedonatis principally and Mr. Hornbacher.

15         All of the allegations that they've raised they

16  just lump USSSA -- and I'll call USSSA our client -- into

17  that sphere, that bucket of defendants.  And so they really

18  don't get past the shotgun pleading.

19         But, really, when you get down to it, you can't

20  just simply say that all defendants were engaged in this or

21  ratified this conduct.

22         THE COURT:  So I have some concerns myself about

23  the 150-odd paragraphs of facts that are incorporated into

24  the various counts.  And I'll talk to Mr. Volkov about that

25  when the opportunity presents itself.

1           But let me ask you this.  With respect to the

2    predicate acts, you focused on the allegations of money

3    laundering and bookmaking or illegal gambling.  What do you

4    make of the myriad of allegations throughout the Complaint

5    about making unlawful loans -- and there's other illicit

6    conduct that's alleged in the Complaint, or illegal

7    conduct, potentially illegal conduct that's alleged in the

8    Complaint.  I've got some other specific examples in my

9    notes.

10           So what do you make about -- what do you make of

11   those?  And do any of those -- are any of those

12   sufficiently pled to constitute predicate acts as far as

13   RICO is concerned?  If not, why not?

14           MR. OPRISON:  Your Honor, we don't --

15           THE COURT:  Let's assume, for instance, that if I

16   were drafting the Complaint and I drafted it more

17   specifically to say the Defendant USSSA was in violation of

18   RICO.  They committed the following illegal acts which

19   constitute predicate offenses pursuant to the provisions of

20   the statute.

21           And I list either participation directly or

22   implicitly or complicitly in sports bookmaking;

23   participated either directly or indirectly, complicitly or

24   implicitly in money laundering; participated in either

25   directly or complicitly or implicitly in providing illegal

1  loans; participated either directly or indirectly in

2  providing false information to the I.R.S. with respect to

3  federal tax filings.

4       If the Complaint were alleged in that fashion,

5  would those predicate acts be sufficient to establish a

6  RICO count?

7       MR. OPRISON:  Your Honor, we don't believe they

8  do.

9       First of all, when --

10       THE COURT:  Well, it's not pled that way.

11       MR. OPRISON:  It's not pled that way.

12       THE COURT:  I understand that.

13       MR. OPRISON:  And even if you did have that level

14  of specificity, you have to look at under Iqbal/Twombly the

15  plausibility standard.

16       And what we are looking at right now, Your Honor,

17  is whether or not, say, illegal gambling, bookmaking, and

18  money laundering as one of the several categories of

19  predicate acts would actually satisfy that.

20       They don't allege specific facts about how USSSA

21  was involved in that.  And, in fact, I think if you look at

22  the plausibility standard, you would look at this and say

23  these are all allegations that are focused on

24  Mr. Dedonatis' conduct and Mr. Hornbacher's --

25       THE COURT:  Well, they're not really.  I mean,

```
 1   that's the reason I asked the other question is because I
 2   don't know whether or not Mr. Volkov intended -- because I
 3   can't tell from looking at the Complaint whether he
 4   intended, for instance, the corporate act of providing a
 5   loan which they assert was an unlawful loan to Mr. --
 6           How do you say his name properly?
 7           MR. OPRISON:  Dedonatis.
 8           THE COURT:  Dedonatis.
 9           Whether or not making a loan to Mr. Dedonatis --
10   let's assume for purposes of our conversation that that
11   does -- that that was unlawful.  I don't know whether he
12   intends that as one of the predicate acts with respect to
13   USSSA in terms of the RICO count or not.
14           But I guess my question to you is, that's
15   corporate conduct, right?  I mean, I'm not asking you to
16   commit that it occurred or that it was unlawful.  But if it
17   did, that's corporate conduct.  They made a loan.  And if
18   that loan was unlawful, that's corporate conduct.
19           MR. OPRISON:  If pleaded that way, it could
20   satisfy that one prong of the RICO.
21           THE COURT:  And that would be true also with
22   respect to the tax information.  If we assume for purposes
23   of our conversation that that was somehow illegal or
24   unlawful, that also was a corporate act.
25           MR. OPRISON:  If ratified by our client,
```

 1    Your Honor.  If they knew and the board knew and they

 2    ratified.  And, again, those aren't facts that we have

 3    alleged in the Complaint.

 4          But that would certainly satisfy -- if pleaded

 5    that way, they would certainly, I would think, get past --

 6    not to give Mr. Volkov a road map, but that would certainly

 7    get them past the motion to dismiss phase on that point,

 8    assuming they satisfied all the other caveats of that, all

 9    the other requirements.

10          But again, when we look at what they've pleaded,

11    how they've pleaded it, and whether or not they've shown

12    that causal connection between the acts, right, first, they

13    have to attribute it to USSSA, who was really a victim

14    here.

15          So when you look at plausibility, you say, how can

16    you, USSSA, have ratified conduct as a corporate conduct

17    when they were -- the allegations were that Dedonatis and

18    Hornbacher were embezzling funds or stealing funds or doing

19    side deals.

20          THE COURT:  So that's why I'm pressing you on some

21    of this because I also have some concern about that.

22    That's why I'm trying to drill down on what it is that

23    Mr. Volkov alleges were the predicate acts that support a

24    RICO claim with respect to your client, because in the

25    Complaint itself he alleges that there was a lack of

1    knowledge on the part of USSSA.

2         Is that how you say it?

3         MR. OPRISON:  USSSA.

4         THE COURT:  USSSA.  Thank you.  USSSA.

5         The Complaint actually alleges that they were

6    unaware of certain activity of Mr. Dedonatis.  And so, you

7    know, it's very difficult to sort out what it is that

8    they're contending that your client knew about, should have

9    done something about, or was complicit in undertaking or

10   ratified or approved or willfully ignored, whatever term

11   you want to ascribe to it, that might impose liability on

12   your client for conduct of Mr. Dedonatis or Mr. Hornbacher.

13        I also struggled a little bit trying to figure out

14   are these claims against Mr. Dedonatis and Mr. Hornbacher

15   or is there -- is liability attempted to be imposed on the

16   corporate entity who does seem in some instances to be

17   victimized by that conduct.

18        So that's why I'm pressing you on at least what

19   you think could constitute -- again, not to tell Mr. Volkov

20   how to draft his Complaint.

21        But there are facts -- at least as I look at the

22   Complaint writ large, there are facts contained in the

23   Complaint that if I were to take them out, organize them

24   differently, it seems to me might establish a RICO count

25   with respect to your client.

1    I don't think they're organized in that way.  But

2    I'm trying to figure out -- I'm trying to avoid coming back

3    here again, I guess is part of it.  There's some method to

4    my madness.  So I'm trying to figure out how to avoid

5    coming back here again.

6         MR. OPRISON:  Well, we would embrace that

7    position, Your Honor.  I think that under the doctrine of

8    futility you would look at this and say they didn't plead

9    it.

10        Obviously, if you have a pattern of racketeering

11   activity that includes mail fraud, wire fraud, something

12   like that, money laundering, that could constitute it with

13   the proper predicate underlying the allegations, which they

14   don't have in their Complaint.

15        So not only -- that's one deficiency.  I would

16   think that if they had those claims or those facts and they

17   had some credible basis, some good faith basis for alleging

18   that, they should have done that in their Amended Complaint

19   before they came back and refiled it.  They didn't do that.

20   We don't think they have those facts.

21        And we can say with certainty, Your Honor, that

22   the fact that how they pleaded this has actually pleaded

23   USSSA out of this case.  What they've done is they've

24   essentially said USSSA was an innocent bystander, or at

25   least a victim, of what Mr. Dedonatis and Mr. Hornbacher

1   were attempting to carry out.  Whether or not --

2           THE COURT:  That's really only true if I

3   compartmentalize the allegations in the Complaint.  Because

4   the Complaint goes on to allege, albeit not clearly in

5   terms of whether or not they're contending that these

6   constitute RICO predicate offenses, but the Complaint does

7   go on to allege corporate conduct, which I've already

8   mentioned in our conversation, providing false information

9   to the I.R.S., providing an illegal loan to Mr. Dedonatis.

10          There is some allegation in the Complaint that

11  they failed to act on whistleblower complaints after the

12  board was apprised of that and management was apprised of

13  that.

14          I'm not sure that would constitute a predicate

15  act, but it might be part of -- could conceivably be part

16  of racketeering enterprise allegations if they were to

17  allege properly that those were in an effort to cover up

18  prior illegal conduct, if you take my point.

19          MR. OPRISON:  Yes, sir.

20          THE COURT:  Okay.  I'll be quiet and let you

21  finish.

22          But I think you can discern, Mr. Volkov can

23  discern, I have some concerns about the Complaint and the

24  way the Complaint is alleged.  I would like to see whether

25  or not, if I gave Mr. Volkov another opportunity to amend

1    his Complaint, whether or not we could avoid coming back

2    here on the 12(b)(6) motion.

3         Because if I -- if I give him an opportunity to

4    amend again, I'm not going to give him another opportunity

5    after that to amend again.  So this is going to be -- and,

6    of course, I'm focused on the RICO count, for obvious

7    reasons, because that's the reason we're here.

8         MR. OPRISON:  Your Honor, I think if you look --

9    again, when I talk about the doctrine of futility, I think

10   that would come into play here as to USSSA.

11        Again, in a theoretical world, conceptually these

12   allegations about mail fraud, wire fraud, money laundering,

13   conceptually, categorically would potentially satisfy RICO

14   as predicate acts if they pleaded it sufficiently and

15   pleaded facts sort of linking the conduct to my client,

16   USSSA.  They don't do that.  We don't think they can do

17   that.

18        And, in fact, the way they have pleaded it

19   suggests that they understand they cannot do that because

20   what they've alleged is lack of knowledge, as Your Honor

21   indicated, lack of involvement, no ratification by the

22   board of any of this conduct, really individual conduct,

23   either illegal conduct or tortious conduct, that was

24   directed at undermining USSSA's operations and management,

25   and so USSSA being the victim, USSSA being the party that

1   was actually hurt by this.

2          There's been no indication or suggestion that

3   USSSA benefited in any way from any of this, and certainly

4   there's no -- there's no connection.  What they need to do

5   is connect the dots, and they failed to do that.  They

6   haven't shown proximate cause.  They haven't shown two or

7   more activities, again, that involve USSSA.  It may be

8   applicable as to the individual defendants but certainly

9   not as to the corporate defendants.

10          And so at the end of the day, Your Honor, we

11   believe that whether it's drug possession, which they've

12   also alleged, that wouldn't qualify.

13          Witness tampering, again, that wouldn't qualify

14   either given the facts that they've alleged in this case

15   about witness tampering because ultimately they don't

16   allege any facts that would suggest that that statute that

17   they use would apply to a C4.

18          They cite to Sarbanes Oxley in their arguments.

19   That wouldn't apply.  Right?  That's applicable to that

20   standard and that statute is applicable to for-profit

21   companies or public companies.

22          The mail and wire fraud, again, Your Honor, that

23   is something that when they've alleged the underlying facts

24   they've alleged individual conduct taken and carried out by

25   Mr. Dedonatis and Mr. Hornbacher, not something that USSSA

1    ever ratified and knew about or benefited from.

2         And so for those reasons, we would say that the

3    RICO counts, counts one and two, fail.  The conspiracy

4    certainly can't be pleaded appropriately.  We don't think

5    they can come back and plead that either, Your Honor,

6    because they just don't have the facts.

7         They've demonstrated that they can't suggest that

8    there's a conspiracy.  You can't have a conspiracy between

9    an individual and a corporation anyway, just like you can't

10   have a conspiracy between a parent company and an

11   affiliate.  You have a unified entity doctrine that says

12   you can't allege that and you can't have a conspiracy based

13   on those allegations.

14        And then the Florida Whistleblower Act,

15   Your Honor, again, that was raised by the two plaintiffs.

16   They can't plead that.  The only allegations that they

17   plead are individual conduct.  One, illegal gambling, by

18   Mr. Horrom, who's alleged that Mr. Dedonatis carried out

19   illegal gambling, again, a tort act outside the scope of

20   his employment responsibilities and his capacity as CEO of

21   the company.

22        So all of those together, Your Honor, would

23   suggest that they haven't adequately pleaded RICO for

24   Florida Whistleblower.  They can't do it.

25        They've had an opportunity to do this again,

```
 1    Your Honor.  And I would submit that if they do come back

 2    with any allegations attempting to connect the dots, we

 3    believe they don't have the facts.  Those would be a

 4    fruitless and a futile attempt to do that.

 5            And, Your Honor, we believe that would even sort

 6    of borderline on potential Rule 11.  There's just no facts

 7    to tie those together.  They would have to revamp their

 8    entire Complaint to actually bring about some connection,

 9    some connectivity or causation thread throughout the --

10    from the acts to the individual in the entity.

11            THE COURT:  All right.  Thank you, Mr. Oprison.

12            Ms. Strasser, do you have a dog in this fight with

13    respect to the RICO count?  Do you wish to be heard?

14            MS. STRASSER:  I do, Your Honor.

15            THE COURT:  Okay.

16            MS. STRASSER:  Briefly.

17            THE COURT:  Very briefly, because you all are

18    already over your time, and I want to give Mr. Volkov the

19    time that he's entitled to.

20            MS. STRASSER:  Sure.

21            Good morning, Your Honor.

22            THE COURT:  Good morning.

23            MS. STRASSER:  In addition to what Mr. Oprison

24    already stated, there are no allegations to connect my

25    clients who are also implicated by the RICO counts --
```

```
 1              THE COURT:  Remind me who you represent.

 2              MS. STRASSER:  Wendy Anderson, Richard Fortuna,

 3    and Courtney Ceo.

 4              THE COURT:  Thank you.

 5              MS. STRASSER:  There's no allegations to tie those

 6    individuals to the allegations that are made.  As

 7    Mr. Oprison stated -- I'm not going to reiterate everything

 8    that was said.

 9              But most of the allegations, if not all, are

10    against Mr. Dedonatis and Mr. Hornbacher.  There's no facts

11    alleged in the Complaint to tie or to indicate what each of

12    my clients did as part of that RICO.

13              THE COURT:  Your clients are charged in a

14    conspiracy count as well, correct?

15              MS. STRASSER:  What was that?  I'm sorry.

16              THE COURT:  Your clients are charged in a

17    conspiracy count as well, are they not?

18              MS. STRASSER:  Yes.

19              THE COURT:  Yes.

20              So assuming -- and I understand that your friend

21    on behalf of the corporate entity suggests that it can't be

22    done.  But assuming that Mr. Volkov were able to marshal

23    sufficient facts to allege a RICO violation with respect to

24    the -- was able to allege the racketeering activity and the

25    necessary predicate acts and to be able to show proximate
```

1  cause -- again, it may be a high bar.

2        But assuming that he's able to do that, would it

3  not be sufficient to allege that your client acted in

4  concert with -- your clients acted in concert with one

5  another and with others such as to support a claim for

6  conspiracy to violate a RICO Act?

7        MS. STRASSER:  I'm not sure that's enough.  I

8  still think they're going to have to establish that those

9  actions, the gambling, the wiretapping, et cetera, caused

10  the injury to the plaintiffs.  Right now all we know -- or

11  all that has been alleged is that the injury is that they

12  were terminated wrongfully.

13        So if they can establish and connect an injury

14  that goes to the proximate cause argument between those

15  actions and the damage allegedly occurred by each of the

16  plaintiffs, then presuming that they can do all of that,

17  there may be, you know -- it may survive.  But outside of

18  that, I don't think as it stands they're able to do that.

19        THE COURT:  Okay.  Thank you.

20        MS. STRASSER:  We also move to dismiss the

21  interference claim.  I don't know -- I know Your Honor did

22  mention that earlier.

23        But the crux of the argument is very

24  straightforward.  It's that there was no stranger

25  relationship to the contract.

```
 1              THE COURT:  I have your papers on that.

 2              MS. STRASSER:  Okay.  Okay.  Thank you.

 3              THE COURT:  I'm limiting your argument because I'm

 4    limited in terms of time.  I've read your papers.  I know

 5    there are multiple grounds asserted for dismissing the

 6    Complaint.  So I'm not rejecting those.  I don't have time

 7    to talk about them this morning.

 8              MS. STRASSER:  Understood.  Thank you.

 9              THE COURT:  Thank you.

10    Mr. Volkov.

11              MR. VOLKOV:  Well, good morning, Your Honor.

12              THE COURT:  Good morning.

13              MR. VOLKOV:  Maybe I can short-circuit some of

14    this.

15              And I take it from the Court and from the argument

16    with regard to the Complaint, we would like an opportunity

17    to refile.  But we also -- I was going to bring that up

18    anyways because we have two other counts that are now

19    eligible to be filed which are federal counts for

20    retaliation against a whistleblower.

21              We filed complaints with the Department of Labor.

22    They have 180 days to act.  They didn't act.  And,

23    therefore, we can now add those counts to this case.

24              With regard to the RICO --

25              THE COURT:  Well, let me give you some unsolicited
```

1    advice.

2         I mean, one of the things that I noticed in your

3    responses, of course, is that you acknowledged that you had

4    made claims against some of the individual defendants, for

5    instance, that sprang from contract provisions, that they

6    weren't a party to the contract.  Oral agreements, they

7    weren't party to the oral agreements.  I appreciate the

8    fact that you conceded those points in your response.

9         It troubles me in two instances.  Right?

10        And so one is I don't understand why that didn't

11   -- why did that not get sorted out in the meet and confer,

12   right?  When you all -- presumably you did.

13        I will tell you, since you're all here, I know

14   you've had some discovery disputes with the magistrate

15   judge.  But I want you to hear it from me loud and clear.

16   I take meet and confer very seriously.  And so if you show

17   up here with a complaint that you've not been able to work

18   out, I assume that it is a bona fide, legitimate dispute

19   and that reasonable people meeting together in good faith

20   couldn't sort it out.  That's why I'm here.  I'm happy to

21   resolve those things for you.

22        But, for instance, when there's a motion to

23   dismiss and the response to the motion to dismiss says we

24   punt on these five things, these six things, what it

25   suggests to me is that -- I don't understand why they're in

1    the motion, right?  Because if you all met and conferred

2    about those things, they shouldn't appear in the motion in

3    the first place, right?

4         MR. VOLKOV:  I agree.

5         THE COURT:  So I just want you all to hear me on

6    that, that those things don't go unnoticed by me.

7         So, anyway --

8         MR. VOLKOV:  No, I --

9         THE COURT:  Let me finish my unsolicited advice.

10        MR. VOLKOV:  Oh, yeah.  I definitely need it.

11        THE COURT:  So my unsolicited advice, again, is

12   that when you go back through your Complaint, rather than

13   hundreds of paragraphs of random -- and I don't mean that

14   they're random, but 100 paragraphs of facts.  And then

15   incorporating all of those facts leaving it to the Court

16   and to the defendants to winnow out which of these

17   paragraphs really apply to me, which of these paragraphs

18   really are intended to support the RICO claim.

19        Because as you can tell from my interaction with

20   your friend on the other side, I can't tell looking at the

21   Complaint what conduct you contend constitutes predicate

22   acts to support your RICO count, right?

23        I can't tell whether or not you're alleging that

24   it was money laundering by Mr. Hornbacher and

25   Mr. Dedonatis.  I can't tell whether or not it's illegal

```
 1    gambling.  I can't tell whether it's filing false

 2    information with the I.R.S.  I can't tell whether it's

 3    providing an unlawful loan in violation of Florida law by a

 4    charitable organization.

 5            All of those things are alleged in your Complaint.

 6    Perhaps your point was to try to allege racketeering

 7    activity by including all of those things.  But I can tell

 8    you that's not an effective way to do it.

 9            I mean, if you're going to set out your RICO

10    count, you need to look at the elements of RICO as set

11    forth in Ray and all of the other Eleventh Circuit cases

12    that describe what the elements are, essentially six

13    elements for a RICO count, and show these individuals were

14    involved in racketeering activity; this racketeering

15    activity was based upon at least two -- at least two, maybe

16    more, but at least two predicate offenses.

17            And you suffered business or property damage.

18    Your client suffered business or property damage

19    proximately caused by these predicate acts, at least one of

20    them, and you were injured as a consequence of it.

21            And so it's not that hard to lay it out, but it's

22    very hard to ferret it out when those -- when the facts

23    that you are presumably relying upon are all jumbled up in

24    this introductory part of your Complaint.

25            So my advice to you is don't do it that way.
```

```
 1              MR. VOLKOV:  We take that advice and we'd like

 2   another chance to streamline the case.  That's what we're

 3   hoping to do.

 4              To be honest with you, that was one of the reasons

 5   we dropped a lot of the counts.  We have not been party --

 6   and by the way, I just would like to address, there have

 7   been days and days of discovery disputes, not with us, not

 8   with us.  We've been working very well with USSSA's

 9   counsel, and we have a fine relationship.  They're

10   fighting.  And now we have a lawsuit brought by one of the

11   defendants against --

12              THE COURT:  I mean, I know all about that.

13              MR. VOLKOV:  I mean, it's just going --

14              THE COURT:  I'm not the presiding judge over the

15   discovery disputes, but, trust me, I know what's going on.

16   We talk, believe it or not.

17              MR. VOLKOV:  Yeah, no, I'm sure you do.  And I

18   could hear the complaints.

19              But, nonetheless, I do want to address, though,

20   just a couple of points.  And I take it -- and I hear the

21   Court loud and clear.  And what's going to come back is

22   going to be something very tailored in the sense of

23   focused.

24              But I want to make a couple points that I think

25   the law -- in terms of how to sort of look at this issue.
```

1          Number one is to prove standing, all we have to

2    show is injury from one predicate act, not all of them.

3    One predicate act.  That gives us standing.  The case law

4    is very clear on that.

5          And the predicate act that we allege harm and

6    standing is that our clients were fired for retaliation

7    reasons, to shut them up.

8          And so our racketeering act --

9          THE COURT:  So what is the predicate act -- what

10   is the predicate act that injured your clients?

11         MR. VOLKOV:  18 U.S.C. 1512.

12         THE COURT:  Well, retaliation, whistleblower

13   retaliation --

14         MR. VOLKOV:  Hindering -- well --

15         THE COURT:  But how would one know looking at your

16   Complaint that that is a predicate act upon which you --

17         MR. VOLKOV:  We allege that --

18         THE COURT:  We can't both talk at the same time --

19         MR. VOLKOV:  Oh, I'm sorry.

20         THE COURT:  -- because the court reporter can't

21   keep up with it.  All right?

22         So how would one know looking at your Complaint

23   that that is one of the predicate acts that you rely upon

24   to support your RICO count?

25         MR. VOLKOV:  Well, we allege in the Complaint and

1    we said 1512, 1513, and we also -- with regard to standing,

2    we didn't specifically allege one or two acts to provide

3    the standing and the injury.  What we did say is that the

4    pattern of racketeering activity involved 1512, 1513, 1341,

5    1346, and keep going.

6         Now, what I'm saying is with regard to the

7    standing issue, once we prove that injury, they were fired,

8    they were retaliated against for no good reason other than

9    to hinder or obstruct their ability to provide information

10   to law enforcement.  And that was the motivation for it.

11        Now we get to the second question.  What was the

12   pattern of racketeering activity?  And who were the -- and

13   are they sufficiently related and did they occur over a

14   ten-year period or were they -- in terms of the acts.

15        The point that we're trying to make is we have a

16   series of racketeering acts and that doesn't mean that all

17   the damages that we're entitled to are simply going to be

18   just related to the one count that gave us standing or the

19   one predicate.

20        What we're claiming is that this RICO, this

21   enterprise, was taken over by various individuals.  USSSA

22   was taken over by various individuals and engaged in

23   racketeering behavior.

24        Now, the pattern of racketeering activity -- and

25   we'll be much clearer about the predicates and what's being

1    alleged with regard to each of them.

2         I also think that we need to -- we probably will

3    clarify what the enterprise is for purposes of the

4    racketeering law in the sense that this was an association,

5    in fact, enterprise, involving the individuals and USSSA.

6    We'll probably -- we'd like an opportunity to clarify that.

7         With regard to the actions, the corporate actions

8    and the individual actions, you know, we allege there was

9    certain issues that the board was not aware of.  That's

10   true.  But there was certain issues that the board was

11   involved in all the way.

12        THE COURT:  So, and, again, because we're running

13   out of time -- and, again, I apologize.  I don't have

14   enough time to cover all the waterfront here.

15        But therein lies part of the problem.  Right?  You

16   need to allege distinctly the conduct that you're asserting

17   that USSSA is responsible for and make it clear, from the

18   Complaint, conduct that was committed that you contend was

19   part of the racketeering enterprise by the other defendants

20   that USSSA had no complicity with.  Right?

21        Because in some respects they were victimized by

22   the conduct as well, at least based on what you allege in

23   your Complaint.  So you need to give some clarity about

24   that.

25        MR. VOLKOV:  Okay.  And we'll be happy to do that,

```
 1   Your Honor.

 2         THE COURT:  So the point is --

 3         MR. VOLKOV:  I think --

 4         THE COURT:  -- at least as I understand the

 5   overarching goal of your Complaint, is to show that the

 6   corporate entity knew or should have known, they either had

 7   actual knowledge or were willfully blind to the illegal or

 8   illicit conduct of some of their management people without

 9   going into the details about who did what to whom.

10         And that as a consequence of that, they were

11   participating in a racketeering enterprise which caused

12   your clients harm, and that harm has to be proximately

13   caused by at least one of the predicate acts that you

14   assert in your Complaint.

15         I think that's the law, in essence.

16         MR. VOLKOV:  Right.  Right.

17         THE COURT:  So I'm going to give you an

18   opportunity to amend your Complaint, Mr. Volkov.

19         MR. VOLKOV:  Thank you.

20         THE COURT:  And so what I plan to do is just enter

21   a short tombstone order.  I'm not going to try to address

22   all the items that are in the motion to dismiss in the

23   interest of efficiency and time.

24         But I do want you to make sure that you look at

25   the motion and try to address what your friends on the
```

```
1   other side contend are deficiencies in the motion.  I'm not

2   asking you to agree with it.  But I want you to give it

3   your best effort because if we come back here again on a

4   12(b)(6) motion, I won't be giving you leave to amend

5   again.

6              MR. VOLKOV:  Okay.

7              THE COURT:  I want that to be understood.

8              So I'm going to grant the motion to dismiss.  I'm

9   going to grant the motions that were -- all three motions

10  to dismiss.  Give you leave to refile your Complaint within

11  14 days.  Clean up the things that you've already

12  acknowledged need to be cleaned up with respect to the

13  contract claims that don't have any -- you know, where the

14  defendants don't have any relationship to either the oral

15  or the written agreements.

16             Make sure you provide clarity with respect to

17  especially the RICO count because that's obviously what

18  brings you here to federal court.

19             And then I'll give the defendants 14 days to file

20  a response, either an Answer or a motion to dismiss the

21  Complaint.  Hopefully an Answer.  Hopefully we'll get to

22  that point.

23             MR. VOLKOV:  Okay.  That sounds great.  We

24  appreciate the opportunity.

25             THE COURT:  I thank you all for coming in this
```

1    morning.  I'm sorry I don't have enough time to hear from

2    you on all of the issues that you had.  But hopefully that

3    will move us forward.

4         MR. VOLKOV:  Just to clarify, the motion, the

5    granting of the motion to dismiss would be with respect to

6    the two RICO counts, correct?

7         THE COURT:  I'm going to grant the motion to

8    dismiss in their entirety and give you leave --

9         MR. VOLKOV:  Oh, to refile.

10        THE COURT:  -- to replead, right.

11        MR. VOLKOV:  Okay.

12        THE COURT:  Because, as I said, there were a lot

13   of things that were raised in the motion that I didn't have

14   an opportunity to address here.

15        I'm not going to -- I'm not going to -- if I have

16   to issue an order that addresses each one of those things,

17   it's going to take me time to do it.  I want to keep the

18   case moving forward.

19        I'm going to grant the motions to dismiss.  I'm

20   going to give you 14 days to refile.  I'm encouraging you

21   to review the motions to dismiss and address the points

22   that are raised in the motion to the extent that you can or

23   that you think they're valid.  I'm not asking you to agree

24   with them.

25        But the point is, if we come back here again and

1    those continue to be problems that I think are legitimate

2    problems, then we're going to be at the end of the pleading

3    stage.  Fair enough?

4            MR. VOLKOV:  Yes, that's fair.

5            Thank you, Your Honor.

6            THE COURT:  Okay.  Because I want to try to move

7    the case forward.

8            MR. VOLKOV:  I agree.

9            THE COURT:  And I'm assuming that's what you all

10   want as well.

11           MR. VOLKOV:  No, we want to move it forward.

12   We've been trying to move it forward.  And we appreciate

13   that.

14           THE COURT:  Okay.  I know there have been some

15   side skirmishes here.  So I'm not oblivious to that.

16           All right.  Thank you all for coming in.

17           MR. VOLKOV:  Thank you, Your Honor.

18           MS. STRASSER:  Thank you, Your Honor.

19           MR. OPRISON:  Thank you, Your Honor.

20           THE COURT:  I'm just going to remain on the bench,

21   and we'll call the next case.  I don't mean to be rushing

22   you off.  I just have a busy morning.

23           (Proceedings adjourned at 9:34 a.m.)

24                        * * * * *

25

1          **C E R T I F I C A T E**

2

3          I certify that the foregoing is a correct

4    transcript from the record of proceedings in the

5    above-entitled matter.

6

7    April 24, 2024

8

9    ____s\__Amie_R._First_____

10   Amie R. First, RDR, CRR, CRC, CPE
     Federal Official Court Reporter
11   United States District Court
     Middle District of Florida

12

13

14

15

16

17

18

19

20

21

22

23

24

25