## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

**BRIAN WEGMAN, et al.**
    **Plaintiffs,**

**v.**                                  Case No. 6:23-cv-1637-RBD-RMN

**THE UNITED STATES SPECIALTY**
**SPORTS ASSOCIATION, INC., et al.,**
    **Defendants.**

_____

## THE UNITED STATES SPECIALTY SPORTS ASSOCIATION'S MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT WITH PREJUDICE AND INCORPORATED MEMORANDUM OF LAW

Defendant The United States Specialty Sports Association, Inc. ("USSSA"), pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), moves to dismiss Plaintiffs' Second Amended Complaint ("SAC") and, in support thereof, states as follows:

## INTRODUCTION

Plaintiffs' third attempt at pleading claims against USSSA fares no better than their first two attempts. The SAC lays bare the reality that Plaintiffs simply were not injured by the alleged misconduct, fail to state a single claim against USSSA, and are needlessly escalating the costs of litigation in order to injure USSSA. Plaintiffs simply cannot transform a baseless employment dispute stemming from their substandard performance into a federal RICO and whistleblower action.[1]

_____

[1] The SAC contains improper legal arguments and includes seventy footnotes, almost all of which cite to legal authority, in an improper attempt to bolster their claims. *Blount v. Nugen*, 2016 WL 8793749, at *2 (M.D. Fla. Nov. 15, 2016) ("Citations of case law and statutes are not appropriate

As before, Plaintiffs sue USSSA for actions purportedly taken by Defendants Donald DeDonatis III, Richard Fortuna, Wendy Anderson, Courtney Ceo, and Jacob Hornbacher (the "Individual Defendants"). The claims relate to termination of Horrom's at-will employment in February 2023, and termination of Wegman for cause in July 2023. Plaintiffs recount a years-long drama packed with inflammatory and sensational allegations—the vast majority of which are entirely irrelevant to the claims and none of which were committed by or on behalf of USSSA. This Court has twice dismissed Plaintiffs' claims, in their entirety. It should now dismiss the SAC with prejudice and award fees to USSSA for having to defend baseless claims.[2]

## **BACKGROUND**

USSSA is the largest multi-sport athletic organization in the United States. It sanctions recreational and competitive sports programs. (SAC ¶¶ 9–10.) DeDonatis was USSSA's CEO; Fortuna serves as Chairman of the Board; Anderson serves as outside General Counsel and Ethics/Compliance Officer; Ceo was VP of Brand Management and Business Strategy; and Hornbacher was National Program Director and State Director of Michigan. (*Id.* ¶ 11–15.)

Wegman was USSSA's Chief Operating Officer until his termination for

---

in the complaint."). A court may properly dismiss a complaint that rests on "legal conclusions masquerading as facts." *Infante v. Bank of Am. Corp.*, 468 F. App'x 918, 919 (11th Cir. 2012).

[2] Indeed, this Court twice stated at the April 3, 2024 hearing that it would not permit Plaintiffs to file a third amended complaint. (ECF No. 159, Tr. at 30: 3–5, 15: 3–5.) This Court should, therefore, dismiss the SAC *with* prejudice.

cause. Horrom was USSSA's VP of Technology and Advanced Media until his termination for cause. They allege unlawful termination as part of a practice to prevent USSSA's employees from disclosing misconduct of the Individual Defendants. Horrom specifically alleges that USSSA, DeDonatis, Fortuna, and Anderson "acted in concert to summarily terminate" him based on an unidentified "manufactured pretext" after he submitted two anonymous complaints alleging that DeDonatis engaged in illegal gambling. (*Id.* ¶¶ 85–89.)

Wegman did not write a complaint; rather, he alleges that in February 2023, Anderson "confirmed" his formal whistleblower status. (*Id.* ¶ 90.) He vaguely contends that "at various points" he raised concerns with "Anderson and others at USSSA" about "[1] DeDonatis' improper and illicit relationship with [] Ceo and their improper use of USSSA funds; [2] DeDonatis and Hornbacher's illegal bookmaking activities and their improper and illegal misuse and diversion of USSSA funds; [3] DeDonatis' use of illegal surveillance equipment; as well as other [4] improper and illegal activities conducted by [] Fortuna and other officers and employees at USSSA." (*Id.* (footnotes omitted).) Wegman further alleges that he complained about "improper booking of revenues and expenses and illegal diversion of USSSA funds for personal purposes" to an unidentified person at an unidentified time. (*Id.* ¶ 18.) Noticeably absent from these allegations are (1) when each specific concern was raised, (2) to whom the specific concern was raised and whether that

person had authority to act on behalf of USSSA, and (3) the content of each specific concern. (*Id.* ¶¶ 90–93.) Neither Horrom nor Wegman allege any conduct plausibly committed by, on behalf of, or at the direction of USSSA.

The Court dismissed, *sua sponte*, Plaintiffs' original complaint as a shotgun pleading. The Court then granted the Defendants' respective motions to dismiss and dismissed Plaintiffs' First Amended Complaint ("FAC") in its entirety without prejudice, focusing on the RICO counts, Plaintiffs' failure to plead USSSA's misconduct, and how that misconduct constituted any predicate act(s). (ECF No. 159 at 27:22, 28:15–23.) As before, Plaintiffs' claims against USSSA are *not* based on conduct at the direction of or for the benefit of USSSA but based on misconduct by certain Individual Defendants acting in their individual capacities.[3] Indeed, the SAC makes clear that USSSA was the *victim* of the alleged misconduct, not a participant—which the Court recognized was an issue with the FAC. (*Id.* at 28:21–23.) As set forth below, each claim must be dismissed with prejudice as to USSSA.

---

[3] The alleged misconduct is as follows: (1) two since-repaid Board loans to DeDonatis (SAC ¶¶ 19(1), 41–46); (2) DeDonatis and Ceo's relationship, its effect on the workplace, and their theft of USSSA funds (*id.* ¶¶ 19(2)); (3) diversion of revenue from USSSA events to benefit DeDonatis, Hornbacher, and other unidentified individuals (*id.* ¶¶ 19(3), 51–60); (4) DeDonatis's manipulation of USSSA's financials (*id.* ¶¶ 19(4), 50); (5) filing of false and misleading tax forms (*id.* ¶¶ 19(5), 47–49); (6) illegal bookmaking/sports gambling by DeDonatis and Hornbacher in which they allegedly used USSSA's equipment and facilities to operate (*id.* ¶¶ 19(7), 64–72); and (7) retaliation against, or other attempts to silence, Plaintiffs, past employees, and Board members who attempted to expose certain Individual Defendants' misconduct (*id.* ¶¶ 19(8), 73–82). While Plaintiffs allege in a single sentence that the misconduct included "acceptance of illegal kickback payments and financial payments/sharing of revenues from state and local [USSSA] representatives," nowhere in the SAC do they expound upon this conclusory allegation, provide any further detail, or allege which Defendant(s) committed this alleged misconduct. (*Id.* ¶ 19(6).)

# ARGUMENT

## I.     Plaintiffs Fail to Allege Standing Regarding the Alleged Misconduct

To have standing and survive dismissal under Rule 12(b)(1), a plaintiff must allege plausible facts: (1) that it has suffered an injury in fact, which is both (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection documenting that his injury is fairly traceable to the defendant's challenged conduct; and (3) that the injury will likely be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). "[P]articularized . . . mean[s] that the injury must affect the plaintiff in a personal and individual way." *Id.* at 560 n.1.

To have standing to pursue a RICO claim, a plaintiff must show "(1) the requisite injury to 'business or property,' and (2) that such injury was 'by reason of' the substantive RICO violation." *Ray v. Spirit Airlines, Inc*., 836 F.3d 1340, 1348 (11th Cir. 2016) (citing 18 U.S.C. § 1964(c)). RICO also imposes a causation requirement: "[A] civil RICO plaintiff must show that the racketeering activity caused him to suffer an injury" and was the "proximate cause" of the injury. *Beck v. Prupis*, 162 F.3d 1090, 1095–96, 1099 (11th Cir. 1998), *aff'd* 529 U.S. 494 (2000). Further, while a whistleblower may have standing as to actions complained of in a *whistleblower* complaint, that whistleblower standing would not extend to conduct raised for the first time in a *civil* complaint. *E.g.*, *Thompson v. Target Corp.*, 861 F. App'x 325, 328 n.1 (11th Cir. 2021) (plaintiff had standing because termination

caused by objecting to specific illegal action of his employer). Plaintiffs must have been injured by reason of their purported whistleblower complaints. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (injuries must be "fairly traceable to the challenged conduct of the defendant").

Once again, Plaintiffs lack standing to complain of the vast majority of conduct alleged. Nowhere do they allege their respective injuries (termination) were caused by each type of alleged misconduct. *See, e.g.*, *O'Malley v. O'Neill*, 887 F.2d 1557, 1562–63 (11th Cir. 1989) (RICO plaintiffs lacked standing where they failed to show that fraud scheme was the reason they were terminated). Their injuries are neither particularized with respect to most of the alleged improper or illegal acts nor causally connected to USSSA's conduct. *Lujan*, 504 U.S. at 560–61.

Wegman lacks standing to complain of any type of alleged misconduct. Although Wegman alleges he obtained formal whistleblower status and met with Anderson, these allegations are *intentionally vague*, despite three attempts to properly plead them. (*Id.* ¶¶ 90–93.) Wegman does not allege what exactly he discussed with Anderson or whether he specifically objected at that time to any specific alleged misconduct. (*Id.*) It is therefore impossible to discern whether Wegman was terminated for raising the specific misconduct alleged in the SAC to anyone with authority to act on behalf of USSSA. Without more, this Court should dismiss Counts 1, 2, 3, 4, and 12 as to Wegman for lack of standing.

Horrom's two alleged whistleblower complaints related *only* to allegations of "illegal offshore gambling" activities. (*Id.* ¶¶ 85–89.) The SAC is devoid of any connection between Horrom and all other "non-gambling" misconduct alleged. (*See supra* n.1). Horrom could not have been injured by the other types of alleged improper or illegal activities, and therefore lacks standing to complain of these other activities. When evaluating Horrom's claims, this Court should disregard each type of alleged misconduct except for gambling/bookmaking and dismiss accordingly.

## II.    Plaintiffs Fail to Plead Sufficient Facts to Support Each Claim

### A. Counts 1 and 2: Plaintiffs' RICO Claims Fail

Under 18 U.S.C. § 1962(c), Plaintiffs must establish that USSSA: "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two racketeering," or predicate, "acts." *Ray*, 836 F.3d at 1348. Conspiracy under § 1962(d) requires existence of a conspiracy and the commission of an overt act in furtherance of the conspiracy that causes injury to the plaintiff. *Bivens Gardens Off. Bldg., Inc. v. Barnett Bank of Fla., Inc.*, 906 F.2d 1546, 1550 n.7 (11th Cir. 1990). Conspiracy to commit various racketeering activities leading to an employee's firing goes beyond what Congress intended under RICO and, thus, does not amount to a RICO conspiracy. *Beck*, 162 F.3d at 1098–99; *Morast v. Lance*, 807 F.2d 926, 933 (11th Cir. 1987). Both RICO counts fail for lack of standing. Plaintiffs also fail to identify USSSA's alleged operation or management

of the RICO enterprise. Even if Plaintiffs had standing, the RICO counts fail because the alleged predicate acts do not plead a pattern of racketeering activity. Nor are sufficient facts alleged to establish the existence of a RICO "enterprise."

### i. The Alleged Predicate Acts Fail

"To prove any RICO violation, a plaintiff must prove the existence of a 'pattern of racketeering activity.'" *Beck*, 162 F.3d at 1095 (quoting 18 U.S.C. § 1962). "This essential requirement is met by factual allegations concerning three elements: (1) the defendant committed two or more predicate acts within a ten-year time span . . . ; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrate criminal conduct of a *continuing* nature." *Diamond Resorts Int'l, Inc. v. Aaronson*, 2018 WL 735627, at *4 (M.D. Fla. Jan. 26, 2018) (Dalton, J.) (emphasis in original) (quotation omitted). Plaintiffs must "allege facts that support each statutory element of a violation of one of the state or federal laws described in 18 U.S.C. § 1961(1)." *Raney v. Allstate Ins.*, 370 F.3d 1086, 1087 (11th Cir. 2004). Here, Plaintiffs falsely allege that USSSA engaged in three categories of racketeering activity, made up of twenty statutory predicates, none of which are supported by allegations in the SAC. (SAC ¶¶ 39–94.)

***First***, Plaintiffs allege that USSSA engaged in mail, wire, and bank fraud in violation of 18 U.S.C. §§ 1341, 1343, and 1344 because: (1) in 2020, USSSA did not "responsibly consider[]" former Board members' allegations of DeDonatis'

misconduct; and (2) in 2016, USSSA issued two loans to DeDonatis, which have since been fully repaid. (SAC ¶¶ 39–46.) Plaintiffs further allege that USSSA engaged in mail and wire fraud because: (1) USSSA, through DeDonatis and Fortuna, submitted erroneous Form 990 tax filings; (2) "DeDonatis and Hornbacher diverted USSSA revenues" from various events; (3) Fortuna and an unnamed Board member diverted USSSA funds through the creation of "USSSA Midwest"; and (4) USSSA, along with Fortuna, DeDonatis, and unnamed others, somehow "diverted" its own "significant revenues" related to national all-state events. (SAC ¶¶ 47–63.) Even if true, these predicate acts fail as to USSSA.

Plaintiffs lack standing regarding their fraud allegations because they identify no injury to themselves caused by any such conduct. (*Supra* Section I.) In fact, Plaintiffs do not allege that they were impacted in any way by these fraud allegations. "A plaintiff in a civil RICO action, when relying on the predicate acts of mail fraud, must show proof of loss of tangible property resulting from the defendant's conduct." *O'Malley*, 887 F.2d at 1561–62 (plaintiffs lacked standing where they failed to plead they were terminated due to, or that they were victims or the targets of, mail fraud). The same holds true for wire fraud. *Pelletier v. Zweifel*, 921 F.2d 1465, 1499–500 (11th Cir. 1991). And individuals do not have RICO standing under the bank fraud statute; only financial institutions do. *E.g.*, *Ward v. Nierlich*, 617 F.

Supp. 2d 1226, 1234 (S.D. Fla. 2008); *Mason v. Midland Funding LLC*, 2017 LEXIS

216825, *23 (N.D. Ga. July 27, 2017). No such injury has been, nor can be, alleged.

In addition, RICO predicates based on fraud must comply with Rule 9(b),

which Plaintiffs fail to satisfy. *See, e.g.*, *Ambrosia Coal & Constr. Co. v. Pages

Morales*, 482 F.3d 1309, 1316 (11th Cir. 2007). RICO claims fail to satisfy Rule

9(b) where they are "devoid of specific allegations with respect to each defendant"

and "the plaintiffs lump[] together all of the defendants in their allegations of fraud."

*Id.* "[I]n a case involving multiple defendants . . . the complaint should inform ***each

defendant** of the nature of his alleged participation in the fraud*." *Id.* (emphasis

added); *see also Fines Enters. v. Ruark*, 2017 WL 1322455, at *3 (M.D. Fla. Apr. 7,

2017) (Dalton, J.) (dismissing RICO claims under Rule 9(b)). Here, Plaintiffs fail to

allege USSSA's purported participation in the fraud; rather, it is clear from the face

of the SAC that USSSA was the *victim* of any such fraud, not a participant.[4]

***Second***, Plaintiffs allege that USSSA engaged in illegal bookmaking, sports

gambling, and money laundering, in violation of 18 U.S.C. §§ 1084, 1955, 1956,

and 1957. (SAC ¶¶ 39, 64–72.) At the outset, Plaintiffs fail to plead how they were

---

[4] Plaintiffs also fail to plead the elements to establish liability under the federal mail and wire fraud statutes: "(1) that [USSSA] knowingly devised or participated in a scheme to defraud *plaintiffs*, (2) that [USSSA] did so willingly with an intent to defraud, and (3) that [USSSA] used the U.S. mails or the interstate wires for the purpose of executing the scheme." *Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311–12 (11th Cir. 2000) (emphasis added). Because, *inter alia*, Plaintiffs were not defrauded, they fail to state a viable claim based on mail and wire fraud predicate acts.

injured by any illegal gambling, which is fatal to this claim.[5] *See supra* Section I; *Sikes v. Teleline, Inc.*, 281 F.3d 1350, 1367 (11th Cir. 2002) (each individual plaintiff was required to prove injury by reason of the illegal gambling), *overruled in part on other grounds by Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, 646 (2008); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998); *Adell v. Macon Cnty. Greyhound Park, Inc*., 785 F. Supp. 2d 1226, 1234–41 (M.D. Ala. 2011).

Plaintiffs fail to plead a violation of 18 U.S.C. § 1084, which imposes liability on "[w]hoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information." § 1084(a). There are no allegations here that USSSA, the entity, "engaged in the business of betting or wagering," which requires a defendant to be engaged in bookmaking. *Id.*; *United States v. Anderson*, 542 F.2d 428, 436 (7th Cir. 1976). Nor is there any allegation that DeDonatis and/or Hornbacher operated an illegal bookmaking operation on behalf of or for the benefit of USSSA, only that they may have done so covertly on USSSA premises and did so as a *side operation* as "bookies," all of which effectively pleads Plaintiffs out of a viable RICO claim against USSSA. *Anderson*, 542 F.2d at 436 (where defendant regularly accepted friends' bets, he did not engage in "business" of bookmaking).

---

[5] Indeed, the number of civil RICO gambling cases are few and far between. USSSA has not uncovered a single civil RICO case predicated on 18 U.S.C. §§ 1084 or 1955 within the Eleventh Circuit that had a favorable outcome for the civil RICO plaintiff.

Plaintiffs allege that USSSA somehow aided and abetted gambling under § 1084 because: (1) DeDonatis and Hornbacher used "USSSA's offices, facilities, and assets, including USSSA telephones, mobile phones, computers, and other equipment" in conducting their gambling operation (SAC ¶ 67); and (2) DeDonatis once asked a USSSA employee to retrieve cash from an unidentified individual. (*Id.* ¶ 39.) Plaintiffs wholly fail to demonstrate how a non-profit can be guilty of aiding and abetting bad actors who unilaterally utilize the non-profit's resources for alleged illicit gain. Aiding and abetting any federal crime requires the defendant to "assist the perpetrator of the crime while sharing in the requisite criminal intent"—the defendant must have "associated himself with a criminal venture, participated in it as something he wished to bring about and sought by his actions to make it succeed." *United States v. Schwartz*, 666 F.2d 461, 463 (11th Cir. 1982); 18 U.S.C. § 2; *see also In re Mastercard Int'l Internet Gambling Litig.*, 313 F.3d 257, 260 (5th Cir. 2002) (corporate defendant did not aid and abet gambling in RICO case). DeDonatis and Hornbacher's unilateral use of USSSA's resources—which is not alleged to have been known by or ratified by USSSA's Board—does not amount to USSSA's criminal intent to aid and abet DeDonatis and Hornbacher's alleged gambling.

Plaintiffs also fail to satisfy the interstate commerce requirement by failing to identify the "specific transmissions . . . including their respective dates of transmission and places of origin and destination." *United States v. Lombardo*, 639

F. Supp. 2d 1271, 1276 (D. Utah 2007). Instead of pleading a violation of § 1084
against USSSA with any specificity, Plaintiffs allege only that DeDonatis and
Hornbacher ran this illegal operation through an offshore website,
AnySport247.com, (SAC ¶¶ 68–71), unrelated to USSSA in any way. This alleged
predicate act therefore fails.

Plaintiffs also fail to plead the existence of an "illegal gambling business"
under 18 U.S.C. § 1955, defined as one that: (1) operates in violation of state law;
(2) "involves five or more persons who conduct, finance, manage, supervise, direct,
or own all or part of such business"; ***and*** (3) has been in "substantially continuous
operation" for more than 30 days or has gross revenue of $2,000 in one day. *See id.*
§ 1955(b). Plaintiffs allege that only two individuals—DeDonatis and Hornbacher—
were involved in an illegal gambling business.[6] (SAC ¶¶ 68–72.) Plaintiffs thus fail
to satisfy the second prong. Plaintiffs moreover fail to plead that USSSA
"conduct[ed], finance[d], manage[d], supervise[d], direct[ed], or own[ed]" an illegal
gambling business. *See* § 1955(a).

Finally, with respect to alleged money laundering under 18 U.S.C. §§ 1956,

---

[6] As to the third element, Plaintiffs fail to allege that DeDonatis's and Hornbacher's gambling
operation was "*substantially continuous*" for over 30 days, which is fatal to the claim. *See United
States v. Scavo*, 593 F.2d 837, 841 (8th Cir. 1979). The term "substantially continuous" requires
that the gambling business is "operated upon a schedule of regularity sufficient to take it out of the
casual non-business category." *United States v. Nerone*, 563 F.2d 836, 844 (7th Cir. 1977)
(gambling casino operations were substantially continuous by "being open for business almost
every weekend"). Plaintiffs fail to allege that USSSA operated a systematic and continuous
gambling business.

1957, Plaintiffs do not allege that any Individual Defendant used USSSA (or any other entity) to collect or launder gambling monies—a required element to state a claim for violation of § 1956. *See, e.g.*, *United States v. Miller*, 22 F.3d 1075, 1078 (11th Cir. 1994) (affirming convictions under §§ 1084, 1955, and 1956 because the "bookie" defendant used his business to collect gambling proceeds). Further, Plaintiffs fail to allege that USSSA or any other Defendant engaged in a transaction over $10,000 using money from specified unlawful activity, as required by § 1957. *See, e.g.*, *United States v. Xiulu Ruan*, 56 F.4th 1291, 1301 (11th Cir. 2023). Plaintiffs therefore fail to plead that USSSA violated any money laundering statute.

*Third*, Plaintiffs allege that USSSA engaged in witness, victim, or informant tampering and retaliation in violation of 18 U.S.C. §§ 1512, 1513, 1952 because: (1) non-party individuals, including "Employee-2" and "Independent Contractor-1," were terminated for their participation in the Board Authors' complaint (SAC ¶¶ 39, 73–82); and (2) Plaintiffs were terminated after blowing the whistle (*id.* ¶¶ 83–94). This, too, fails. First, it is patently frivolous for Plaintiffs to attempt to establish a RICO predicate based not on their own injuries, but on alleged injuries to non-parties. Second, it is settled law in the Eleventh Circuit that alleged retaliatory discharge for whistleblowing is not a ground for a RICO claim. *Beck*, 162 F.3d at 1099 ("[W]e believe that such a [whistleblower] claim goes further than what

Congress has authorized under RICO."); *Morast*, 807 F.2d at 933; *O'Malley*, 887 F.2d at 1561–62.[7]

### ii. Plaintiffs Allege No Facts to Establish a RICO Enterprise

Even if Plaintiffs pleaded facts about two potentially viable predicate acts, which they decidedly have not, Counts 1 and 2 fail to sufficiently allege the existence of an "enterprise." To plead a RICO enterprise, Plaintiffs must allege a "common purpose shared by [USSSA] and the other members of the alleged enterprise." *Ray*, 836 F.3d at 1352. "An abstract common purpose, such as a generally shared interest in making money, will not suffice." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). "Rather, where the participants' ultimate purpose is to make money for themselves, a RICO plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct." *Id.* at 1211–12 (affirming dismissal where corporate defendants were not "collectively trying to make money . . . by fraud"). Here, Plaintiffs allege no common purpose regarding USSSA. Rather, the SAC, like all prior complaints, targets *only* actions by one or more Individual Defendants that purportedly constitute the "common purpose." (SAC ¶ 37.) There is no allegation, other than undifferentiated

---

[7] Further, § 1513(e) is inapplicable because (1) it applies only to public companies, not to non-profits, as here, *see* SOX, Public Law 107-204, 116 Stat. 745, 810; and (2) Plaintiffs do not allege they reported a federal crime to a law enforcement officer, which is required under the statute. *See also* ECF No. 113 at 2–4.

conclusory allegations, that USSSA did anything to enrich itself through these actions. Even the purported fraud is not alleged to have inured to the benefit of USSSA; on the contrary, USSSA was, on these facts, a *victim* of any alleged fraud, not a participant. There is, therefore, no RICO enterprise involving USSSA. For all of the foregoing reasons, Counts 1 and 2 must be dismissed.

### B. Count 3: Wegman's Anti-Money Laundering Act ("AMLA") Claim Fails

Title 31 U.S.C. § 5323 was created in the AMLA of 2021 as an amendment to the Bank Secrecy Act. Pub. L. No. 116-283, §§ 6001–6511. Under § 5323(g), "no financial institution" may retaliate against a whistleblower for reporting violations of anti-money laundering crimes to a person with supervisory authority over the whistleblower, or other employee who has the authority to investigate, discover, or terminate misconduct. *Chaleplis v. Karloutsos*, 2023 WL 2976277, at *3 (E.D. Pa. Apr. 18, 2023); §§ 5311(2), 5312(2). The alleged whistleblower must file a complaint with the Department of Labor ("DOL"). § 5323(g)(2), (3).

Wegman's AMLA claim fails for at least three reasons. As a threshold matter, USSSA is not a financial institution subject to the statute. 31 U.S.C. §§ 5311(2), 5312(2); Pub. L. No. 116-283, § 6002. Additionally, Wegman does not allege that he complained to USSSA about money laundering and was terminated as a result

thereof,[8] (SAC ¶¶ 90–93), or that he reported USSSA's alleged money laundering violations to the DOL, (*id.* ¶¶ 98–104). § 5323(g)(2), (3) (citing 49 U.S.C. § 42121(b) (complainant must allege that employer violated applicable law arising under the specific statute)). Accordingly, Count 3 fails and must be dismissed.

## C. Count 4: Wegman's Taxpayer First Act ("TFA") Claim Fails

The TFA, 26 U.S.C. § 7623(d), makes it unlawful to discharge an employee in reprisal for providing information regarding "any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws" to "any other person working for the employer who has the authority to investigate, discover, or terminate misconduct." The alleged whistleblower must file a complaint with the DOL. § 7623(d)(2). Wegman does not allege he reported USSSA's alleged tax violations to the DOL. (*Id.* ¶¶ 105–11.) § 7623(d)(2)(B) (citing 49 U.S.C. § 42121(b)). Moreover, Wegman alleges he reported "other financial improprieties that indicated violations of federal tax laws and underpayment of taxes" to Anderson, DeDonatis, "and others." (SAC ¶ 107.) This allegation is entirely devoid of factual support—Wegman does not allege that he reasonably believed anything violated tax laws, only that tax laws were "implicated" by his intentionally vague

---

[8] Wegman alleges in paragraph 100 that he "reported information related to the illegal activities of *DeDonatis and Hornbacher*, including violations of 18 U.S.C. §§ 1956, 1957" to Anderson. This allegation regarding reports of money laundering is conspicuously absent from his more detailed alleged whistleblower complaints in paragraphs 90–93 of the SAC. This conclusory pleading lacks sufficient factual information. More importantly, Wegman does not allege that USSSA knowingly laundered money or ratified DeDonatis and Hornbacher's conduct.

allegations. Nor does he identify to whom he complained regarding the alleged tax law violations, whether that person had authority to act on behalf of USSSA, and what exactly the nature of those complaints were. Count 4, therefore, fails.

### D. Counts 12 and 13: Plaintiffs' FWA (Retaliation) Claims Fail

To sustain a claim for FWA retaliation under Fla. Stat. § 448.102(3), Plaintiffs must plead that they: (1) engaged in statutorily protected expression; (2) suffered an adverse employment action; and (3) the adverse employment action was causally linked to the statutorily protected activity. *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 950 (11th Cir. 2000). A "statutorily protected expression" requires Plaintiffs to plead that they "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." § 448.102(3). That is, "an actual violation of law is required." *Kearns v. Farmer Acquisition Co*., 157 So. 3d 458, 463 (Fla. 2d DCA 2015).

Here, neither Plaintiff objected to an activity, policy, or practice of *USSSA*. *See* § 448.102(3). Under the FWA, an "employer" is defined as a "corporation, or association that employs ten or more persons." § 448.101(3). Horrom's complaints identified activities of an *individual* that was *not* an employer, specifically, "DeDonatis III['s] active involvement in said illegal [gambling] activities," and in no way implicated that USSSA was involved in such illegal gambling. (SAC ¶ 86, 174.) Wegman, too, fails to articulate the precise basis for his alleged whistleblower

status or how such conduct was attributable to USSSA. (*Id.* ¶ 90–93, 170.) *Sussan v. Nova Se. Univ.*, 723 So. 2d 933, 933–34 (Fla. 4th DCA 1999) (affirming dismissal because plaintiff "did not allege that he was terminated for objecting to illegal activity of either the University or anyone acting within the legitimate scope of their employment or that the University ratified the illegal conduct of its employees"); *Martinez v. Goodwill Indus. of S. Fla., Inc.*, 2011 WL 13217232, *3 (S.D. Fla. Apr. 1, 2011) ("[T]heft from an employer cannot be deemed an act of the employer."). Counts 12 and 13 must be dismissed as to USSSA on this basis alone.

Additionally, the FWA's requirement that Plaintiffs establish an "actual . . . violation of a law is unequivocal. It does not provide protection to employees for 'alleged' or 'suspected' violations of the law." *Graddy v. Wal-Mart Stores E., LP*, 237 F. Supp. 3d 1223, 1227 (M.D. Fla. 2017); Fla. Stat. § 448.101(4). Because each alleged RICO predicate act fails as a matter of law, as discussed above, Plaintiffs fail to allege an actual violation of law committed by USSSA. *See, e.g.*, *Hathaway v. Ramco-Gershenson, Inc.*, 2019 LEXIS 48140, at *3 (S.D. Fla. Mar. 21, 2019) (dismissing FWA claim where plaintiff failed to plead an actual violation of Florida RICO or other statutes); *Gutierrez v. Martin Eng'g & Martin Mgmt., LLC*, 2006 WL 8433636, at *5 (S.D. Fla. Apr. 27, 2006) (terminating FWA count as "plaintiff is unable to identify any specific law, rule or regulation violated by defendants of which he . . . complained."). Counts 12 and 13 must be dismissed.

### E. Counts 5, 6, 10, & 11: Wegman's Contract and Common Law Claims Fail

As to Count 5, Wegman again fails to state a claim for breach of his Employment Agreement because he pleads no facts beyond mere conclusory allegations establishing an actual breach. (Ex. 1 to SAC); *see Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009). The Agreement authorizes USSSA to terminate Wegman's employment "for cause at any time" as plainly defined in the Agreement as, *inter alia*, "engaging in any misconduct," failing to "satisfactorily perform [his] duties," or engaging in "misconduct that could reasonably be expected to injure the reputation, business or business relationships of [USSSA]." (Emp. Agmt. §§ 3.1.2; 3.1.4–.5; 3.1.9.) Although Wegman concedes that USSSA terminated him "*for cause*" following his unsatisfactory annual review, (SAC ¶¶ 92–93, 116), he nevertheless advances conclusory allegations that his termination was predicated on "a number of false, misleading, and unsupported allegations," (*id.* ¶ 93). Wegman again, however, fails to plead that his performance was *not* unsatisfactory on more than one occasion before his eventual termination. (*Id.* ¶ 92.) Indeed, Wegman merely states in a conclusory fashion that USSSA's reasons for terminating him were "pretextual," "false," or "unsupported." (*Id.* ¶ 93, 116.) In the SAC, like in the FAC, Wegman does not—because he cannot—dispute he had engaged in misconduct that can "reasonably be expected to injure" USSSA and its reputation, such as sleeping with an employee. (*See* Emp. Agmt. § 3.1; SAC ¶ 156.)

Wegman's conclusory allegations about USSSA's purported "pretextual" termination fall short. *Bruggemann v. Amacore Grp., Inc.*, 2010 WL 2696230, at *2 (M.D. Fla. July 6, 2010) ("Absent the necessary factual allegations, 'unadorned, the-defendant-unlawfully-harmed-me accusation[s]' will not suffice."). USSSA provided lawful justifications for terminating Wegman "for cause." (SAC ¶ 116.) Wegman merely contends that USSSA relied on "pretextual facts that the Defendants knew were false[,]" (*id.*)—he fails to plead with sufficient specificity or in non-conclusory manner what those alleged justifications were or how any such "pretextual facts" were false, (*Id.* ¶¶ 92, 116). Count 5 should therefore be dismissed.

As to Count 6, Wegman pleads a duplicative breach of covenant of good faith and fair dealing claim. Because Count 6's factual underpinnings are identical to Count 5, (*compare* SAC ¶¶ 90–93, 112, *with id.* ¶¶ 90–93, 118), it is duplicative and must be dismissed. *See, e.g.*, *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1321 (M.D. Fla. 2000); *Burger King v. Berry*, 2020 WL 13748498, at *5 (S.D. Fla. Dec. 10, 2020).

As to Count 10 (defamation), Wegman must plead: "(1) publication; (2) falsity; (3) the statement was made . . . at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory." *Reed v. Chamblee*, 2023 WL 6292578, at *8 (M.D. Fla. Sept. 27, 2023). Wegman must satisfy a higher standard to plead defamation *per se* (Count 11), which requires him to allege that USSSA: "(1) published, (2) to a third party, (3) a false statement about

the plaintiff, (4) that rises to the level of defamation *per se*." *Clowdus v. Am. Airlines, Inc.*, 2022 WL 18458134, at *3 (S.D. Fla. Oct. 12, 2022). A statement is defamatory *per se* "if it imputes to another a criminal offense amounting to a felony," or conduct or characteristics "incompatible with the proper exercise of his lawful business." *Campbell v. Jacksonville Kennel Club*, 66 So. 2d 495, 497 (Fla. 1953) (cleaned up).

Wegman alleges only that DeDonatis—not USSSA—made defamatory statements about him. (SAC ¶ 152–67.) Nowhere in Counts 10 or 11 does Wegman allege how any defamatory statement is attributable to USSSA; indeed, Wegman does not even plead that DeDonatis acted as USSSA's agent when he made any defamatory statements. *Wilson v. Boca W. Master Ass'n*, 2019 WL 1258789, at *4 (S.D. Fla. Mar. 18, 2019) (dismissing plaintiff's defamation claim because plaintiff failed to plead former employer was vicariously liable for defamatory statements its employees made).[9] A plain reading of the SAC makes clear that Wegman attributes all defamatory statements to DeDonatis *alone* and that DeDonatis's statements were made as part of DeDonatis's own *individual* "campaign of revenge against" Wegman. (*E.g.*, SAC ¶ 153.) DeDonatis—not USSSA—is alleged to have "communicated with important USSSA partners . . . and company representatives

---

[9] Although "[a]n employer may be held vicariously liable for the acts of its employees if the acts were committed within the course and scope of employment and were committed, at least in part, to further the employer's interests[,]" no such vicarious liability is alleged here. *See Wilson*, 2019 WL 1258789, at *4; (SAC ¶¶ 152–67).

with the intent to defame and tarnish [Wegman's] reputation." (*Id.*) Importantly absent from Counts 10 and 11 are *any* allegations that (1) DeDonatis was acting within the scope of his employment with USSSA, (2) DeDonatis sought to further USSSA's interest by making the allegedly defamatory statements, or (3) USSSA stood to benefit from DeDonatis's allegedly defamatory statements. (SAC ¶ 152–67.) Thus, Counts 10 and 11 fails as to USSSA. *Wilson*, 2019 WL 1258789, at *4.

Even assuming Wegman pleaded sufficient facts that DeDonatis's statements were attributable to USSSA, Counts 10 and 11 still fail because Wegman alleges only conclusory allegations that DeDonatis's defamatory statements were false. *Clowdus*, 2022 WL 1848134, at *3–4 (dismissing defamation *per se* claims because allegations were not "substantially and materially false"). The only alleged defamatory statement Wegman pleads with *any* specificity is that DeDonatis "told Partner-2 that . . . Wegman was terminated . . . because of his actions 'around the office' and that . . . Wegman was 'sleeping with an employee.'" (SAC ¶ 156.) Any allegation that this statement is false is conclusory and insufficient as Wegman does not—and cannot—affirmatively allege that he did not sleep with the employee, *but see Duffy v. Fox News Networks, LLC*, 2015 WL 2449576, at *3 (M.D. Fla. May 21, 2015) (Dalton, J.). Wegman also fails to plead that any statement amounts to defamation *per se*. Therefore, Counts 10 and 11 must be dismissed.

### F.  Counts 7–9: Horrom's Individual Claims Fail

To plead a claim breach of an oral contract (Count 7), Horrom must allege the existence of an oral contract, a material breach, and damages resulting from the breach. *Merle Wood & Assoc., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294, 1301 (S.D. Fla. 2012). He must also plead that the parties "mutually assented to 'a certain and definite proposition' and left no essential terms open." *W.R. Townsend Contracting, Inc. v. Jensen Civil Constr., Inc.*, 728 So. 2d 297, 300 (Fla. 1st DCA 1999). Despite Horrom having three opportunities to plead sufficient facts that he and USSSA entered into an oral contract, Horrom failed (again) to provide specific examples of the essential terms of such contract. (SAC ¶¶ 129–30.) Instead, Horrom simply realleges in conclusory fashion the same allegations previously rejected writ large: that "[f]or [his] new position, [he] and USSSA entered into a valid and binding oral contract for a certain and definite proposition, whereby, among other rights, USSSA and . . . DeDonatis promised [him], and [he] was entitled to, certain compensation."[10] (*Id.* ¶ 130.) Horrom provides *no* details about his purported oral contract, and—again—fails to sufficiently plead that he and USSSA agreed upon the term or period of his employment, rendering his employment terminable at will. *See,*

---

[10] Notably, Horrom alleges he *expected* to enter into a written agreement to govern his employment relationship. (SAC ¶¶ 129–30.) But Horrom's "[m]ere expectations are insufficient to create a binding term of employment." *See Maguire v. Am. Fam. Life Assurance Co. of Columbus, Ga.*, 442 So. 2d 321, 323 (Fla. 3d DCA 1983). And Horrom did not—because he cannot—allege that USSSA's alleged promise was supported by consideration. *See Benitez v. True Choice Telecom.*, 2020 WL 10058215, at *3 (M.D. Fla. Mar. 26, 2020).

*e.g.*, *Ross v. Twenty-Four Collection, Inc.*, 617 So. 2d 428, 428 (Fla. 3d DCA 1993).
As "[n]o action may be maintained for the breach of an employment contract
terminable at will," Count 7 must be dismissed with prejudice. *Id.*

Count 8 for breach of implied in fact contract suffers from the same fatal flaws
as Count 7. Although implied-in-fact contracts can arise "where one performs
services at another's request, . . . implied in fact contracts do not arise where, as here,
there is an employment at will relationship." *Reiter v. Branch*, 2005 WL 8159802,
at *12 (M.D. Fla. Nov. 9, 2005). Count 8 must be dismissed with prejudice. *See id.*

Count 9 fails because no such claim may "be maintained in the absence of a
breach of an express contract provision." *Degutis v. Fin. Freedom, LLC*, 978 F.
Supp. 2d 1243, 1263 (M.D. Fla. 2013). Because Horrom had no express employment
contract, Count 9 fails. *See Ross*, 617 So. 2d at 428.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the SAC with prejudice[11]
as to USSSA and grant such other relief that this Court deems just or necessary.

## LOCAL RULE 3.01(g) CERTIFICATION

USSSA conferred with Plaintiffs' counsel via videoconference on April 29,
2024, regarding this Motion. The parties were unable to resolve the issues presented
herein.

---

[11] *See supra* note 2; (ECF No. 159, Tr. at 30: 3–5, 15: 3–5.)

Dated:     May 1, 2024     Respectfully submitted,

**DLA PIPER LLP (US)**

By: */s/ Christopher G. Oprison*
Christopher G. Oprison, Esq. (FBN: 122080)
Jody Arenas Stafford, Esq. (FBN: 1015797)
200 South Biscayne Blvd., Ste. 2500
Miami, Florida 33131
Tel: 305.423.8522
chris.oprison@dlapiper.com
jody.stafford@dlapiper.com
*Counsel for Defendant USSSA*