## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

BRIAN WEGMAN; and THOMAS
HORROM,

      Plaintiffs,

v.                                                    Case No. 6:23-cv-1637-RBD-RMN

THE UNITED STATES SPECIALTY
SPORTS ASSOCIATION, INC.;
DONALD DEDONATIS III;
RICHARD FORTUNA; WENDY
ANDERSON; COURTNEY CEO; and
JACOB HORNBACHER,

      Defendants.

_____

## <u>ORDER</u>

Before the Court are Defendants' motions to dismiss (Docs. 160, 161, 165).

## BACKGROUND

At first blush, this case seems to arise from a simple employment dispute: Plaintiffs, employed by Defendant United States Specialty Sports Association, Inc. ("USSSA"), allege they were terminated wrongfully, and filed suit to recover. (Doc. 155, ¶¶ 6, 8.) But Plaintiffs say there's more to the story. They claim they were fired because they blew the whistle on widespread fraudulent and illegal activity at USSSA. (*Id.*)

USSSA is a nonprofit Florida corporation that sanctions and hosts sporting

events nationwide. (*Id.* ¶¶ 9, 10.) All parties to this suit once held high-ranking positions at USSSA: Plaintiff Brian Wegman was its Chief Operating Officer, Plaintiff Thomas Horrom was its Vice President of Technology and Advanced Media, Defendant Donald DeDonatis III was its Chief Executive Officer ("CEO"), Defendant Jacob Hornbacher was its National Program Director and State Director of Michigan, Defendant Richard Fortuna was Chairman of its Board, Defendant Courtney Ceo was its Vice President of Brand Management and Business Strategy, and Defendant Wendy Anderson was its General Counsel and Ethics and Compliance Officer. (*Id.* ¶¶ 5, 7, 11–15.)

The first alleged crime in Defendants' scheme occurred in 2016 when USSSA issued two personal loans to DeDonatis for a new home. (*Id.* ¶ 41.) Plaintiffs allege the loans violated state laws against corporations loaning money to directors or officers. (*Id.* ¶ 43.) DeDonatis made payments on the loans until early 2018, when he was promoted to CEO. (*Id.* at 28 n.39 & ¶ 11.) When issued, the loans were not properly reported to USSSA's bank or documented with the Internal Revenue Service ("IRS"). (*Id.* ¶¶ 41, 42.)

Plaintiffs also claim USSSA's IRS documents had other problems. USSSA — through DeDonatis and Fortuna, as Chairman of the Board—allegedly concealed their misuse and diversion of corporate funds. (*Id.* ¶¶ 48–60.) Plaintiffs allege that Fortuna and an unnamed board member, with the consent of DeDonatis and

USSSA, created an entity, USSSA Midwest, to serve as a "middleman" between USSSA and state directors and collect significant revenues from regional events. (*Id.* ¶ 52.) USSSA Midwest "operated for the benefit of Defendant Fortuna, Board Member-1, and their family members and friends" and "constituted an illegal diversion of non-profit generated funds for personal inurement." (*Id.* ¶ 55.)

In April 2020, three USSSA board members sent a written complaint to Fortuna, requesting that USSSA conduct an independent investigation into DeDonatis's behavior. (*Id.* ¶ 39.) Along with his failure to repay the loans, the board members alleged DeDonatis had an inappropriate romantic relationship with Ceo, made improper payments to Ceo, used illegal drugs, displayed poor management and decision-making, and failed to pay fees USSSA owed its state partners. (Doc. 155-3.) Upon receipt of this complaint, the board retroactively documented and enforced the illegal loans. (Doc. 155, ¶ 44.) DeDonatis ultimately paid off the loans. (*Id.* at 28 n.39.) But shortly after filing the complaint, each complaining board member resigned and accepted consulting roles with USSSA that provided lucrative fees and retirement bonuses. (*Id.* ¶ 40.) No further action was taken in response to the April 2020 complaint. (*Id.*)

On top of his corporate mismanagement, Plaintiffs allege DeDonatis and Hornbacher—DeDonatis's cousin—ran an illegal gambling business at USSSA by operating an "offshore" website on which clients placed bets that DeDonatis,

Hornbacher, or other employees of USSSA then paid out. (*Id.* ¶¶ 65–72.) After learning of this side business in January 2023, Plaintiff Horrom filed two anonymous whistleblower complaints accusing DeDonatis and Hornbacher of illegal gambling and Fortuna of covering it up. (*Id.* ¶ 84.) Horrom sent his first complaint to Fortuna and the second to Anderson and the entire board, threatening to share the information with the media, the Florida gaming task force, and relevant federal organizations. (*Id.* ¶¶ 85, 86.) After disclosing to Anderson that he sent the anonymous complaints to secure whistleblower protection, Horrom was fired in February 2023. (*Id.* ¶ 89.)

Around this time, Plaintiff Wegman also raised concerns about Defendants' behavior to Anderson and requested whistleblower protection under USSSA's policy. (*Id.* ¶ 90.) But after Anderson assured Wegman he would be protected, she approved documentation—which Ceo allegedly fabricated—painting Wegman as a bad employee and giving DeDonatis justification under his contract to fire him. (*Id.* ¶ 92.) Wegman was fired in July 2023. (*Id.* ¶ 93.) Afterward, in an effort to ruin Wegman's reputation, DeDonatis allegedly contacted colleagues and key USSSA partners and falsely claimed that Wegman had an extramarital affair with a colleague and was dishonest at work. (*Id.* ¶¶ 154, 155, 158.)

Plaintiffs then filed this case in August 2023. (Doc. 5.) USSSA conducted an internal investigation and terminated DeDonatis, Ceo, and Hornbacher in

December 2023. (*Id.* ¶¶ 5, 14, 15.)

The Court dismissed the initial Complaint as a shotgun pleading (Doc. 17), and Plaintiffs refiled (Doc. 19). On Defendants' motions, the Court dismissed Plaintiffs' First Amended Complaint with leave to refile. (Doc. 154.) Plaintiffs then filed the operative Second Amendment Complaint ("Complaint"). (Doc. 155.) Plaintiffs sue all Defendants for violating and conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Counts I, II); Wegman sues USSSA, DeDonatis, Fortuna, and Anderson for violating the Anti-Money Laundering Act (Count III) and the Taxpayer First Act (Count IV); Plaintiffs both sue USSSA for various contract claims (Counts V–IX); Wegman sues USSSA and DeDonatis for defamation (Counts X, XI); and Plaintiffs both sue USSSA for retaliation under the Florida Whistleblower Act (Counts XII, XIII). (Doc. 155, ¶¶ 27–179.) Defendants again move to dismiss (Docs. 160, 161, 165), and Plaintiffs oppose (Doc. 167). The matter is ripe.

## STANDARDS

A plaintiff must plead "a short and plain statement of the claim." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss, a court limits its consideration to "the well-pleaded factual allegations." *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The factual allegations must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must accept

the factual allegations as true and construe them "in the light most favorable" to the plaintiff. *See United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009).

When analyzing a motion to dismiss, the Eleventh Circuit permits consideration of documents outside the complaint only when: (1) the plaintiff refers to the document in the complaint; (2) the document is central to the plaintiff's claim; (3) the contents of the document are not in dispute; and (4) the defendant attaches the document to its motion to dismiss. *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007).

## ANALYSIS

### I.    Count I: RICO

Plaintiffs first claim Defendants violated RICO. (Doc. 155, ¶ 29.) RICO provides a private right of action to anyone "injured in his business or property" by a RICO violation. 18 U.S.C. § 1964(c). To state a RICO claim, a plaintiff must allege the defendant: "(1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020). Here, Plaintiffs failed to allege a RICO enterprise, a pattern of racketeering activity, or a predicate act that caused their injuries. Any of these failures result in dismissal, but the Court will address each in turn.

## A.    Enterprise

USSSA first argues that Plaintiffs' RICO claim must be dismissed because the Complaint fails to sufficiently allege the existence of an association-in-fact enterprise with a common purpose. (Doc. 160, p. 15.)

RICO requires "the creation of an 'enterprise'—a group with a common purpose and course of conduct—and the actual commission of a pattern of predicate offenses." *Boyle v. United States*, 556 U.S. 938, 944 (2009). A RICO enterprise need not be a legal or formal entity, but it "must have at least three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 946.

Here, Plaintiffs' enterprise fails as it lacks factual allegations establishing relationships between its members. Plaintiffs allege the enterprise consisted of:

> (a) USSSA, DeDonatis, Fortuna, Anderson, Ceo, and Hornbacher; (b) other USSSA Board Members; (c) Defendants' separate organizations used to operate and manage state and local USSSA-connected athletic events in various states; (d) Employee-3 and affiliated organizations used to divert USSSA funds; and (e) relevant family members and friends connected to Defendants for purposes of operating USSSA regional, state, and local athletic events in various states.

(Doc. 155, ¶ 35.) But Plaintiffs fail to identify or allege how any "family members and friends" not on USSSA's payroll became part of the enterprise. Plaintiffs' allegations concerning USSSA Midwest is the closest the Complaint comes, as

Plaintiffs allege it was created for the benefit of family and friends. (Doc. 155, ¶ 55.) But Plaintiffs do not provide any facts about what these family and friends did to participate in the criminal acts. *See Cisneros*, 972 F.3d at 1213 (no common purpose when complaint lacked "allegations about specific interactions . . . nor allegations regarding the origins or scope of the alleged scheme"). Without more, Plaintiff has not established the existence of a criminal enterprise. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1354 (11th Cir. 2016) (allegations claiming members of the enterprise were involved without supporting facts to make the assertion plausible were too conclusory). The lack of specified third-party involvement is also fatal to Plaintiffs' claim because the enterprise cannot be comprised of only USSSA and its officers and directors—a corporation cannot conspire with itself. *See id.* at 1357 ("Because every corporation acts through its own employees as a matter of course, allowing such pleadings to go forward would turn every claim of corporate fraud into a RICO violation."); *see also Andela v. U-Haul Int'l Inc.*, No. 11-22782, 2012 WL 12865211, at *3 (S.D. Fla. Feb. 6, 2012). So Plaintiffs' RICO claim is due to be dismissed because Plaintiffs have not sufficiently alleged an enterprise.

## B. Standing

Even if Plaintiffs sufficiently alleged an enterprise, Defendants argue Plaintiffs lack standing as they failed to plead a predicate act that caused injury to Plaintiffs. (*See* Doc. 160, pp. 6–7, Doc. 161, p. 8; Doc. 165, pp. 8–11.) Plaintiffs

counter that they sufficiently alleged Defendants violated 18 U.S.C. § 1512(b) (witness tampering)[1] and § 1513(e) (retaliation)[2] when they terminated Plaintiffs. (Doc. 167, p. 5.)

Under RICO, a plaintiff must establish a pattern of racketeering activity made up of "a series of criminal acts as defined by the statute." *United States v. Turkette*, 452 U.S. 576, 583 (1981); *see* 18 U.S.C. § 1961(1). A plaintiff must allege each act—commonly referred to as a "predicate act"—with enough facts "to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215. Further, a plaintiff must "plead facts sufficient to give rise to a reasonable inference that the claimed racketeering activity . . . was the but-for *and* proximate cause of the plaintiffs' injuries." *Ray*, 836 F.3d at 1349. Without at least one sufficiently pled predicate act that caused injury to the plaintiff, he has no standing to bring a RICO claim. *See Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (defendant not liable to "those who have not been injured").

Here, Plaintiffs concede that their terminations are their only direct injuries,

---

[1] 18 U.S.C. § 1512(b) prohibits "knowingly us[ing] intimidation, threaten[ing], or corruptly persuad[ing]" a witness, victim, or informant not to testify "in an official proceeding" or provide information about federal or post-release offenses "to a law enforcement officer or judge of the United States." 18 U.S.C. § 1512(b)(1)–(3). 18 U.S.C. § 1512(k) prohibits conspiring to commit this offense.

[2] 18 U.S.C. § 1513(e) prohibits knowingly and intentionally retaliating against someone "for providing to a law enforcement officer any truthful information relating to the commission or possible commission of any Federal offense." 18 U.S.C. § 1513(e). 18 U.S.C. § 1513(f) prohibits conspiring to commit this offense.

(*see* Doc. 167, pp. 3–4), but they fail to sufficiently allege any predicate act that caused their firings.

As it pertains to witness tampering, Plaintiffs allege Defendants failed to investigate misconduct, created false documentation, and retaliated against Plaintiffs by firing them. (Doc. 155, ¶¶ 83–94.) But Plaintiffs did not allege participation in an official proceeding or provision of information to a law enforcement officer, as required by 18 U.S.C. § 1512(b).[3] *See Pearn v. Nocco*, No. 8:20-cv-2999, 2022 WL 19226195, at *6 (M.D. Fla. Mar. 28, 2022) (internal investigation not an official proceeding). And even if, as Plaintiffs argue, there need only be a *threat* of a foreseeable official proceeding (*see* Doc. 167, p. 12), Plaintiffs do not claim that Defendants' actions were done in fear of a future proceeding or with intent to dissuade reporting sufficient to constitute witness tampering.[4] *See* 18 U.S.C. § 1512(b).

As to retaliation under 18 U.S.C. § 1513(e), neither Horrom nor Wegman "blew the whistle" to a law enforcement officer. Though Plaintiffs argue 18 U.S.C.

---

[3] An "official proceeding" must be held before a federal judge, federal agency, Congress, or specific regulatory officials. 18 U.S.C. § 1515(a). A "law enforcement officer" is a federal officer, employee, or individual "authorized to act for or on behalf of the Federal Government." 18 U.S.C. § 1515(4).

[4] Although Plaintiffs argue they established witness tampering under 18 U.S.C. § 1512(c) by alleging Defendants altered their employment records (*see* Doc. 167, pp. 12–13), the Complaint does not reference 18 U.S.C. § 1512(c). (*See, e.g.*, Doc. 155, ¶ 83.) And even if it were properly pled, Plaintiffs' conclusory allegations that documentation was altered to impede a hypothetical proceeding still fails under 18 U.S.C. § 1512(c).

§ 1513(e) covers "an employee who *intends to* report," this expansion is not in the text of the statute. *See Keppel v. Nocco*, No. 8:20-cv-3003, 2021 WL 4391839, at *6 (M.D. Fla. Sept. 24, 2021) (no claim for retaliation without allegations that plaintiff "communicated information about the offense" to a federal officer). Plaintiffs' argument that Defendants conspired to retaliate under 18 U.S.C. § 1513(f) fails for the same reason: even if Defendants conspired to fire Plaintiffs for their internal whistleblowing, Plaintiffs did not provide information to federal authorities, so § 1513(e) does not apply. So Plaintiffs have failed to allege these predicate acts, and thus lack standing to bring this RICO claim.

### C.    Pattern

Finally, Defendants argue that the RICO claim fails to allege a pattern of racketeering activity. (*See* Doc. 165, pp. 13–14.) "[P]laintiffs must charge that: (1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a continuing nature." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004). "[W]hile two acts are necessary, they may not be sufficient. . . . [T]wo of anything do not generally form a 'pattern.'" *Sedima*, 473 U.S. at 497 n.14. Here, Plaintiffs' alleged predicate acts run the gamut from USSSA's board's failure to investigate (Doc. 155, ¶ 40), USSSA's illegal loans (*id.* ¶ 45), USSSA's fraudulent IRS forms (*id.* ¶¶ 47, 62), DeDonatis and

11

Hornbacher's illegal gambling (*id.* ¶ 64), to USSSA's tampering with and retaliating against whistleblowers (*id.* ¶¶ 73, 78, 81–83, 89, 92, 94). The purposes and victims of these acts vary, from USSSA's bank, the IRS, unnamed gamblers, to individual employees. And each alleged act started and ended at different times and have all since terminated, failing RICO's continuity requirement. These acts—though indicative of misconduct on the part of various individuals—do not reflect a continuing related criminal pattern. *See Andela*, 2012 WL 12865211, at *3. As DeDonatis is no longer CEO, the havoc he wreaked on USSSA is over—so too is Plaintiffs' attempt at dressing up their employment-related disputes in RICO clothing. *See Jackson*, 372 F.3d at 1265 (continuity requirement "ensure[s] that the crime alleged is the sort of offense that RICO is designed to address—one that is part of a pattern of ongoing, continuing criminality or that involves criminality that promises to continue into the future").

With no enterprise, standing, or actionable pattern, Plaintiffs' RICO claim fails.

## II.    Count II: RICO Conspiracy

Plaintiffs next allege that Defendants conspired to participate in the RICO enterprise, but they do nothing more than reallege the RICO violation and conclude that Defendants agreed to it. (Doc. 155, ¶ 96.) Because Plaintiffs failed to sufficiently plead a substantive RICO violation, stating in a conclusory manner

that Defendants conspired is not enough. *See Jackson*, 372 F.3d at 1269; *Cisneros*, 972 F.3d at 1220; *Rogers v. Nacchio*, 241 F. App'x 602, 609 (11th Cir. 2007) ("[W]here a plaintiff fails to state a RICO claim and the conspiracy count does not contain additional allegations, the conspiracy claim necessarily fails."). So Plaintiffs' conspiracy claim is likewise due to be dismissed.

### III.    Count III: Anti-Money Laundering Act

Next, Wegman alleges that his termination by USSSA, DeDonatis, Fortuna, and Anderson violated the Anti-Money Laundering Act ("AMLA"). (Doc. 155, ¶¶ 100–01.) USSSA argues it is not a financial institution subject to AMLA, but Wegman counters that USSSA's practice of "provid[ing] omnibus treasury services" to local sporting events companies qualifies it. (Doc. 167, p. 14.)

AMLA prohibits a financial institution from "directly or indirectly" retaliating against an employee who provided information about an AMLA violation to authorities. *See* 31 U.S.C. § 5323(g)(1)(A). A "financial institution" can be:

> [A]ny other person who engages as a business in the transmission of currency, funds, or value that substitutes for currency, including any person who engages as a business in an informal money transfer system or any network of people who engage as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system.

31 U.S.C. § 5312(a)(2)(R). AMLA provides a private right of action to

whistleblowers who have filed a complaint with the Secretary of Labor and not received a final decision within 180 days. *See* 31 U.S.C. § 5323(g)(2).

Here, Wegman references USSSA's purported "treasury" services as USSSA "offer[ing] cash rebates to the state directors" when local players join USSSA events. (Doc. 155, ¶ 59.) But Wegman provides no further factual basis for his assertion that USSSA manages the state directors' funds or operates as a money transfer system, only that USSSA financially incentivizes participation at national events. If Wegman's assertion were to be the law, any business that offered rebates would transform into a financial institution. *See Chaleplis v. Karloutsos*, No. 21-1492, 2023 WL 2976277, at *3 (E.D. Pa. Apr. 18, 2023) (AMLA is as an amendment to the Bank Secrecy Act and applies only to financial institutions like plaintiff's investment company). Without more, Wegman has not sufficiently alleged that he was employed by a financial institution, so his AMLA claim is due to be dismissed.[5]

## IV.    Count IV: Taxpayer First Act

Wegman also claims that his termination constituted retaliation under the Taxpayer First Act ("TFA"). (Doc. 155, ¶¶ 105–11.) USSSA argues that Wegman

---

[5] Although this claim is new to Plaintiffs' most recent complaint, the Court denies leave to amend as futile because Wegman cannot transform USSSA into a financial institution by repleading. *See Crawford's Auto Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 945 F.3d 1150, 1162–63 (11th Cir. 2019) (denying leave to amend is proper when amendment would be futile).

fails to plausibly state a claim under the TFA. (Doc. 167, pp. 17–18.)

TFA provides a private right of action to an employee who was discriminated against after reporting or testifying about "underpayment of tax or any conduct which the employee reasonably believes constitutes a violation of the internal revenue laws or any provision of Federal law relating to tax fraud." 26 U.S.C. § 7623(d)(1). The employee must have reported this information to a federal agency or someone "with supervisory authority over the employee, or any person working for the employer who has the authority to investigate, discover, or terminate misconduct." *Id.* § 7623(d)(1)(A). Before filing suit in federal court, the employee must have filed a complaint with the Secretary of Labor and received no final decision within 180 days. *Id.* § 7623(d)(2)(A). The Secretary of Labor's delay must not have been caused by the employee's bad faith. *Id.*

Here, Wegman sufficiently alleges all the TFA requires: Wegman reported what he believed to be fraudulent IRS filings and underreported revenue to Anderson (Doc. 155, ¶¶ 41–63)—USSSA's general counsel who had investigatory authority (*see id.* ¶ 44)—and was then fired under pretext for USSSA's retaliation (*see id.* ¶¶ 90, 93, 108). Wegman was fired on July 7, 2023, filed his complaint with the Secretary of Labor on September 15, 2023, and has yet to receive a final decision. (*Id.* ¶¶ 93, 109, 110.) At the motion to dismiss stage, this is all the law requires. *See, e.g.*, *Biggins v. N. Ohio Med. Specialists, LLC*, No. 3:23-cv-01917, 2024

WL 1806480, at *8 (N.D. Ohio Apr. 25, 2024) (former financial controller sufficiently stated a claim under TFA after reporting potentially fraudulent tax documents and then being fired due to lack of professionalism). So USSSA's motion is due to be denied as to Wegman's TFA claim.[6]

## V.      Counts V & VI: Wegman's Contract Claims

Wegman next alleges that USSSA breached his employment agreement and the implied covenant of good faith and fair dealing when it terminated him "for cause" that was "pretextual and unjustified." (Doc. 155, ¶¶ 123–24.) USSSA argues that Wegman's allegations are merely conclusory so he has not stated a claim for breach of contract, and his breach of the implied covenant claim is duplicative. (Doc. 160, pp. 20–21.)

A breach of contract claim requires: "(1) a valid contract; (2) a material breach; and (3) damages." *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008). Every contract has an implied covenant of good faith and fair dealing. *QBE Ins. Corp. v. Chalfonte Condo. Apartment Ass'n, Inc.*, 94 So. 3d 541, 548 (Fla. 2012). But "the covenant applies only when the propriety of the conduct is not resolved by the terms of the contract." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000).

---

[6] Because Wegman's TFA claim survives, the Court retains supplemental jurisdiction over the remaining state law claims. *See* 18 U.S.C. § 1367(a).

Here, Wegman alleges enough to state a breach of contract: Wegman and USSSA entered into an employment agreement, and Wegman claims USSSA materially breached that agreement when Anderson and Ceo created false employment records to sabotage his annual review, justify a "for cause" firing, and rob him of a severance package. (Doc. 155, ¶¶ 92, 122; Doc. 155-1); *see Havens v. Coast Fla., P.A.*, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013). But Wegman's claim that his firing materially breached his employment agreement will be resolved under the terms of the contract, so Wegman's claim for breach of covenant is unsustainable. *See Day v. Sarasota Drs. Hosp., Inc.*, No. 8:19-cv-1522, 2020 WL 7390153, at *6 (M.D. Fla. Feb. 7, 2020). So Count V for breach of contract survives and Count VI is due to be dismissed.

## VI.    Counts VII, VIII & IX: Horrom's Contract Claims

Horrum claims USSSA breached their oral contract, an implied-in-fact contract, and the implied covenant of good faith and fair dealing. (Doc. 155, ¶¶ 126–51.) USSSA argues Horrom fails to sufficiently allege facts to establish an oral or implied-in-fact contract, and without an express contract, Horrom's claim for breach of implied covenant fails. (Doc. 160, pp. 24–25.)

An oral contract requires "offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004). To state a claim for breach, "a plaintiff is required to allege facts that, if taken

as true, demonstrate that the parties mutually assented to a certain and definite proposition and left no essential terms open." *Rubenstein v. Primedica Healthcare, Inc.*, 755 So. 2d 746, 748 (Fla. 4th DCA 2000) (cleaned up). A contract implied in fact "is based on a tacit promise, one that is inferred in whole or in part from the parties' conduct." *Com. P'ship 8098 Ltd. P'ship v. Equity Contracting Co.*, 695 So. 2d 383, 385 (Fla. 4th DCA 1997). A plaintiff must allege that "the plaintiff provided, and the defendant assented to and received, a benefit in the form of goods or services under circumstances where, in the ordinary course of common events, a reasonable person receiving such a benefit normally would expect to pay for it." *W.R. Townsend Contracting, Inc. v. Jensen Civ. Constr., Inc.*, 728 So. 2d 297, 305 (Fla. 1st DCA 1999).

Here, Horrum has not established specific and definite terms of an oral agreement. He states the parties planned to draft and execute a written contract that would grant Horrom "an annual salary of between $220,000 to $250,000 with an annual bonus." (Doc. 155, ¶ 129.) Then Horrom claims USSSA failed to pay "the compensation it owed him." (*Id.* ¶ 133.) Without a specific salary and bonus structure alleged, it would be impossible to determine what he was owed. *See Remembrance Grp. v. Centazzo*, No. 2:21-cv-675, 2022 WL 1406673, at *4 (M.D. Fla. May 4, 2022) (dismissed breach of oral contract claim as plaintiff did "not actually detail any terms"). As to a contract implied in fact, Horrom does not allege any

facts detailing additional services he provided as Vice President or how USSSA
failed to compensate him.

Even if Horrom had shown an oral or implied-in-fact contract, he fails to
allege that his employment was not at will. Without a contract establishing a
definite term of employment, an employee is terminable at will. *See DeMarco v.
Publix Super Markets, Inc.*, 384 So. 2d 1253, 1254 (Fla. 1980) (discretionary or
indefinite term of employment is terminable by "either party for any reason" and
cannot support a breach of contract action); *Reiter v. Branch*, No. 5:05-cv-46, 2005
WL 8159802, at *12 (M.D. Fla. Nov. 9, 2005), *adopted*, 2005 WL 8159801 (M.D. Fla.
Dec. 6, 2005) (at-will status forecloses a claim for breach of an implied-in-fact
contract). Without facts establishing Horrom was not at-will, he fails to show
breach.

And because Horrom has not sufficiently pled the existence of a contract
under either theory, no express terms exist for which USSSA could have breached
their covenant. *See Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317 (11th Cir. 1999).
So Horrom's contract claims are all due to be dismissed.[7]

---

[7] As this was Plaintiffs' second opportunity to properly plead Horrom's contract claims,
the Court will not grant leave to amend. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d
541 (11th Cir. 2002) (a district court not required to grant leave to amend complaint sua sponte).

## VII.    Counts X & XI: Wegman's Defamation Claims

Next, Wegman alleges DeDonatis and USSSA defamed him by spreading falsehoods to colleagues and partner organizations. (Doc. 155, ¶¶ 152–60.) USSSA argues that none of DeDonatis's statements is attributable to USSSA. (Doc. 160, p. 22.) DeDonatis argues that Wegman fails to state a claim because his allegations are conclusory. (Doc. 165, p. 17.)

The elements of defamation are: "(1) publication; (2) falsity; (3) [the] actor must act . . . at least negligently on a matter concerning a private person; (4) actual damages; and (5) [the] statement[s] must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1106 (Fla. 2008). "[A] defamatory statement is one . . . that exposes a plaintiff to hatred, ridicule, or contempt or injures his business or reputation or occupation." *Id.* at 1108–09. Defamation is actionable *per se* if the statement: "(1) charges that a person has committed an infamous crime, or (2) has contracted an infectious disease, or (3) they carry statements tending to subject a person to hatred, distrust, ridicule, contempt or disgrace, or (4) to injure a person in his trade or profession." *Adams v. News-J. Corp.*, 84 So. 2d 549, 551 (Fla. 1955). Employers may be held vicariously liable for tortious conduct an employee commits "within the scope and course of his employment." *Bennett v. Godfather's Pizza, Inc.*, 570 So. 2d 1351, 1353–54 (Fla. 3d DCA 1990). Further:

> The test for determining if the conduct complained of occurred within the
> scope of employment is whether the employee (1) was performing the kind
> of conduct he was employed to perform, (2) the conduct occurred within
> the time and space limits of the employment, and (3) the conduct was
> activated at least in part by a purpose to serve the employer.

*Gowan v. Bay Cnty.*, 744 So. 2d 1136, 1138 (Fla. 1st DCA 1999).

As to USSSA, Wegman argues that DeDonatis's statements "protect[ed]

USSSA's ability to maintain" key partnerships. (*See* Doc. 167, p. 17.) Wegman also

alleges DeDonatis made these statements "for the purpose of harassing,

intimidating, and/or harming Plaintiff Wegman." (Doc. 155, ¶ 159.) But Wegman

fails to allege that DeDonatis made defamatory comments at work, for USSSA, or

as part of his role as CEO. *See Levitt v. Iovine*, No. 2:18-cv-36, 2019 WL 1082381,

at *14 (M.D. Fla. Mar. 7, 2019) (employer not vicariously liable as defamatory call

"made after hours, outside the workplace, and was not the kind of conduct

[employee] was employed to perform"). Without more tying the alleged

defamation to USSSA, Wegman has failed to state a claim against it.

But as to DeDonatis, Wegman has sufficiently alleged each element of

defamation: Wegman claims DeDonatis intentionally published false statements

that damaged his reputation. (Doc. 155, ¶¶ 154, 155, 158.) Wegman's allegations

also rise to the level of pleading defamation *per se* because DeDonatis's statements

concerned inappropriate behavior at work, which, if proven false, would damage

his professional reputation. *See Taslidzic v. Luther*, No. 9:18-cv-80038, 2018 WL

3134419, at *7–8 (S.D. Fla. May 21, 2018).

So as to Wegman's defamation claims, USSSA's motion is due to be granted and DeDonatis's denied.

### VIII.  Counts XII & XIII: Florida Whistleblower Act Claims

Lastly, Plaintiffs assert USSSA violated Florida's Private Whistleblower Act ("FWA") by retaliating against them for reporting illegal activity at USSSA. (Doc. 155, ¶¶ 168–79.) USSSA argues Plaintiffs have not pled that: (1) USSSA sanctioned any illegal activity, policy, or practice; or (2) USSSA's behavior was an "actual violation" of the law. (Doc. 160, pp. 18–19.) Plaintiffs counter that USSSA's executives' behavior can be attributed to USSSA, but even if not, USSSA ratified their employees' behavior when the board failed to act on their reports. (Doc. 167, pp. 19–20.)

The FWA prohibits employers from retaliating against an employee who "[o]bjected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation." Fla. Stat. § 448.102(3). To state a FWA claim, a plaintiff must allege: "(1) protected activity, (2) a retaliatory personnel action and (3) a causal connection between the two." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 858 (11th Cir. 2023) (applying Florida law).

To attribute an activity, policy, or practice to an employer, a plaintiff may show that the behavior was that of the employer itself, an employee within the

scope of their employment, or an employee which the employer then ratified. *See Sussan v. Nova Se. Univ.*, 723 So. 2d 933, 934 (Fla. 4th DCA 1999). Courts have applied two different standards for showing the objected-to activity, policy, or practice violated the law: one is that the plaintiff had a "good faith, objectively reasonable belief" that the employer violated the law, and the other is that the employer actually violated the law. *Compare Aery v. Wallace Lincoln-Mercury, LLC*, 118 So. 3d 904, 916 (Fla. 4th DCA 2013), *with Kearns v. Farmer Acquisition Co.*, 157 So. 3d 458, 466 (Fla. 2d DCA 2015).[8] Plaintiffs' claims survive the motion to dismiss under either standard.

Here, Plaintiffs allege they blew the whistle on a variety of misconduct, including DeDonatis and Hornbacher's illegal gambling, which USSSA's board was made aware of and disregarded. (*See* Doc. 155, ¶¶ 86, 88, 90.) Plaintiffs believed the gambling activities violated federal law under 18 U.S.C. §§ 1084(a), 1955, and 1956. (*Id.* at p. 39 nn.54–56.) And USSSA later allegedly fired them because of their reports. (*Id.* ¶¶ 89, 93); *see Williams v. Accelerated Learning Sols., Inc.*, No. 216-cv-239, 2016 WL 3552430, at *4 (M.D. Fla. June 30, 2016). Taking Plaintiffs' allegations as true, they allege each element of an FWA violation, so

---

[8] Courts have differed on whether *Kearns* created an actual conflict in the standards or was merely dicta, but that question is of no moment at this stage. *See Graddy v. Wal-Mart Stores E., LP*, 237 F. Supp. 3d 1223 (M.D. Fla. 2017); *see also Usher v. Nipro Diabetes Sys., Inc.*, 184 So. 3d 1260, 1261 (Fla. 4th DCA 2016) (Gross, J., concurring).

these claims survive.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED**:

1. USSSA's motion (Doc. 160) is **GRANTED IN PART AND DENIED IN PART**, Fortuna, Anderson, and Ceo's motion (Doc. 161) is **GRANTED**, and DeDonatis and Hornbacher's motion (Doc. 165) is **GRANTED IN PART AND DENIED IN PART** as follows:

   a. The motions are **GRANTED** as to Counts I–III and VI–IX, which are **DISMISSED WITH PREJUDICE**.

   b. The motions are **GRANTED** as to Counts X and XI against USSSA, which are **DISMISSED WITH PREJUDICE** against USSSA only.

   c. In all other respects, the motions are **DENIED**. Counts IV, V, X (as to DeDonatis only), XI (as to DeDonatis only), XII and XIII proceed.

2. The Clerk is **DIRECTED** to terminate Defendants Ceo and Hornbacher as parties to this action.

**DONE AND ORDERED** in Chambers in Orlando, Florida, on November 21, 2024.



ROY B. DALTON, JR.
United States District Judge