UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

.............................................................
                                          :
BRIAN WEGMAN and THOMAS      :
HORROM,                      :
                             :          Case Number:
        Plaintiffs,          :          6:23-cv-01637-RBD-RMN
                             :
                             :          Orlando, Florida
v.                           :          February 7, 2025
                             :          12:58 - 1:37 p.m.
THE UNITED STATES SPECIALTY  :
SPORTS ASSOCIATION, INC.;    :
DONALD DEDONATIS, III; RICHARD:
FORTUNA; and WENDY ANDERSON, :
                             :
        Defendants.          :
.............................................:.......................


TRANSCRIPT OF MOTION HEARING
RE: [196] DEFENDANTS' JOINT MOTION FOR SANCTIONS
BEFORE THE HONORABLE ROBERT M. NORWAY
UNITED STATES MAGISTRATE JUDGE


Proceedings recorded by real-time mechanical stenography.
Transcript produced by computer-aided transcription.

Stenographically reported before:
Karla Hyland, RPR, FCRR, FPR-C
(813) 476-1641 | hylandtranscripts@outlook.com
401 West Central Boulevard, Suite 4600, Orlando, Florida 32801

1                    A P P E A R A N C E S

2    For the Plaintiffs:

3              Michael Volkov, Esquire
               THE VOLKOV LAW GROUP
4              2805 Racetrack View Drive
               Del Mar, California 92014
5

6    For the Defendant USSSA:

7              Erin Berhan, Esquire
               DLA PIPER US, LLP
8              200 South Biscayne Boulevard
               Suite 2500
9              Miami, Florida 33131

10

     For the Defendant Donald DeDonatis, III:
11
               Erin L. Centrone, Esquire
12             LYDECKER, LLP
               4350 West Cypress Street
13             Suite 910
               Tampa, Florida 33609
14

15   For the Defendant Richard Fortuna:

16             Emma L. McCarthy, Esquire
               COLE, SCOTT & KISSANE, P.A.
17             222 Lakeview Avenue
               Suite 500
18             West Palm Beach, Florida 33401

19

     For the Defendant Wendy Anderson:
20
               Todd J. Murgo, Esquire
21             FREEMAN MATHIS & GARY, LLP
               2502 North Rocky Point Drive
22             Suite 550
               Tampa, Florida 33607
23

24

25

# T A B L E   O F   C O N T E N T S

## February 7, 2025

PAGE

ARGUMENT BY MS. BERHAN ....................................5

ARGUMENT BY MR. VOLKOV ...................................12

REBUTTAL ARGUMENT BY MS. MCCARTHY ........................21

RULING OF THE COURT ......................................23

CERTIFICATE OF REPORTER ..................................30

# P R O C E E D I N G S

(Proceedings commenced at 12:58 p.m.)

**THE COURT:** Thank you very much. Please be seated.

All right. Mr. Jernigan, would you please call the case and have the parties make their appearances for the record.

**THE COURTROOM DEPUTY:** Case Number 6:23-cv-1637, Brian Wegman, et. al., versus The United States Specialty Sports Association, Inc., et. al.

Counsel, please state your appearances for the record.

**MR. VOLKOV:** Good afternoon, Your Honor. Michael Volkov for the plaintiffs.

**THE COURT:** Good afternoon, Mr. Volkov.

**MS. BERHAN:** Good afternoon, Your Honor. Erin Berhan with DLA Piper on behalf of the United States Specialty Sports Association, USSSA.

**THE COURT:** Good afternoon.

**MS. CENTRONE:** Good afternoon, Your Honor. Erin Centrone from Lydecker for Defendant Donald DeDonatis, III.

**THE COURT:** Good afternoon.

**MS. MCCARTHY:** Good afternoon, Your Honor, Emma McCarthy on behalf of Richard Fortuna.

**THE COURT:** Good afternoon.

**MR. MURGO:** Good afternoon, Your Honor. Todd Murgo

1  on behalf of Defendant Wendy Anderson.

2        **THE COURT:** All right. Thank you very much, all.

3        So we're here today to hear a joint motion that has

4  been filed by the defendants to compel -- or, I'm sorry, for

5  sanctions for failure to appear, and I believe it was Defendant

6  Wegman, at a noticed deposition.

7        Who is going to argue on behalf of the defendants?

8        **MS. BERHAN:** I will, Your Honor. Would you like me

9  to approach?

10        **THE COURT:** Please do. And just for the record, I've

11  read the motion, the attachments, and also the response and the

12  attachments as well.

13        **MS. BERHAN:** Okay. Thank you, Your Honor.

14        Well, as you said, Your Honor, you've read the

15  motion. We are here for the motion for sanctions pursuant to

16  Federal Rule of Procedure 37.

17        Your Honor, I'll give a little bit of background. On

18  December 19th, we had a meet and confer after the order was

19  reissued from the Court, and we agreed that we needed to

20  quickly get together --

21        **THE COURT:** Who are "we"?

22        **MS. BERHAN:** All parties, including plaintiff.

23        -- to get together and organize our depositions, as

24  well as discovery, and to stay compliant with the

25  then-scheduling order. We understand that it has since

changed.

We met on that Thursday, December 19th.  By that Tuesday, USSSA had issued its written deposition request -- excuse me, written discovery request and then we quickly followed with our notices of deposition, as well as you saw there are several cross-notices for deposition as well.

Shortly after, we were told that perhaps -- that despite our agreement at the meet and confer to not seek an extension, that an extension may be sought, and we were told that Plaintiff Wegman -- that the plaintiffs' counsel would like additional discovery, and that Plaintiff Horrom was involved in a business conference.  Plaintiff Horrom, as well, he -- his deposition was scheduled for 3:00 p.m.  We noted that his was a smaller deposition to be had.

These are virtual depositions, Your Honor, so it would be by Zoom, and we were trying to be cooperative.  It could be changed.  We could do it after hours, it could be before.  That kind of flexibility could be provided.  And the inference was, No, and we had just kind of run out of time.

Your Honor, I also want to point out that plaintiffs had provided a list of ten people that they would like to depose, as well as six alternates, so this is all in the same time period.

THE COURT:  At the meet and confer on the 19th, did the plaintiffs agree on the dates for depositions that were

noticed?

      **MS. BERHAN:**  I think we knew that we had a deadline. I don't think we had a specific date, but we knew we were going to issue them.  And considering the 14-day time period, we needed to give some notice, and particularly with the holidays, we were all marching towards the then-January 24th, 2025, deadline.

      **THE COURT:**  Okay.  Thank you.

      **MS. BERHAN:**  And so there we are, Your Honor.  We were told that -- that Plaintiff Horrom could not be made available because he was on a business conference, and the two hours or so that we needed for a virtual deposition could not be met, despite our offering to change time.

      And Wegman -- as you can see on the page one of plaintiff's response, Plaintiff Wegman was available, and that's about as plain as I can make it.  This was not a mere scheduling issue.  This was willful.  So while I recognize that plaintiff had asked -- had then filed a motion that was the -- the unopposed motion for extension, that is not -- that is not the procedure.  There was -- no protective order was sought.

      Additionally, it was very conditional.  We were told -- we tried to be flexible.  Again, we needed to move forward.  At that point, we were kind of -- you know, our hands were a bit tied because we did have the then-deadline that we wanted to comply with.

1        Your Honor, also we do try to be mindful, at least

2  with respect to my client, USSSA, which is a 501(4)(c). So we

3  are looking just for two depositions. This is a -- you know,

4  this is a specialty organization/association. This is not a

5  behemoth organization. We really just wanted to stay mindful

6  and sought just two deponents, the plaintiffs, the parties, and

7  that's -- that's all we sought.

8        So, Your Honor, we are seeking -- if you are so

9  inclined, we are seeking sanctions in terms of attorney's fees,

10  the costs also in terms of the deposition itself, the cost

11  associated --

12        **THE COURT:** How much did the deposition -- how much

13  did that deposition, it's a virtual deposition, cost?

14        **MS. BERHAN:** I would have to get back, Your Honor --

15  if you would permit us to get back with a motion to tally up

16  the costs, as well as the time it took to prepare for the

17  deposition.

18        And, again, I think my -- the other defendants would

19  probably speak to their attendance as well and costs

20  associated. But we would provide our number as well and --

21        **THE COURT:** Well, your client intends to depose

22  Mr. Wegman in the future, correct?

23        **MS. BERHAN:** Yes, and Mr. Horrom.

24        **THE COURT:** So whatever preparation you did for that

25  deposition is going to be used in that future deposition as

well.

MS. BERHAN: Okay, Your Honor. And then we'd also seek to -- well, we'll put it in the motion -- we would also seek to have the plaintiff pay for the future court reporter.

THE COURT: Okay. Your motion also requests the dismissal of the case. Are you still abiding by that request? Do you still believe that the Court can dismiss this case?

MS. BERHAN: Your Honor, I don't know that -- that there's enough to dismiss the case based on what happened, what occurred, and we also recognize that there's been a new order that the Court has responded to, in terms of a new scheduling order, so I don't know that that's appropriate.

I would note, however -- and I failed to reference it -- but according to -- pursuant to Rule 37, you know, there were two issues. It was, of course, the willful not showing to the party's deposition, but also we did -- we did serve our written requests on December 23rd, which would have resulted in a January 22nd response deadline, and we did not receive any responses to our written requests as well, and that was before.

So those are two independent bases for sanctions under Rule 37, and we're just seeking in terms of the cost of deposition.

THE COURT: So I thought the motion was really focused on a request for sanctions for failure to appear at the deposition.

1    **MS. BERHAN:** It is, Your Honor. If I've expressed it

2    improperly, I'm sorry. I just wanted to -- we're not trying to

3    be overly aggressive. I think we -- as I mentioned, we're

4    pretty mindful of our client's financial status and just the

5    costs associated with the depositions, and that's what we're --

6    that's what I would like to express is that that's really where

7    we're going to focus is the cost of deposition.

8        **THE COURT:** How much discussion happened between the

9    parties regarding the organizing and scheduling the

10   depositions?

11       **MS. BERHAN:** Does Your Honor mean in terms of

12   securing the original date, the January 23rd date?

13       **THE COURT:** Yeah. Was there just a conversation on

14   the 19th and notices went out on the 20th?

15       **MS. BERHAN:** If there -- if there was more, it would

16   not have been too much more, given the timing that we met. So

17   I think we all understood, of course, the kind of timelines we

18   were moving within to march to the January 24th deadline and

19   the amount of time we needed to get the notices out, so -- with

20   time for the -- the deponents.

21       But I don't think that there's ever been any issue

22   with -- there's no dispute that these -- I think the dispute is

23   not that it was unfair or that we provided it, because we did

24   have the meet and confer to move forward, the cross-notices,

25   and I don't believe that that was the issue. Again, it was

conditional. And as plaintiff has put on the front page of -- page one of his response, he was available.

THE COURT: When did the notices go out? When were they issued?

MS. BERHAN: Between January 6th and January 7th. And in terms of the cross-notices, I have the exhibits. I can take a quick look, but they would have been shortly after.

THE COURT: Okay. Excellent. Do you have any additional argument, counsel?

MS. BERHAN: No. But should there be any questions, I'm ...

THE COURT: I don't have any questions. I am going to give any counsel for any other defendant an opportunity to speak now on direct if they would like, but I do think counsel for USSSA has essentially covered all the ground.

MS. CENTRONE: We agree, Your Honor, on behalf of Defendant DeDonatis. Thank you.

MS. MCCARTHY: We agree as well on behalf of Mr. Fortuna.

MR. MURGO: The same, Your Honor. We agree on behalf of Defendant Anderson.

There's just one thing I would like to add just so the record is clear. Counsel mentioned cross-notices. Our office did not file a cross-notice on behalf of Defendant Anderson, just so the record is clear for your consideration.

1    THE COURT:  Did not?

2    MR. MURGO:  Did not.

3    THE COURT:  But you intended to attend the

4    deposition?

5    MR. MURGO:  Correct, yeah, and we did have counsel at

6    the intended date and time of the deposition.

7    THE COURT:  Did you join the cross -- did you join

8    the motion?

9    MR. MURGO:  We did join the motion, Your Honor, but

10   we don't have any other additional argument beyond that.

11   THE COURT:  I do have one question, and it might be

12   for everyone.  Is it one invoice for the Zoom deposition?

13   MS. BERHAN:  The -- yes, I believe it would be one

14   invoice for the Zoom deposition.

15   THE COURT:  All right.  Thank you very much.

16   Mr. Volkov, when you're ready, you may begin.

17   MR. VOLKOV:  Thank you, Your Honor.  May it please

18   the Court?

19   First off, there are two issues, I think, that have

20   been clarified which were not clear from the motion by the

21   defendants.  One, I guess they're not seeking sanctions as to

22   Plaintiff Horrom's failure to appear because he had a conflict

23   in a business conference.

24   THE COURT:  That was -- for the record, that was

25   clear to me when I read the motion.

1       **MR. VOLKOV:** No, the motion includes it. The motion

2   seeks sanctions for both being unavailable. And I would argue

3   to the Court -- I cited to the Court an interesting case from

4   the Western District of Washington where in the face of

5   repeated representations by counsel, when opposing counsel

6   continues to persist with the deposition, sanctions of $500 was

7   imposed by the Western District in Washington District Court

8   against the plaintiff's counsel for pursuing that. That's

9   number one.

10       Number two, with regard to the motion, now I

11  understand that they're not seeking dismissal of the case --

12  and the Court asked that. So the motion -- the joint motion by

13  the defendants, at least at the get-go, at the beginning here,

14  we're starting with two less issues, two fewer issues.

15       With regards to the representations as to the

16  conversations and communications, on December 19th there was a

17  meet and confer, but, however, there was a discussion about

18  depositions, but no dates were discussed. No dates were

19  discussed.

20       It was not until January 7th, I believe -- actually,

21  I thought it was the 9th, at least according to my records,

22  that there was a meet and confer in general with regard to all

23  of the deadlines.

24       **THE COURT:** And what day was that?

25       **MR. VOLKOV:** January 9th, according to my records.

1          And there, we discussed not only, as you know -- as

2     the Court knows, we were filing and in the midst of trying to

3     organize a filing for extending all of the deadlines in the --

4          **THE COURT:**  When did they first ask for dates?

5          **MR. VOLKOV:**  The first time that I heard about dates

6     was around January 7th to 9th.  That's the first time that I

7     heard about any dates.  I heard about depositions, but this was

8     in the context of talking about the -- what led to our joint

9     plaintiffs' unopposed motion with regard to the -- so at the --

10    and I think it's important to consider the timing here, because

11    we acted in good faith.  We also believe that Mr. Wegman's

12    failure to appear, which was at my instruction, not his

13    instruction, so it's me who's on the line, not my client, was

14    in good faith, that we had made it clear to the parties

15    repeatedly that Mr. Wegman should not appear.

16         And if the Court went through -- and I pity the Court

17    having to go through the email traffic that occurred between

18    the 19th and the 23rd.  But at least, we were saying, in this

19    flurry of the last 30 days, that the defense woke up and

20    started to participate in discovery for the first time.  We

21    started to get a flurry of motion -- a flurry of requests.

22         **THE COURT:**  So it's your position that it's

23    reasonable not to offer your clients, who are the parties in

24    this case, before the end of discovery?

25         **MR. VOLKOV:**  I think given the circumstances, that we

had a pending motion before the Court, which was -- which was
unobjected to, a joint motion to request a change in all of the
deadlines and that it also would be un- --

  **THE COURT:**  Did you offer an alternative date for
Mr. Wegman's deposition?

  **MR. VOLKOV:**  Yes.  Repeatedly.

  **THE COURT:**  When?

  **MR. VOLKOV:**  February.

  **THE COURT:**  But that was after the deadline?

  **MR. VOLKOV:**  Correct.  And I understand that, but we
also offered -- Your Honor, we also offered to file a joint
motion to reopen had the motion been denied.

  But let's be clear, if the motion was denied, if our
unopposed joint -- unopposed motion to change the deadlines had
been denied prior to January 23rd or on January 23rd,
Mr. Wegman would have appeared.  And I made that message clear
in five emails.  If it's --

  **THE COURT:**  Why didn't he appear?  If he was
available and you were going to offer him at that time, then
why didn't he appear?

  **MR. VOLKOV:**  The motion was still pending -- or the
motion could have -- the motion was not denied.  But leading up
until that time, we do not believe it's willful for me to
instruct a client not to appear when a motion has been --
there's an unobjected-to motion to extend the deadlines.

1          And let's be -- let's be realists, let's be

2     realistic, the odds were that the Court was going to make some

3     accommodation with regard to the schedule.

4          There was no -- I mean, from my vantage point and I

5     think all counsels' vantage point, it was unlikely that

6     the Court was going to deny the motion to extend the deadlines.

7     But we had made it clear over and over with regard to

8     Mr. Horrom, he cannot appear, four days in a row.  Nonetheless,

9     they continued to persist to set up a deposition for him.

10          With regards to Mr. Wegman, we were clear, and we

11     said, We will do this in two weeks.  We will give you two weeks

12     in February, and we'll file a joint motion to reopen discovery

13     when he -- in -- in February.  He'll be available any of those

14     dates.  So it wasn't like we were withholding Mr. Wegman with

15     no chance to ever take his deposition.  We were offering

16     reasonable alternatives.

17          This was -- and so let me also back up a little bit.

18     The defendants agreed to the pleading that we filed with this

19     Court --

20          **THE COURT:**  What pleading?

21          **MR. VOLKOV:**  The unopposed.

22          **THE COURT:**  You mean the motion?

23          **MR. VOLKOV:**  The unopposed motion.  In that motion

24     are representations with regard to both depositions.  They

25     agreed to it.  So now they can speak out of both sides of their

mouth?  Come on, Your Honor.  They can say on the one hand, Go

ahead and file that.  Tell the Court your representations, but

we're going to game the system.  We're going to give you these

notices.  We're going to show up, even though we know you're

not coming.  We're going to incur these costs, and then we're

going to try to make your client and you look bad with

the Court.  That's gamesmanship.  That's gamesmanship.  That's

not good faith.

Good faith was demonstrated from our consistent

position.  And for them -- frankly, the Court should read that

Western District opinion.  Because what the plaintiff -- what

the defendants did in this case is exactly what the judge

sanctioned them for in district court in Washington for $500

with regard to Plaintiff Horrom.

With regard to Plaintiff Wegman, this was done in

good faith.  Everything.  I have consistent representations on

four occasions of the same offer.  And did I -- did they ever

come up with any alternative?  No.  Did they offer any

alternative?  No.

So walking into this, it was clear, Your Honor, this

was, I get it, litigation jockeying, whatever you want to call

it.  But the reality is that we were never going to deny them

access to Mr. Wegman.  But also -- and we cited to them, Look,

the best practice is not to take a deposition before you look

at the documents.  We all know that.  And the risk to my client

1    is he goes in, does a deposition, they eventually get the

2    documents -- which, by the way, they didn't start producing,

3    and we were about to file a motion to compel with regard to

4    that, because they don't produce documents -- and we eventually

5    produce the documents.

6            Well, let's say there's a hot document in there, and

7    they come back to the Court and say, We want to reopen this

8    deposition.  I don't want my client to go through that.

9        **THE COURT:**  You're saying that they can reopen --

10   they were going to -- you were concerned that they would reopen

11   a deposition for a document they already had in their

12   possession?

13           **MR. VOLKOV:**  Or they got from us later on.

14           **THE COURT:**  Or that they got from you.  Okay.

15           **MR. VOLKOV:**  Right.  And I would note here, we cited

16   the Middle District's civil discovery handbook as a best

17   practice, Rule II(C):  A party seeking production of documents

18   and other matters from another party in connection with a

19   deposition should schedule the deposition to allow for the

20   production in advance of the deposition.

21           **THE COURT:**  Yeah, but they're not -- they didn't

22   notice it as a deposition duces tecum.  They noticed your

23   client.

24           **MR. VOLKOV:**  I agree, they didn't request documents,

25   but I'm saying the principle that --

1       **THE COURT:** That's what that rule is applied for.

2 That's for a deposition duces tecum.

3       **MR. VOLKOV:** But what's the intent underneath that

4 rule? The intent underneath that rule is it's not fair to

5 depose somebody before the documents are produced.

6       **THE COURT:** And it's also for a Rule 45 subpoena.

7       **MR. VOLKOV:** Right. I agree. I gave it a C --

8       **THE COURT:** There was no -- no Rule 45(c) in here

9 that was noticed.

10       **MR. VOLKOV:** Right. And I agree with that. I'm just

11 saying. But if we all know as practitioners that to expose

12 your client to a deposition and a second bite at the apple,

13 after they seek documents at the last second -- in December, I

14 got a document request for the first time, December 2023, a

15 year after discovery had been open. I think it's incumbent

16 upon me --

17       **THE COURT:** The return for that was a day or two

18 before --

19       **MR. VOLKOV:** Before. But it's incumbent upon me as

20 his counsel to say, Look, I don't want you to have to go

21 through one deposition, and then they can come back and say,

22 Your Honor, we need to reopen this deposition. We found this

23 devastating series of documents.

24       And to me, I think that's -- and so what we're saying

25 to them is -- and we said this to them from the beginning, Wait

1    until you get the documents.  Wait until discovery has

2    occurred.  I've never gone to depositions in any case where no

3    documents have been produced.  That seems, to me, to be a loose

4    cannon for -- a recipe for disaster.

5         So what I'm saying, when you stack up everything that

6    occurred here -- and you will see consistent messages from me,

7    five times, between the period of the 19th to the 23rd.  In

8    the -- in the 17th, we filed -- January 17th, we filed the

9    unopposed motion to extend the deadlines, in which we made the

10   same representations.  They agreed to it, Your Honor.  They had

11   made me make other changes to it, to that unopposed motion.

12   There were other statements made in there that I had to take

13   out.  They did not ask me to take those representations out.

14        THE COURT:  Do you understand, sir, why the

15   defendants were trying to depose your clients before the end of

16   discovery?  Because if they didn't do that, then they -- they

17   might have a problem?

18        MR. VOLKOV:  I think the -- the way I looked at it,

19   the risk that this Court would turn down some extension of

20   discovery, when you look at all the factors, would lead to a

21   disaster.  The risk was very, very low.  And here's the reason

22   why:  If there's no discovery, we're going to do summary

23   judgment by affidavit?  The Court wouldn't -- I just think

24   the Court -- and, obviously, when we came here last week about

25   the unopposed motion, of course the Court is ticked off.  This

1    case has been mishandled by both sides from the beginning.

2          And, number two, what I'm -- what we're trying to do

3    at this point is put right the ship of this case.  And we're

4    putting that effort into doing it.  They may come kicking and

5    screaming, but it is going to get done.  And it is unfair to

6    come in here and speak out of both sides of their mouths.  On

7    the one hand, they agree to the unopposed motion language, and

8    now on the other hand they say they didn't.  That's just

9    contradicted by the record.

10          THE COURT:  All right.  Thank you very much, sir.

11          Is there anyone who is going to argue in rebuttal for

12    the defendants?  I would prefer to only have one argument.

13          MS. MCCARTHY:  Thank you, Your Honor.  Again, Emma

14    McCarthy on behalf of Richard Fortuna.

15          There were just a few things Mr. Volkov stated that I

16    just want to clear the air on.

17          THE COURT:  Before we get to that, is the motion

18    asking for sanctions in regards to both the deposition -- both

19    the deposition notices for both plaintiffs?

20          MS. MCCARTHY:  Yes.  Unless anyone else disagrees,

21    but based off when we agreed on drafting the motion, that was

22    our position.

23          THE COURT:  Okay.  Go ahead.

24          MS. MCCARTHY:  So initially I know Mr. Volkov kept

25    saying the risk of the Court denying the extension was very

1   low.  And we, at least on behalf of Mr. Fortuna, disagree with

2   that.  As you know, we previously had sought an extension, and

3   that was expressly denied, and the Court was very clear in that

4   order.  I know we discussed that previous order last week at

5   the prior hearing.  So from our side, it seemed there was a big

6   chance the Court would say, Too bad you-all are in this

7   position, and that's how it goes.  So I don't think saying that

8   there was a low risk of the Court denying the motion for an

9   extension is an appropriate reason for Mr. Volkov to instruct

10  Mr. Wegman to not appear for his deposition.

11          I also -- the point Mr. Volkov was making of us

12  having to possibly redepose Mr. Wegman after we received

13  documents isn't really adding up to me.  Because I think, as

14  you pointed out as well, the responses to the requests for

15  production and interrogatories that were served in December

16  were due one or two days prior to the deposition.  So if those

17  were timely responded to, we would have received those

18  documents before the deposition and would not have received

19  additional documents after the deposition that would lead to an

20  additional deposition of Mr. Wegman.

21          I think, also, the changes to the unopposed motion

22  for extension Mr. Volkov was referencing, we had unopposed that

23  motion; however, we did not, in that motion, by any way agree

24  to the plaintiffs not appearing for a deposition.  I think in

25  the motion, Mr. Volkov made his position, and I believe he

1  actually gave our position as well. So in no way by us

2  unopposing that joint motion were we saying it's okay for them

3  not to appear.

4  And the failure to appear, I know, was touched on

5  earlier by USSSA's counsel. We all had to prepare and appear

6  for the deposition, and now we're all going to have to

7  re-prepare and reappear for the deposition because of the

8  plaintiff's failure to appear.

9  **THE COURT:** All right. Thank you very much.

10  **MS. MCCARTHY:** Thank you, Your Honor.

11  **MR. VOLKOV:** Your Honor, could I -- could I address

12  the Court just on two --

13  **THE COURT:** No.

14  **MR. VOLKOV:** -- brief points?

15  **THE COURT:** No. The Court is -- is going to grant

16  the motion in part and deny the motion in part.

17  The Court's discovery handbook is quite clear on how

18  the depositions should be scheduled. I mean, this is on

19  page six of that, and that is attorneys are expected to

20  accommodate the schedules of opposing counsel, and normally to

21  try to prearrange depositions with opposing counsel before

22  serving the notice.

23  Now, there are times when that is not possible, and

24  one of those times is when the deadline is fast approaching.

25  And so in order to meet all of the other requirements, such as

1    the 14-day requirement for those noticed, it appears to

2    the Court that the defendants tried to move with a clarity, and

3    although there weren't agreed dates, they did notice those

4    deadlines, and they did it before the currently set end of the

5    discovery period, which is what the Court would expect.

6    And so although I'd like -- the Court likes to see

7    more cooperation between counsel about these, the Court

8    understands why the defense counsel moved forward even without

9    being able to arrange a set deposition date.  And I think it's

10   quite clear why the defendants felt the need to depose the

11   plaintiffs, to ensure that they have their written record on

12   the testimony, if only so that that testimony cannot be later

13   contradicted in an affidavit that is attached to a summary

14   judgment motion.  I think that's just basic professionalism

15   when it comes to competence for an attorney, so there's

16   obviously a need to do that.

17   It is not the practice of this Court to -- to have

18   the parties disregard the discovery deadlines.  If there is a

19   motion pending -- and, in fact, in the -- I'm sorry.  In fact,

20   in the Court's discovery handbook, the discovery handbook is

21   very clear that motions for protective orders -- and I'm just

22   going to try to bring this up for you.  And this begins on

23   page 31 of the discovery handbook:  The mere filing of a motion

24   itself does not, absent an order of the Court, excuse any

25   moving party from complying with a request for the scheduled

1   discovery.

2          That's right out of our discovery handbook, which

3   Mr. Volkov has indicated that he is very familiar with here

4   today.  That was in the motions for protective order, a motion

5   for quash.

6          Quite frankly, if an individual is unable to appear

7   at a deposition and that deposition was noticed, the Court

8   expects counsel to file for a motion for protective order and

9   to seek the resolution of that motion before the discovery is

10  due.

11         And I will say routinely, my practice, if I see a

12  motion like that, I ensure that the parties know through an

13  endorsed order that they are not relieved from replying or

14  attending a deposition unless and until there is a motion that

15  grants the order.

16         However, in this case, we've got, really, two

17  different circumstances.  Number one, one of the plaintiffs was

18  not available on the day that was unilaterally scheduled.  And

19  so, quite frankly, it was incumbent on the defendants to figure

20  out a day that he was, a day he was available on.  And so as to

21  that deposition notice, the Court is going to deny the motion.

22         As for Mr. Wegman, who was available at that -- that

23  day, the Court is going to grant it.  And the Court will grant

24  it -- will grant a sanction.  The sanction will only be to pay

25  for the invoiced Zoom deposition.  So whatever it cost for that

cancelled deposition, that is what will be paid.

And, sir, I'm not going to direct it either at you or your client. I'm just going to say the defendant shall pay, so however you arrange that is how you want to arrange that.

Now, I'm going to caution very closely to you-all about the situation moving forward. I'm going to be very clear about this. If somebody asks for a deposition, there will be proposed dates -- proposed dates for the depositions. They will be responded to within 24 hours in writing. If the -- if the person is not available for those dates, they will propose alternative dates. That I expect them -- I expect that process to result in an agreed-on date.

If we go through more than two cycles of this -- so a request, a response, a request, a response -- after the second cycle, the party who wants the deposition can unilaterally notice it, and then it's the responsible -- then it's the deponent's attorney's responsibility for filing a motion for a protective order and everything that that requires.

Now, I understand that you-all are going to have to deal with probably third party -- third parties who may or may not have counsel, so that process is for you folks that are in this room. If there is a third party involved, you know, I expect everyone to be as accommodating as you can for their schedules. Quite frankly, I think the Zoom depositions are probably very effective here, number one, because they're

1    inexpensive, but also they allow for the maximum flexibility

2    when it comes to scheduling.

3            And I will say counsel on the defense side made a

4    very good point.  These depositions, they don't need to happen,

5    especially if they're happening on Zoom, during the day -- or,

6    I mean, during the workday, 9 to 5.  If it is only going to go

7    two or three hours, and you have the agreement among all

8    counsel that it will only go two or three hours, you can set

9    them later on at night after work so people can be available

10   for them after that.  I recognize that that might not be the

11   best opportunity for everybody to do it, but I want to make

12   sure that we get this done, and we get it done in the time that

13   we have.

14           These depositions shouldn't take that long.  This is

15   not a very document-intensive case, quite frankly, in my

16   experience.  And so I think these depositions can be all done

17   in under four hours.  Maybe the plaintiffs' depositions might

18   take a little bit longer.  Maybe the corporate deposition might

19   take a little bit longer just because of the types of issues

20   that come up in those type of depositions.  But this is not a

21   very complicated case, although it does raise some complicated

22   issues.  It really turns into who knew what and when and what

23   did they know.

24           So I'm just going to put it on the parties that we

25   are going to get this done, and we are going to get it done in

1    the time that the Court has given you, and that is it.

2          Do we understand?

3          **MR. VOLKOV:**  Yes, Your Honor.

4          **MS. MCCARTHY:**  Yes, Your Honor.

5          **THE COURT:**  All right.  So I'm going to issue an

6    order granting the motion for sanctions in part and denying the

7    motion for sanctions in part.  I am not going to set an amount

8    in that order.  It will be for the reasons stated on the

9    record, and I'm going to direct the Defendant [sic] Wegman to

10   pay costs for the deposition, and I'm going to leave it to the

11   parties to exchange the invoice and to ensure that cost is

12   paid.

13         Now, counsel, if you're unable to make an arrangement

14   for that, I'll tell you how the rest of my -- how I handle

15   this, since we might have more motion practice when it comes to

16   discovery.  Typically -- well, when I -- when the Court grants

17   sanctions, the Court is not going to determine the amount of

18   sanctions until the end of discovery.  And so I don't want to

19   see another motion practice about -- about the amount of

20   discovery -- or the amount of sanctions for discovery -- or

21   discovery award.  It's really not sanctions.  It's costs.  And

22   it will be labeled as "costs" in my order.

23         So I'm not -- I don't want to see a motion practice

24   about the amount of costs until after the close of discovery,

25   so -- and this will be in the order.  If a party has been

1    awarded discovery costs for discovery under Rule 37 in this

2    case, and they have not been able to resolve those costs with

3    the other side, the Court will direct those parties to file a

4    motion for the establishment of costs at the -- within

5    seven days of the conclusion of the discovery period, and we'll

6    deal with all of the costs that have been awarded in that one

7    set of motion practice.

8         That probably was not very clear, but if you can get

9    the gist of where I'm going, I think that's what we're looking

10   for.

11        Counsel, do you have any questions about that?

12        **MR. VOLKOV**:  No.  No, not at all.  Thank you, Your

13   Honor.

14        **THE COURT**:  My CRD corrected me.  I think I misspoke

15   and said "Defendant Wegman."  It's "Plaintiff Wegman" on that.

16   And if it's not clear on the record, I don't feel that -- just

17   to be -- it isn't, in my opinion, that this breach is not so

18   significant as to require the plaintiffs to pay for any

19   additional costs other than the one deposition that was noticed

20   for Plaintiff Wegman.

21        All right.  Having nothing further, the Court will be

22   in recess.

23        (Proceedings concluded at 1:37 p.m.)

24

25

1                    **CERTIFICATE OF REPORTER**

2

3          I, KARLA HYLAND, RPR, FCRR, FPR-C, DO HEREBY CERTIFY

4    that the foregoing is a correct transcript of the record of

5    proceedings in the above-titled matter.

6

7          DATED this 1st day of April, 2025.

8

9                    _____/s/Karla Hyland_____

10                         Karla Hyland
                    Registered Professional Reporter
11                 Federal Certified Realtime Reporter
                 Florida Professional Reporter-Certified
12

13

14

15

16

17

18

19

20

21

22

23

24

25